Tracy A. Miller, SBN 015920
Douglas (Trey) Lynn, SBN 028054
Brendan A. Melander, SBN 034777
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 East Camelback Road. Suite 800
Phoenix, AZ 85016
Telephone:  602.778.3700
Facsimile:  602.778.3750
tracy.miller@ogletree.com
trey.lynn@ogletree.com
brendan.melander@ogletree.com

*Attorneys for Defendant Matrix Absence Management Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Tina Weeks, Michael McDonald, Cassandra Magdaleno, and Samantha Stocklein, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Matrix Absence Management Inc.,<br><br>Defendant. | No. CV-20-00884-PHX-SPL<br><br>**JOINT NOTICE OF DISCOVERY DISPUTE** |

Defendant Matrix Absence Management Inc. ("Defendant" or "Matrix") and Plaintiffs Tina Weeks, Michael McDonald, Cassandra Magdaleno, and Samantha Stocklein ("Plaintiffs"), hereby jointly advise the Court that the parties have reached a discovery impasse. Pursuant to the Court's February 16, 2021 Case Management Order [Doc. 52.] (as last amended February 7, 2022 [Doc. 86.], the "Scheduling Order"), the parties submit this Joint Notice of Discovery Dispute to request a hearing and the Court's assistance in resolving the dispute. The Parties disagree about whether Defendant may serve discovery on all 168 opt-in Plaintiffs.

### I. **Defendant's Position**

Defendant seeks to propound discovery requests to all Plaintiffs, including opt-ins, in the form of a simple questionnaire (the "Questionnaire"). [Ex. A.] The Questionnaire is succinctly designed to obtain the identifying information of all opt-in Plaintiffs, seeks basic information from each to ascertain damages, and is only comprised of six narrowly tailored and highly relevant questions.[1] Discovery closes on May 18, 2022. Plaintiffs superficially argue the time for discovery has passed because discovery must be issued 45 days prior to the close of discovery. Plaintiffs had notice of the proposed Questionnaire well in advance of any discovery deadlines, and the purpose of the 45 day order is to permit the parties sufficient time to respond and the court to resolve disputes, if any. As Plaintiffs acknowledge, Defendant first proposed using a questionnaire in February 2021. Defendant has continually reiterated its intent to serve a questionnaire since December 2021. On February 16, 2022, Defendant sent Plaintiffs a draft of its proposed Questionnaire. [Ex. A] The Parties then exchanged numerous communications, which culminated in a joint call to the court on March 3, 2022 and Defendant providing its portion of the Joint Statement to Plaintiffs by April 4, 2021. Rather than simply propound a Questionnaire Plaintiffs objected to, Defendant sought a reasonable compromise. Defendant should not be penalized and Plaintiffs are not prejudiced by any delay which occurred due to meet and confers, and efforts to avoid involving the court in a discovery dispute.

Defendant is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Defendant may move to compel discovery if Plaintiffs refuse to answer interrogatories or produce requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). When Defendant establishes the relevance of discovery requests, Plaintiffs "bear[] the burden of justifying his or her objections." *Davis v. Buckley*, 2013 WL 12114581, at *1 (D. Ariz. June 11, 2013).

---

[1] Defendant will address issues of specific relevance upon request from the court.

2

The Ninth Circuit, in 2008, recognized that the law is unsettled as to whether courts permit individualized discovery of FLSA opt-in plaintiffs. *See Hoffman v. Constr. Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), as amended (Sept. 16, 2008). More recently, however, the Ninth Circuit held "[t]he FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'" *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) (quoting *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016). *Campbell* reasoned "[a] collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases—capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation." *Id.* at 1104-05. The court contrasted FLSA collective action opt-in plaintiffs from Rule 23 representative actions, and, instead, compared opt-in plaintiffs to those added under the ordinary rules of joinder. *Id.* Through *Campbell*, the Ninth Circuit has expressed its expectation that opt-in plaintiffs will participate in litigation. *See Id.*

