JACK SIEGEL
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
4925 Greenville, Suite 600
Dallas, TX 75206
Telephone: (214) 790-4454
Email: Jack@siegellawgroup.biz
*Admitted Pro Hac Vice*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Tina Weeks, Michael McDonald, and Cassandra Magdaleno, individually and on behalf of others similarly situated,** | |
| **Plaintiff,** | **Civil Action No. 2:20-cv-00884-SPL** |
| **v.** | |
| **Matrix Absence Management, Inc., an Arizona Company,** | |
| **Defendant.** | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION UNDER FRCP 23

Matrix maintains a uniform policy of misclassifying over a hundred Oregon-based Telephone Claims Examiners ("TCEs") as exempt. As a result, the CFEs, who produce the administrative services that Matrix is in business to sell to its customers, were not paid overtime for their long hours worked in violation of Oregon Wage Law.

Here, Plaintiffs challenge Matrix's policy of classifying all CFEs as exempt. Certification is proper because Matrix's asserted administrative exemption defense will rise or fall for the entire class together. In trying the merits of this case, Plaintiffs will show the administrative exemption does not apply to any of the CFEs, because, as Matrix's Fed. R. Civ. P. 30(b)(6) designee acknowledged, CFEs are not setting overarching company policy, supervising anyone, or administering the business—they are on the front lines, gathering information and applying predetermined guidelines to produce the "administrative services" that relate to a single claim filed under a customer's plan/policy. The facts on which Plaintiffs will rely to prove the merits of their claims are common to the Class: (1) Matrix's common exemption classification for all CFEs; (2) uniform pay plans for all CFEs; and (3) testimony from CFEs that they worked overtime without being paid premiums. Likewise, the proof on which Plaintiffs will rely to defeat Matrix's administrative exemption defense is common to the class, for example: (1) Matrix's 30(b)(6) testimony that CFE duties do not include supervising anyone, setting company policy, binding the company, advising management or negotiating for the company, and that their job duties relate to individual claims, rather than matters of significance to the business generally; (2) Matrix's 30(b)(6) testimony that Matrix does not claim that CFEs worked as "Insurance Adjusters," and that CFEs otherwise do not

perform traditional "Insurance Adjuster" work; and (3) uniform companywide written policies and regulations that dictate the level of independence and discretion CFEs exercise.

All CFEs do the same basic work to process claims filed under Matrix customer insurance plans. Their discretion to make independent decisions regarding claims are controlled by criteria for claim coverage under the applicable customer's plan/policy, and Matrix internal policies. The TCEs here did not negotiate or settle claims, use judgment to determine claim value, set reserves on claims or perform any other traditional insurance adjuster work requiring the exercise of discretion. Because CFE duties and role at Matrix are the same, there is no reason that the administrative exemption should apply to some Class members, but not to others. Indeed, Matrix classified all CFEs as exempt and denied them overtime without making an employee-by-employee assessment.[1]

Plaintiffs, who were or are CFEs subject to the challenged exempt classification during the statutory period, move to certify the Oregon Class under Rule 23. Plaintiffs meet the Rule's requirements, and the Court should grant the motion.[2]

## **LEGAL STANDARD**

---

[1] Ex. A, at 201-204; *see also* Ex. B.

[2] Should the Court be inclined to deny Plaintiff's Motion, Plaintiffs request that it should alternatively certify the following issue under Rule 23(c)(4): Whether CFEs' primary duty is work "directly related to the management or general business operations" of Matrix or its customers. Because the answer to this question is certain—and will "materially advance the disposition of this litigation as a whole" by negating a necessary element to Matrix's only exemption defense—Rule 23(c)(4) certification is warranted on this basis alone. *Rahman v. Mott's LLP*, 693 F. App'x 578, 580 (9th Cir. 2017).