Likewise, Ninth Circuit district courts have consistently held that opt-in plaintiffs are required to respond to individualized discovery. *Mejia v. Bimbo Bakeries USA Inc.*, 2018 WL 11352489, at *3 (D. Ariz. May 7, 2018) (the court rejected plaintiffs' argument that only 10% of the opt-ins were required to respond to document requests, and instead, ruled all 45 opt-ins would be compelled to respond); *Kesley v. Entm't U.S.A. Inc.*, 2015 WL 4064715, at *3 (D. Ariz. July 2, 2015) (the court required 15% of opt-in plaintiffs to participate in discovery); *Slack v. Parball Newco*, 2018 WL 1472574, at *3 (D. Nev. Mar. 26, 2018) (the court required approximately 80 opt-in plaintiffs to respond to individualized discovery, reasoning that "common considerations are the number of opt-in plaintiffs and the type of discovery being requested, with individualized discovery being permitted more frequently in cases with relatively few plaintiffs and targeted written discovery."); *Page v. Grandview Mktg., Inc.*, 209CV01150RCJGWF, 2010 WL 11629668, at *6-7 (D. Nev. Oct. 6, 2010) (the court required approximately 80 opt-in plaintiffs to respond to individualized

3

written discovery, reasoning "[t]he size of the opt-in class, here, is not so large as to make individualized written discovery unreasonable per se").

In *Ludlow*, the court also held "that a 115-member opt-in class is not so large that the burden of responding to some individualized written discovery propounded to each opt-in plaintiff would be unmanageable or unreasonable." *Ludlow v. Flowers Foods, Inc.*, 2020 WL 3791638, at *13 (S.D. Cal. July 6, 2020). The court required the entire class of 115 opt-in plaintiffs to respond to ten requests for production and five interrogatories, in addition to fifteen randomly-selected opt-ins being required to respond to seven additional requests for production and sit for depositions. *Id.* Critical to its holding, the court "discern[ed] a number of common practical considerations," including that each case is "highly fact-specific," "the size of the opt-in class and whether representative discovery would yield statistically significant information must be important considerations," and "the type of discovery requested, with courts more frequently permitting individualized discovery from opt-in plaintiffs when the discovery is limited and targeted." *Id.* at *5.

Further, in *Edwards v. PJ Ops Idaho, LLC*, 2020 WL 7502452, at *8-9 (D. Idaho Dec. 21, 2020), the court required 200 opt-in plaintiffs to respond to a "simple questionnaire" containing six questions. In doing so, the district court reiterated that it "shares the opinion expressed by many of its fellow District Courts in this Circuit that in cases such as this, broad discovery directed at multiple (and sometimes all) class members is appropriate." *Id.* at *8. While the court did not require all 700 opt-in plaintiffs to respond to the questionnaire, the court reasoned that 200 responses (or roughly 29-33% of the total opt-ins) "accomplish[ed] Rule 26's interrelated goals of seeking out relevant information in discovery and not unduly burdening the recipients." *Id.* at *9.

Here, there are only 168 opt-in Plaintiffs and the number is not so large that the burden of responding would be unmanageable or unreasonable. Responses from each of the 168 opt-ins are required to yield statistically significant information. Indeed, in *Edwards*, the court held that 200 opt-in plaintiffs responding to discovery was not an undue burden. Similarly, in *Ludlow*, where the number of opt-in plaintiffs (115) was slightly

4

smaller than the group of opt-in Plaintiffs here (168), the court nonetheless required all opt-ins to respond to far more comprehensive discovery than the Questionnaire sought in this case. Importantly, Defendant has limited and effectively targeted its written discovery to request only highly relevant information to its defenses by creating a narrowly tailored Questionnaire, which can be easily understood, completed, and promptly returned. Furthermore, in *Mejia*, one of the latest Arizona district courts to rule on this issue, all opt-in plaintiffs were ordered to respond to discovery requests. Accordingly, Plaintiffs cannot demonstrate that Defendant's requests are unduly burdensome or unreasonable.[2] Defendant respectfully requests that all opt-in Plaintiffs be compelled to respond to the Questionnaire.