If Plaintiff meets Rule 23's requirements, she is entitled to class certification.[3] "Any doubts regarding the propriety of class certification generally should be resolved in favor of certification."[4] Plaintiff's claim relies on a theory that Matrix classified the Class as exempt administrators under Oregon Wage Law, and that the Class did not receive overtime due to the misclassification. The FLSA and Oregon Wage Law require use of a two-part conjunctive primary duty test to analyze whether workers are employed in a "bona fide… administrative" capacity: The primary duty must be "work directly related to the management or general business operations of the employer" or its customers" **and** that primary duty must include the "exercise of discretion and independent judgment with respect to matters of significance."[5] Ninth Circuit precedent makes clear that summary judgment and class certification are warranted if Plaintiffs presents common proof to capable of negating the "directly related" prong of the administrative exemption, without the need to analyze its other elements.[6]

## STATEMENT OF FACTS

1. Plaintiff and other TCEs process short disability ("STD") and leave of absence ("LOA") claims. Most TCEs hold the "Claims Examiner-AMS" position, which processes

---

[3] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 399–400 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action….").
[4] *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011).
[5] 29 U.S.C. § 213(a)(1); *see* O.R.S. 653.020(3). *Peterson v. Snodgrass*, 683 F. Supp. 2d 1107, 1124–25 (D. Or. 2010) (construing Oregon's administrative exemption through federal regulations).
[6] *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 849 (9th Cir. 2017) ("[W]e need not reach [the "discretion" prong] because the test to qualify [as an exempt administrator] is conjunctive, not disjunctive,  and [the employer bears the burden of proving the employees in question satisfy each of [its] requirements") (citations omitted).

4

both STD and LOA claims.[7] Individuals holding the "Claims Examiner-STD" and "Claims Examiner-LOA" positions process only STD or LOA claims, respectively.[8] Each job position has three "levels"—I, II, and Senior. Plaintiff was employed as a Claims Examiner Sr.-AMS.[9] TCEs uniformly perform 95% or more of their job over the computer or telephone.[10]

2.  Matrix classifies all CFEs as exempt, pays them on a salary basis, and does not track their hours they spend producing Matrix's "primary service."[11] Defendant's uniform exemption policy does not distinguish between different types or levels of TCEs, and Matrix asserts that all TCEs are subject to administrative exemption, despite never performing an individualized assessment of their job duties.[12]

3.  Matrix is <u>not</u> an insurance company; it is a licensed third-party administrator ("TPA") that processes STD and LOA claims for its customers: As a licensed TPA, Matrix "administer[s] claims" for its customers, and employs CFEs to "administer claims." [13] The "administrative services" produced by CFEs are the "primary services" sold by Matrix to its customers.[14] Matrix contracts with customers—which include employers who offer disability/leave plans and an insurance company—to process claims in accordance who with the policies, procedures, and criteria in the customers' policy/plan. *Id.*, at 73, 139.

---

[7] Siegel Decl., ¶ 8 (approximately 73% of TCEs work in the Claims-Examiner AMS position); *see also* ECF 35, p. 10 (citing ECF 34-8, Pheil Decl. ¶ 7-25, ECF 34-7, Freese Decl. ¶ 4, 7-25).
[8] *See e.g.*, ECF 35, p. 9 (citing 34-7, ¶ 7) (other declaration citations omitted); 30B6 Dep., at 79-80; *see also* ECF 27-12 (providing online job descriptions for all positions at issue).
[9] Ex. I, Stocklien Dep., at 11.
[10] 30B6 Dep., at 37.
[11] 30b6 Dep., at 26-28, 124-125, 217.
[12] *Id.*, at 201; ECF 105, pp. 1-2.
[13] ECF 60 (Answer), ¶¶ 2-3;
[14] *Id.*, at 125;  *id.*, at 124 (explaining Matrix's "primary function is manage claims" and that employs TCEs to "manage[] the claims" in accordance with customer plan criteria).

4.   TCEs, regardless of title or level, perform the same primary job duty: Processing claims by gathering and comparing claim information to compare it to predetermined criteria under the applicable customers' policy/plan and/or state/federal leave law to determine benefit eligibility.[15] Matrix also expects TCEs to follow its own internal policies, procedures, and timeframes—referred to as "Best Practices," "Standard Operating Procedures," and "Performance Guarantees" ("Matrix Guidelines").[16] To perform this primary duty, all CFEs uniformly attend the same initial 12-week training program in accordance with the same 12-week training schedule, which invariably covers the same training topics, including training on "the policies and procedures that Matrix expects claims examiners to follow" to process claims; Matrix's standardized computer software to process claims; "red flags" to look for in processing claims;[17] and applying criteria to determine eligibility under customer plans.[18] Matrix requires CFEs to use software called "PACs" to process STD claims and LeaveLink to process LOA claims.[19] New-hire CFEs can become "experts," at using this software to apply predetermined criteria to process claims, in as little as six months. *Id.*, at 108.