## II. <u>Plaintiffs' Position</u>

Plaintiffs object to Defendant's proposed discovery questionnaire[3] on multiple grounds: (1) it is untimely, as the deadline to serve discovery has passed; (2) the failure to meet the deadline was a result of Defendant's lack of diligence; (3) the majority of the questions are irrelevant or otherwise improper; and (4) the burden imposed on Plaintiffs far outweighs any potential value to Defendant.

<u>The Deadline to Serve Discovery Has Passed</u>

Discovery closes on May 18, 2022. ECF 86. Pursuant to the Court's Scheduling Order, all discovery must be served at least 45 days before the discovery deadline. ECF 52, p. 2. Here, that 45-day deadline was April 4, 2022. Defendant has not explained why good cause exists to allow it to issue discovery beyond that deadline. Indeed, as discussed below,

---

[2] On a related note, Plaintiffs demanded extensive discovery on the opt-in Plaintiffs, which Defendant produced, including personnel files and payroll information. Plaintiffs' discovery required Defendant to expend significant effort and time to manually gather the information and copy it for production. Defendant recognizes the necessity of broad discovery and its requests are no more burdensome than Plaintiffs' discovery demands that it has already complied with.

[3] Although Defendant refers to the document as a "questionnaire," it requests each opt-in Plaintiff to produce certain documents in their possession.

5

Defendant cannot show good cause, given that it had over a year to either issue discovery or raise the issue with the Court, and it failed to do either.

### Defendant's Failure to Meet the Court's Deadline Was A Result of Defendant's Lack of Diligence

Defendant's counsel first proposed issuing a "questionnaire" to all Plaintiffs and opt-in Plaintiffs on or around February 23, 2021.[4] Plaintiffs' counsel advised that, given the number of individuals involved, issuing discovery to every opt-in was unnecessary, and submitted an alternative proposal to Defendant's counsel on March 17, 2021. Specifically, Plaintiffs' counsel proposed that Defendant issue written discovery on 34 individuals (the 4 named Plaintiffs and 30 opt-in Plaintiffs).[5] Defendant's counsel responded on April 13, 2021, accepting Plaintiffs' proposal as to the number of depositions to be taken, but rejecting the proposal as to written discovery and suggesting again that Defendant be allowed to issue a questionnaire to all opt-ins. Plaintiffs' counsel responded on April 23, 2021, advising that, if Defendant would not agree to anything less than issuing discovery on all opt-ins, the parties should request a hearing with the Court to address the dispute. Defendant's counsel agreed and suggested counsel call the Court together. On April 27, 2021, Plaintiffs' counsel requested times when Defendant's counsel was available to call the Court to request a hearing. Defendant's counsel never responded.

Defendant's counsel did not raise the issue of the questionnaire again until December 2021—over seven months later. On December 7, 2021, as part of a meet and conferral regarding a number of discovery issues, Defendant's counsel proposed that they send a draft questionnaire to Plaintiffs' counsel for review. Plaintiffs' counsel indicated

---

[4] Plaintiffs' counsel is able to provide a declaration with supporting documentation for the facts set forth in this section, but has not done so for purposes of requesting this informal hearing.

[5] Plaintiffs' counsel's proposal contemplated Defendant taking up to 20 depositions and issuing up to 25 requests for admission to each of the 34 discovery plaintiffs, 25 interrogatories to each Named Plaintiff, and 10 interrogatories to each of the 30 opt-in plaintiffs.

6

that they were still opposed to discovery on all opt-in Plaintiffs, but they would review the questionnaire. Defendant's counsel provided a draft of the questionnaire three months later, on February 16, 2021. Plaintiffs' counsel responded on February 28, 2021, advising that they were still opposed to the questionnaire being issued on all opt-ins and suggesting, again, that counsel call the Court to schedule a hearing.