---

[15] Ex. C, pp. 1, 3, 7; Ex. F, pp. 1-2, 5; *Id.*, at 152 (Q: [Are] all claim decision determinations are made [by CFEs] in compliance with the terms of the client's … plan or policy? A: Yes.").

[16] *Id.*, at 146-147 (Q: [D]oes Defendant expect [CFEs] to follow best practice guidelines? A: Yes. The best practice guidelines are part of their job.); ECF 34-7, ¶ 4; ECF 34-8, ¶ 7, 25; ECF 34-9, ¶ 5; ECF 34-10, ¶ 3; Grp. Ex. C (containing job descriptions), pp. 1, 3, 5, 7; 30B6 Dep., at 147 ("Yes. The Best Practices Guidelines are part of their job."); *Id.*, (confirming CFEs follow the guidelines for timeframes for performance guarantees).

[17] *Id.,* at 149.

[18] *Id.*, at 162-163.

[19] Ex. D, at 6-7.

5.   Matrix does not claim that the Class worked as "insurance adjusters."[20] Matrix has no licensure requirements to work as a CFE. *Id*, at 137. CFE job duties do not involve:

    a.   **Directly Related Adjuster Work:** CFEs do not negotiate settlements, settle disputed claims,  set reserves on claims, prepare damage estimates, determine liability between parties, use judgment to determine claim value, participate in litigation, or make recommendations regarding litigation to Matrix or its customers. *Id*., at 100-101.

    b.   **Exercising Adjuster Independence or Discretion:** CFEs do not evaluate accident scenes, hire nursing services to assist claimants to return to work, approve litigation strategy, serve as the lead negotiator in settlements, or using judgment to determine (1) liability between parties, (2) what a claim is worth, or (3) how to handle settlement negotiations with a claimant. *Id*., at 101, 102-203.

6.   Rather, CFE duties involve processing claims in accordance with the same standardized processes used by other TPAs, such as Liberty Mutual, to process claims. *Id*., at 48.[21]

7.   Each claim assigned to a CFE relates to a single claim filed by a claimant insured or employed by a Matrix customer that the CFE must process in compliance with the applicable customer plan.[22] Apart from processing claims, TCEs play no role in administering Matrix's business or taking on major assignments related to its operation. *Id*., at 129. CFEs do not supervise or oversee anyone.[23] CFEs do not formulate or interpret employment policies; make staffing or promotion decisions; set Matrix's budgets; plan Matrix's business objectives; or study business operations to develop proposed changes for Matrix or its customers (*Id*., at 10). CFEs have no authority to negotiate on behalf of or bind Matrix into contracts with third

---

[20] 30B6 Dep., at 136 (**Q: Is Defendant claiming that [CFEs] worked as insurance adjusters in this case? A: I mean, they're claims examiners.");** *id., at 137* **("Q: Well, are you claiming that these people were working as insurance adjusters? A: No.").**
[21] 30B6 Dep., at 48.
[22] *Id*., at 40-41, 124, 129-130; *Id*., at 124.
[23] *Id*.., at 55, 130.

parties, including Matrix customers.[24] CFEs do not direct the work of customers' employees and their only communication with Matrix customers related to specific claims filed under the customer's specific policy/plan.[25] Matrix Account Managers are Matrix's "relationship managers," responsible for handling escalated claims processing issues, and fulfills other non-claims processing related requests.

8. CFEs uniformly and directly report to supervisors; supervisors report to managers; managers reported to directors; and directors report to the assistant vice president.[26] CFE work is uniformly audited by supervisors, Matrix's "audit team" and Matrix's QA department to ensure required timeframes to process claims and required turnaround times for claimant phone calls/emails were met.[27] Directors use these audits—which contain metrics to assess whether TCEs followed whether TCEs met required timeframes for claims processing milestones and returning phone calls/emails—to determine if managers were providing sufficient oversight to supervisors.[28]

9. Matrix classifies claims department employees as either "leaders" or "individual contributors: Matrix classifies CFEs to be "individual contributors," and classifies supervisors, and other positions above CFEs in the hierarchy, as "leaders."[29]

## RULE 23(A) IS SATISFIED

---

[24] *Id.*, at 104-107.
[25] *Id.*, at 129-130;  Ex. G, at 106-108; Ex. I, at 118-121.
[26] 30B6 Dep., at 139-140; *see also*, Ex. G (organizational chart).
[27] *Id.*, at 35-36, 57-58.
[28] *Id.*, at 56-57.
[29] *Id.*, at 54.