Counsel called the Court on March 3, 2022, and the clerk requested that the parties submit this joint statement. Counsel agreed to provide each other with their respective portions of the joint statement upon completion. Defendant provided Plaintiffs with its portion of the statement on April 4, 2022, and Plaintiffs provided their portion on April 12, 2022.

Defendant had ample time—over fourteen months—to serve discovery or address the matter with the Court, and it failed to do either. Plaintiffs have been consistent in their position throughout, have made themselves available to jointly contact the Court, and, in every instance, were the ones to suggest that the parties do so. Allowing Defendant to issue additional discovery to 168 individuals *after* the Court-ordered deadline is prejudicial to Plaintiffs and contrary to both Fed. R. Civ. P. 16(b)(4) and the Court's interest in ensuring the parties diligently pursue their claims and defensive.

<u>The Questionnaire Includes Numerous Irrelevant and/or Improper Questions</u>

Even if Defendant were not requesting to issue discovery after the Court's deadline, the questionnaire would not be appropriate, as it contains questions that are not relevant to this case. Question 1 asks for the opt-in Plaintiffs' contact information, including their addresses, cell phone numbers, and email addresses. The opt-in Plaintiffs are represented by counsel, and there is no reason Defendant should be trying to contact them directly. Moreover, Defendant already has most opt-in Plaintiffs' contact information, which it provided to Plaintiffs after conditional certification. Question 2 seeks information pertaining to the educational background of the opt-in plaintiffs. Defendant has not raised an affirmative defense under the professional exemption, therefore this information is irrelevant to this lawsuit. Again, Defendant should also have this information in its own

7

personnel records. Question 3 asks for "Matrix Employment Information" including opt-in plaintiffs' job title, supervisors, and program assignment. As the employer, Defendant already possesses this information. Question 6 seeks documents from opt-in plaintiffs, including "all non-privileged documents in your possession, custody, or control about the allegations in this lawsuit." This request is clearly overbroad.

<u>The Burden on Plaintiffs Outweighs the Benefit to Defendant</u>

Serving discovery on every opt-in Plaintiff at this stage of the litigation is inappropriate in light of the burden it imposes on Plaintiffs and Plaintiffs' counsel and the limited value Defendant would derive from the requested information. It is for this reason that courts in this District and around the country routinely limit written discovery to a limited group of opt-in plaintiffs in wage-and-hour class and collective actions.[6] Responding to discovery on behalf of 168 individuals requires a significant amount of time, regardless of how limited the requests are. Defendant attempts to downplay the effort involved, which suggests it is not familiar with the process. To say nothing of the time it takes to reach out to everybody, follow up individually with those that do not respond immediately, review each response, coordinate the production of documents, and obtain verification signatures, the opt-in Plaintiffs are not wage-and-hour experts and often have questions about questions as "simple" as "how many hours did you work?" While it may

---

[6] *See, e.g., Kelsey v. Entm't U.S.C. Inc.*, 2015 WL 4064715, at *4 (D. Ariz. July 2, 2015) (Wade, J.) (limiting written discovery and depositions to 15% of a class of "no more than seventy five" plaintiffs); *Kervin v. Supreme Service & Specialty Co., Inc.*, 2016 WL 8257256 (E.D. La. May 24, 2016) (limiting written discovery to 20% of 157 class members and depositions of 15 of 157 class members); *Scott v. Bimbo Bakeries USA, Inc.*, 2012 WL 6151734 (E.D. Pa. Dec. 11, 2012) (limiting written discovery to 10% of collective consisting of 508 opt-in plaintiffs); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188 (S.D.N.Y. 2014) (limiting written discovery to 73 of approximately 580 opt-in plaintiffs); *Craig v. Rite Aid Corp.*, 2011 WL 9686065, at *4-5 (M.D. Pa. Feb. 7, 2011) (limiting written discovery in FLSA collective action with over 1,000 opt-in plaintiffs to 50 randomly selected individuals); *Cranney v. Carriage Servs., Inc.*, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008) (limiting discovery to 10 percent of workers in FLSA collective action with 300 opt-ins); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006) (limiting written discovery to 90 collective members in an FLSA collective action of 1,500 individuals).