The Class satisfies the four criteria under Rule 23(a): numerosity, typicality, adequacy and commonality.[30] Numerosity, typicality, commonality and adequacy are easily satisfied:

**Numerosity:** The numerosity element of Rule 23(a)(1) requires plaintiffs to show the Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Because forty members presumptively satisfies this requirement (*Knapper v. Cox Commc'ns, Inc.,* 329 F.R.D. 238, 241 (D. Ariz. 2019), this class, numbering over a hundred, easily meets this requirement.[31]

**Typicality:** The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. Rule Civ. P. 23(a)(3). Courts assess typicality by determining whether other members have a similar injury, whether the action is based on conduct not unique to the named plaintiffs, and whether other members have been injured by the same conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 508 (9th Cir. 1992). Here, the named plaintiff performed the same primary duty as the Class, was classified as exempt under the administrative exemption, worked overtime, and never received overtime pay.[32] Typicality is satisfied.

**Commonality:** Because commonality is less demanding and coextensive with predominance, plaintiffs will rely on their predominance analysis to satisfy commonality.[33] However, it should be noted that courts "routinely certify misclassification cases,' finding that the central question of whether the employees were wrongfully classified as exempt from overtime pay requirements is common to the class.'" *Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 671 (D.N.M. 2020) (collecting cases) (quoting *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184 (S.D. Ohio 2012) (collecting cases)).

**Adequacy:** Adequacy is satisfied and the Court should appoint Plaintiff's counsel as class counsel because (1) the Plaintiff has no conflict with the Class; (2) she is represented by counsel with successful track records in class actions; and (3) Plaintiff's counsel has vigorously pursued the claims of the Plaintiffs, as evidenced by successfully moving for step-one notice , and overseeing the FLSA notice process. *Knapper*, 329 F.R.D. at 241. ECF 36; Siegel Decl, ¶ 15.

---

[30] The Class is also ascertainable, as it is feasible to "determine whether a particular individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Matrix identified all individuals in the positions at issue for the past three years, per the Court's FLSA conditional certification order. ECF 36.

[31] Siegel Decl., ¶ 8.

[32] *See Campbell v. PriceWaterhouseCoopers, LLP*, 287 F.R.D. 615, 623 (E.D. Cal. 2012).

[33] *Hernandez v. Midland Mgt., Inc.,* 236 F.R.D. 406, 411 (N.D. Ill. 2006) (adopting approach).

## RULE 23(B) IS SATISFIED

**1.  Predominance:** Predominance focuses on whether common issues predominate over individual ones in the case and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[34] Predominance focuses on liability: If "the liability issue is common to the class, common questions are held to predominate over individual questions."[35] "Because the "nature of the evidence that will suffice to resolve a question determines whether the question is common or individual," a court "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."[36] Courts in this Circuit and others have used the following standard to determine if common proof will establish liability:

> [W]hether the evidence demonstrates that the "employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof," *Vinole,* 571 F.3d at 946, or whether the plaintiffs intend to prove their claims by individual inquiries into the circumstances of each employee, *see id.* at 946-47.  To answer this question, the Court must examine the evidence that will support Plaintiffs' Wage Act claims and Defendant's affirmative defense to those claims and determine whether that evidence is predominantly common or individualized.[37]

"Predominance in misclassification cases typically requires the existence of a common question  regarding classification."[38] To defeat  the administrative exemption, Plaintiff need only demonstrate that one of the elements is unsatisfied: Ninth Circuit precedent makes clear

---

[34] *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 594 (1997).

[35] *Bustillos v. Cnty. Comm'rs of Hidalgo Cnty.,* 310 F.R.D. 631, 672 (D.N.M. 2015) (cite omitted).

[36] *In re Hydrogen Peroxide Litig.,* 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009).

[37] *Casias v. Distribution Mgmt. Corp., Inc.,* 2014 WL 12710236, at *13, *18 (D.N.M. Mar. 31, 2014); *Felps,* 336 F.R.D. 664, 677 (D.N.M. 2020) (quoting *Casias,* at *18).