1 be obvious to Defendant and its counsel what qualifies as compensable time, it is not
2 obvious to the average person. Nor is it obvious to them what documents are relevant to
3 the litigation. Responding to these inquiries, often on individual phone calls, is not the
4 minor undertaking Defendant suggests. The burden on Plaintiffs would be significant,
5 particularly given the upcoming discovery deadline.

6 On the other hand, the potential value to Defendant is relatively low. As discussed
7 above, most of the questions in the questionnaire are either irrelevant and provide no useful
8 information to Defendant (contact information, educational background) or request
9 information already in Defendant's possession (job titles, supervisors, program
10 assignment). Moreover, the question "[d]o you believe you have worked more than 40
11 hours during any calendar week while you were employed by Matrix" serves no purpose.
12 By participating in the lawsuit as party plaintiffs, every Plaintiff and opt-in Plaintiff alleges
13 that he or she worked more than 40 hours in one or more workweeks. Finally, together with
14 the comprehensive information Defendant has in its possession as the employer (including
15 information on job duties, level of supervision, policies and procedures relating to the at-
16 issue job positions, and compensation records), Defendant has already propounded
17 discovery on, and received responses from, each of the four Named Plaintiffs and has taken
18 ten depositions. It has no need to take additional discovery this late in the discovery period.

24 //
25 //
26 //
27 //

9

DATED this 15th day of April 2022.

| THE HEDGPETH LAW FIRM, PC | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
|---|---|
| By: /s/ Travis M. Hedgpeth *(w/permission)*<br>Travis M. Hedgpeth<br>3050 Post Oak Blvd., Suite 510<br>Houston, TX 77056<br><br>Jack L. Siegel<br>Stacy Thomsen<br>Siegel Law Group PLLC<br>4925 Greenville, Suite 600<br>Dallas, TX 75206<br><br>Clifford P. Bendau, II<br>The Bendau Law Firm, PLLC<br>P.O. Box 97066<br>Phoenix, AZ 85060<br><br>*Attorneys for Plaintiffs* | By: /s/ Brendan A. Melander<br>Tracy A. Miller<br>Douglas (Trey) Lynn<br>Brendan A. Melander<br>2415 E. Camelback Road, Suite 800<br>Phoenix, AZ 85016<br><br>*Attorneys for Defendant* |

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

# CERTIFICATE OF GOOD FAITH CONSULTATION

Pursuant to Local Rule of Civil Procedure 7.2(j), the parties certify that they have met and conferred in good faith, but were unable to resolve the disputes outlined in this Joint Notice through consultation and sincere effort.

DATED this 15th day of April 2022.

| THE HEDGPETH LAW FIRM, PC | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
|---|---|
| By:  /s/ Travis M. Hedgpeth *(w/permission)*<br>Travis M. Hedgpeth<br>3050 Post Oak Blvd., Suite 510<br>Houston, TX 77056<br><br>Jack L. Siegel<br>Stacy Thomsen<br>Siegel Law Group PLLC<br>4925 Greenville, Suite 600<br>Dallas, TX 75206<br><br>Clifford P. Bendau, II<br>The Bendau Law Firm, PLLC<br>P.O. Box 97066<br>Phoenix, AZ 85060<br><br>*Attorneys for Plaintiffs* | By:  /s/ Brendan A. Melander<br>Tracy A. Miller<br>Douglas (Trey) Lynn<br>Brendan A. Melander<br>2415 E. Camelback Road, Suite 800<br>Phoenix, AZ 85016<br><br>*Attorneys for Defendant* |

51144523.v1-OGLETREE