[38] *McKeen-Chaplin,* , 2013 WL 4056285, at *2 (E.D. Cal. Aug. 12, 2013) *(citing Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935 (9th Cir. 2009) (other cites omitted).

that if Plaintiff shows the ability to a single element of the exemption through common proof, the court should grant class certification and summary judgment in this case.[39]

The fact that the Matrix chose to classify all CFEs as exempt on a company-wide basis, rather than undertaking an employee-by-employee analysis, weighs in favor of finding that the CFEs' challenge may be resolved classwide.[40] Moreover, certification is proper because the heart of the case is a classification challenge that will stand or fall with respect to the entire class, rather than a challenge that may succeed as to some class members but fail as to others.[41] The existence of "uniform corporate policies" "will often bear heavily on questions of predominance and superiority," and "courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes." *In re Wells Fargo*, 571 F.3d at 958.

---

[39] *McKeen-Chaplin, FSB*, 862 F.3d at 849 (citing *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124-25 (9th Cir. 2002); *Heffelfinger.*, 492 F. App'x at 710, 714 (9th Cir. 2012

[40] *See In re Wells Fargo Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) ("An internal policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees. This undercuts later arguments that the employees are too diverse for uniform treatment. Therefore, an exemption policy is a permissible factor for consideration under Rule 23(b)(3)."); *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (challenge to common policy predominates because "there are no relevant distinctions between the worksites").

[41] *See, e.g., Campbell*, 287 F.R.D. at 624 (common issues predominate because nothing suggested that some employees customarily exercised discretion and independent judgment while others did not); *Jacob*, 289 F.R.D. at 420-21 (predominance met because "'core' merits inquiry" on administrative exemption is not individualized because "most, if not all, ASMs perform a similar swath of duties"); *Swigart*, 288 F.R.D. at 184, 186 (where "general policy [regarding how employees in particular position should perform job] is the focus of the litigation," administrative exemption issue "will be determined based on common proof, and common questions clearly predominate"); *Heffelfinger*, 2008 WL 8128621, at *24, 26 ("[Q]uestions whether certain tasks – or categories of tasks – are exempt," are "the kind of sweeping threshold question that courts have found justifies class treatment;" to defeat certification, defendants must "adduc[e] evidence that their exemption mistake was confined to individual employees or differed across the proposed class.").

In *Kress v. PricewaterhouseCoopers LLP*, 2013 WL 140102 (E.D. Cal. Jan. 10, 2013), the Court granted certification in a case hinging on the administrative and professional exemptions. After noting that common proof would determine the job's required qualifications and level of discretion, the Court rejected defendant's predominance argument, focusing on the fact that defendant could not identify ways in which the exemption analysis would differ among class members:

> Defendant does not argue that it is illegally withholding overtime pay from some employees while properly withholding it from others....[U]ntil defendant can show that all class members are required to have the threshold academic background required for the "professional" exemption, there is no need, on this motion, to examine what work they actually do on an employee-by-employee, week-by-week basis. Further, until defendant shows that unlicensed accountants are permitted to do the things California law and AICPA rules say they cannot do [to establish the administrative exemption,] there is no need to conduct the requested point-by-point examination of their actual work.

*Id.* at *10. As in *Kress*, here the **nature** of the job duties is the predominant common question, and Matrix does not contend that some CFEs are exempt and others are not. *Id.* And as in *Kress*, Defendants' own testimony and written policies and testimony provide proof bearing on the applicability of the exemptions.[42] Thus, common questions predominate.

### a. Whether CFE Duties are "directly related to the management or general business operations" is Subject to Common Proof.

Matrix must show that CFEs' primary duty was "directly related to the management or general business operations" of Matrix or customers. 29 C.F.R. § 541.201(a). The regulations further define such work as "assisting with the running or servicing of the business." *Id.* The regulations contain examples of directly related work at 29 C.F.R. § 201(b) that,

---

[42] *Avilez*, 286 F.R.D. at 469 (the "focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members").

[distinguish between work that] any employer needs performed such as accounting, human resources and regulatory compliance—and work that is particular to an employer's industry. The former is part and parcel of running a business and therefore exempt administrative work. The latter is not."[43]

"[The second prong] is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of [the] business' affairs." *Bothell*, 299 F.3d at 1125.

The regulations define exempt administrative duties in part by explaining what they are not. Administrative work does **not** include work on a manufacturing line or selling a product in retail or service establishment."[44] This anti-administrative "production work" relates to the "goods and services which constitute the business' market place offerings" rather than traditional notions of manufacturing.[45] This analysis turns on whether the services provided by the employee constitute the marketplace offerings of the employer, or whether they contribute to the running of the business itself.[46] Courts have consistently held that claims examiners who work for third party administrators do not qualify as exempt administrators because they "produce" the services those companies exist to sell.[47]

---

[43] *Bollinger v. Residential Cap., LLC*, 863 F. Supp. 2d 1041, 1048 (W.D. Wash. 2012) (citing *Bratt*, at 1070).

[44] 29 C.F.R. 201(b).

[45] *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535–36 (2d Cir. 2009) (quoting *Bothell*, at F.3d 1120, 1127/

[46] *Bothell*.

[47] *Clark v. Centene Co. of Texas, L.P.,* 44 F. Supp. 3d 674, 684 (W.D. Tex. 2014), aff'd, 656 F. App'x 688 (5th Cir. 2016) (holding "case managers" that review health insurance claims to be non-exempt production workers, explaining that, "Plaintiffs are uniquely positioned to "produce" [defendant]'s "product"—in this case, the service of administering [insurance] claims. If Plaintiffs are administrative employees, it is difficult to conceptualize who within [Defendant's]organization is not an administrative employee."); *Rego v. Liberty Mut. Managed Care, LLC,* 367 F. Supp. 3d 849 (E.D. Wis 2019) (nurses employed by third-party administrator to review workers' compensation claims were involved in "core function" of the

Work directly related to the management or general business operations of the employer's customers may also be exempt. 29 C.F.R. § 541.201(c). "In this context, the major example of exempt administrative work is high level advice or analysis. 'Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.'"[48]

Whether TCEs are subject to the administrative exemption depends on common proof common to all TCEs. The common proof here shows that:

- CFEs do not supervise anyone, advise management or make policy decisions (SOF, ¶ 7).

- CFEs are production workers, who spend over 95% of their day-to-day time on the phone and computer producing the administrative services that constitute the "primary service," that Matrix, as a TPA, sells to its customers. (SOF, ¶ 3, 9).

- CFEs are not authorized to recommend any course of action related to Matrix or its customer's business structures, do not formulate or interpret employment policies, make staffing or promotion decisions, or set budgets (SOF, ¶7).

- CFEs lack the authority to negotiate anything on behalf of Matrix, or enter into contracts to resolve anything on behalf of Matrix, including issues related to the claims they process. *Id.* CFEs are not "Leaders" at the heart of Matrix's administration like supervisors, managers and directors, but instead are "Individual Contributors" that produce administrative services for Matrix. (SOF, ¶ 9).

- CFEs don't perform "major assignments" that impact business operations to a substantial degree. SOF, ¶ 7; *see also* 30b6 Dep., at 104-105.

- Common proof also shows that the Plaintiffs did not direct the work of Matrix customers' employees, and their only communications with Matrix customers related to the administration of specific claims filed under customer insurance plans. (SOF, ¶ 9).

---

company and were therefore not covered by the administrative exemption); *Scott Wetzel Services Inc. v. New York State Bd. of Indus. Appeals* 252 A.D. 2d 212, 215 (1998) (granting summary judgment on "directly related" prong to worker's compensation insurance adjusters whose employer's business was the administration of worker's compensation claims on behalf of its clients); *Reich v. Am. Intern. Adjustment Co.*, Inc., 902 F. Supp. 321, 325 (D. Conn. 1994).
[48] *Bollinger,* 863 F. Supp. 2d at 1048 (citing 29 C.F.R. § 541.201(c).

Common proof shows that CFEs do not perform work "directly related" to Matrix because they carry out the "day-to-day business of [Matrix] allowing it to provide the [primary] service it charges customers for," and CFEs do not provide the type of "high level advice or analysis" provided by tax experts or consultants. Class certification and summary judgment are warranted based on these common facts that negate the "directly related" element.[49]

**b.  Whether CFEs Performed the Work of "Insurance Adjusters" Under 29 C.F.R. 203(a) is Subject to Common Proof.**

Under Oregon law, an individual may not act as an adjuster—defined as a "person who receives compensation to **investigate, negotiate or settle**… claims under the terms of an insurance contract"—unless the "person has obtained a license to [work as] an adjuster under ORS 744.521."[50] 29 C.F.R. 203(a) provides that:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; **inspecting property damage; reviewing factual information to prepare damage estimates; evaluating** and making recommendations regarding coverage of claims; **determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation**.[51]

The DOL's Field Operations manual provides further guidance:

---

[49] *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 681 (W.D. Tex. 2014), aff'd, 656 F. App'x 688 (5th Cir. 2016) (denying motion for decertification and granting summary judgment to FLSA class of case managers, and concluding that because "the Court concludes Plaintiffs do not meet the 'directly related' test, the Court need not consider whether Plaintiffs also exercise discretion and independent judgment under the third prong of the administrative exemption test.");

[50] *See* ORS 744.502(1) (defining "adjuster"); ORS 744.505 (adjuster license required).

[51] In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig., 481 F.3d 1119, 1127 (9th Cir. 2007) (quoting 20 C.F.R. 203(a)).

The exercise of discretion and independent judgment must be more than applying specific standards or procedures described in manuals. Adjusters exercising this elevated level of judgment perform duties including evaluating independent medical examinations; **evaluating investigations of accident scenes, hiring and interacting with nursing services to assist claimants to return to work; approving litigation strategy; participating in hiring experts; serving as lead negotiator in settlement discussions and using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle negotiations with a claimant.**[52]

In *In re Farmers Exchange*, the Ninth Circuit determined whether claims adjusters were exempt administrators. 481 F. 3d 1119 (9th Cir. 2007). In that case, the Ninth Circuit,

relied heavily on DOL's regulations and also on several DOL Opinion Letters that discussed claims adjusters. *Id.* at 1128–29. As we explained then, "the fact that the adjusters 'are not merely pursuing a standardized format for resolving claims, **but rather are using their own judgment about** what the facts show, **who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party'** " was "[e]ssential to the DOL's opinion." *Id.* at 1128 (quoting at DOL Wage & Hour Div. Op. Ltr., at 4–5 (Nov. 19, 2002)).[53]

Matrix has testified that it does not claim that TCEs performed "insurance adjuster" work, and that it had no specific licensure requirements to work as a CFE. (SOF, § 5). Common proof also shows that: CFEs do not inspect property damage, prepare damage estimates, negotiate or settle claims, **or perform any of the duties bolded in the three block quoted paragraphs above.** *Id.* Accordingly, common proof will resolve this issue here.

### c. Whether CFEs' Primary Duty Included the "Exercise of Discretion and Independent Judgment" is Subject to Common Proof.

As recently explained by one court in determining that a recruiter did not exercise sufficient discretion and independent judgment to qualify as an exempt administrator:

---

[52] U.S. Dep't of Labor, Wage & Hour Div., *Field Operations Handbook* §§ 22j22 (a)-(c). www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch22.pdf
[53] *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 853 (9th Cir. 2017)

The regulations instruct that "[i]n general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," and that "the term 'matters of significance' refers to the level of importance or consequence of the work performed." § 541.202(a). The same regulation then goes on to describe multiple factors to be considered which principally include among others the employee's "authority to formulate, affect, interpret, or implement management policies or operating practices;" "whether the employee carries out major assignments in conducting the operations of the business;" "whether the employee performs work that affects business operations to a substantial degree;" "whether the employee has authority to waive or deviate from established policies and procedures without prior approval;" and "whether the employee has authority to negotiate and bind the company on significant matters." § 541.202(b).

In light of these factors (and all others specified in the regulation), it is clear to me that the evidence falls well short of showing that plaintiff's job involved the "exercise of discretion and independent judgment with respect to matters of significance." Plaintiff had no policymaking authority, did not carry out major assignments for the overall business, and had no authority to bind the company on significant matters…. *See also Harper v. Gov't Employees Ins. Co.*, 586 Fed. Appx. 772, 774 n.* (2d Cir. 2014) (…employees "did not qualify as administrative employees where they performed such routine processing functions that they failed to affect the employer's general business operations").[54]

Common proof shows that: CFEs here had no policy making authority, no authority to deviate from criteria to process claims, did not carry out major assignments of the business, or negotiate or bind the company with respect to on significant matters. (SOF, ¶¶ 5, 7).  Rather, common proof shows that the CFE work was controlled by the criteria in customer plans, federal/state law, and Matrix's own internal policies and procedures; and audits performed by Matrix supervisors, "audit team," and QA Department to ensure adherence. (SOF, ¶¶ 4, 8). These policies and audits determine CFEs' level of discretion and judgment. Courts routinely

---

[54] *Sierra v. New England Pers. of Hartford, LLC*, No. 3:15-CV-1520 (JAM), 2017 WL 3711579, at *4 (D. Conn. Aug. 28, 2017) (granting summary judgment to recruiter whose employer claimed she performed "human resources" functions for employer); *see also* ECF 105, p. 9 ("They were primarily responsible for performing human resources functions for their client.").

find "similar evidence to be sufficient to certify a class of purportedly misclassified under Rule 23(b)(3)" in administrative exemption cases.[55] Common evidence will also show that Plaintiffs performed ordinary inspection work under 29 C.F.R. 203(g). Like the plaintiffs in *Rego* and *Clark*, the evidence here shows CFEs primarily perform claims review functions, meaning they were required to "gather… information, and compare this information to [criteria in customer plans] to determine" benefit eligibility."[56] The conclusion of the *Clark* and *Rego* courts, that, "examining medical information and applying it to utilization review guidelines" is inspector-type work under 29 U.S.C. § 541.203(g), which includes "specialized work along standardized lines involving well-established techniques and procedures, which may have been catalogued and described in manuals or other sources," equally applies here."[57] Because CFEs' primary job duty involves "gathering information," "applying known standards [and] prescribed procedures," "determining which [guideline] to follow," and "determining whether prescribed… criteria are met." 29 C.F.R. 203(j), common issues predominate.

## **CONCLUSION**

---

[55] *Dobrosky v. Arthur J. Gallagher Serv. Co., LLC*, 2014 WL 10988092, at *13 (C.D. Cal. July 30, 2014) ("("Plaintiff argues that the Class Members' discretion and judgment is controlled and limited by California workers' compensation laws, Defendant's Best Practices, and the customer service instructions. Plaintiff presents undisputed evidence that all Class Members must abide by these corporate policies and procedures and that failure to do so may result in disciplinary action. (collecting cases)*Boyd v. Bank of Am. Corp.,* 300 F.R.D. 431, 442 (C.D. Cal. 2014) (finding that common questions predominate over individual ones in administrative exemption case where the plaintiff presented evidence that the defendant "promulgated several detailed guidelines to direct the conduct of Residential Appraisers," and that "the conduct of Residential Appraisers is regulated by state and federal law").
[56] *Clark*, 656 F. App'x 688, 689 (5th Cir. 2016).
[57] *Rego*, at 857; *Clark*, 656 F. App'x at 692-693.

Plaintiff respectfully requests that the Court (1) certify the Class; (2) approve the form and content of Plaintiff's proposed judicial notice; and (3) appoint Ms. Stocklein as the Class Representative and the undersigned as Class Counsel. Should the Court be inclined to deny Plaintiff's Motion, Plaintiffs request that it should alternatively certify the following issue under Rule 23(c)(4): Whether CFEs' primary duty is work "directly related to the management or general business operations" of Matrix or its customers.

DATED this 13TH Day of July 2022

/s/ Jack Siegel

CLIFFORD P. BENDAU, II
The Bendau Law Firm, PLLC
P.O. Box 97066
State Bar No. 030204
Fax: (480) 382-5176
cliffordbendau@bendaulaw.com
Phone: (480) 382-5176

TRAVIS M. HEDGPETH*
The Hedgpeth Law Firm, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
P: (281) 572-0727
travis@hedgpethlaw.com

JACK L. SIEGEL*
Texas Bar No. 24070621
Siegel Law Group PLLC
4925 Greenville, Suite 600
Dallas, Texas 75206
P: (214) 790-4454
www.4overtimelawyer.com

*Admitted pro hac vice

**Attorneys for Plaintiffs and Others Similarly Situated**

**CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed through the Court's CM/ECF filing system and that all counsel will receive notice of this filing through this District's CM/ECF system on the date of this filing.

*/s/ Jack Siegel*
JACK SIEGEL