JACK SIEGEL
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
4925 Greenville, Suite 600
Dallas, TX 75206
Telephone: (214) 790-4454
Email: Jack@siegellawgroup.biz
*Admitted Pro Hac Vice*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Tina Weeks, Michael McDonald, and Cassandra Magdaleno, individually and on behalf of others similarly situated,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**Matrix Absence Management, Inc., an Arizona Company,**<br><br>        **Defendant.** | **Civil Action No. 2:20-cv-00884-SPL** |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR
## DECERTIFICATION OF COLLECTIVE ACTION

1

The key question here is whether Plaintiffs are similarly situated.[1] Under *Campbell*: "Plaintiffs are similarly situated … to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.*, at 1117. "Significantly, as long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'"[2] As *Campbell* further explains,

> Under section 216(b), if the party plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims. District courts have ample experience managing cases in this way. For example, Rule 42, which offers a closer analogy to the collective mechanism than Rule 23, already provides for the possibility of partial consolidation for trial, to the extent separate actions involve common questions of law or fact. Fed. R. Civ. P. 42(a)(1).[3]

The "FLSA does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements. *Id.,* at 1115. Rather, "decertification… of otherwise similarly situated plaintiffs cannot be permitted unless the collective mechanism is truly infeasible." *Id.* In *Campbell*, decertification was affirmed because it was infeasible to proceed collectively where the plaintiffs failed to provide evidence of a uniform policy—like Matrix's uniform policy classifying all Telephone Claims Examiners ("TCES") here as exempt administrators—to link the collective.[4] Plaintiffs' claim relies on a theory that Matrix classified CFEs as exempt from the FLSA and the Class did not receive overtime due to the misclassification.

---

[1] *Id.*, at 1111 ("'similarly situated' is the key condition for proceeding in a collective, and thus the issue on which a grant or denial of decertification generally depends").

[2] *Senne v. Kansas City Royals.*, 934 F.3d 918, 948 (9th Cir. 2019) (quoting *Campbell*, at 1114).

[3] *Campbell*, at 1115.

[4] *Campbell* establishes that, without evidence of a common policy linking all collective action members, courts will not find plaintiffs "similarly situated," regardless of the ways in which the plaintiffs may be similar. *See Campbell*, at 1120-21 (affirming district court's decertification

The FLSA employs a two-part conjunctive primary job duty test to determine whether

workers are employed in a bona fide administrative capacity. As explained by the DOL:

> [T]he final administrative exemption regulations establish a two-part inquiry for determining whether an employee performs exempt administrative duties. First, what type of work is performed by the employee? Is the employee's primary duty the performance of work directly related to management or general business operations? Second, what is the level or nature of the work performed? Does the employee's primary duty include the exercise of discretion and independent judgment with respect to matters of significance? *See, e.g., Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125-26 (9th Cir. 2002) (looking to both the type of work and the importance of the work).[5]

To defeat the administrative exemption, Plaintiffs need only demonstrate that Matrix cannot

meet one of the two elements: If Plaintiffs present common proof on either potentially

dispositive element, Plaintiffs "are similarly situated and may proceed as collective" because

they "share a similar issue of law or fact material to the disposition of their FLSA claims."

*Campbell*, at 1117. Indeed, precedent makes clear **summary judgment and class certification**

are warranted based on common proof capable of negating the "directly related" prong of the

administrative exemption, without need to analyze the exemption's other elements.[6]

Matrix attempts to have the court decertify this case by concentrating on slight

differences in the day-to-day job duties performed by CFEs relevant to only one prong of the

---

order in off-the-clock case because police officers did not offer evidence probative of a departmentwide policy discouraging reporting of overtime).

[5] Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 21,144 (April 23, 2004).

[6] *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 849 (9th Cir. 2017); *Heffelfinger v. Elec. Data Sys. Corp.,* 492 F. App'x 710, 714 (9th Cir. 2012) ("The class members shared a common question of law: whether the [CFEs'] duties constituted "work directly related to management policies or general business operations," of [Matrix] or its customers. Because this question predominated … over any need for individualized inquiry into class members' responsibilities, the district court did not err in certifying the class.").

exemption. *See* ECF 112. However, as established by Matrix's own cited case law, *Campbell* rejected the use of the "ad hoc" test for decertification because of the test's "'focus on differences rather than similarities among'" plaintiffs, which led "'district courts [to] treat[] differences as disqualifying, rather than one that treats… similarity' as the key."[7] The Second Circuit recently adopted the *Campbell* standard in *Scott*, a case involving the administrative exemption. In that case, the Second Circuit explains that the district court correctly noted, "the differences in the actual job duties of the [CFEs] are 'better suited for the predominance inquiry…'" and that the differences cited "will not prove fatal to the similarly situated analysis in the same way they proved fatal to the predominance inquiry in this case."[8]

Matrix's Motion must be denied under *Campbell*, because Plaintiffs have met their burden to show that the CFEs are similarly situated for purposes of resolving whether they were subject to a common FLSA-violating policy: Matrix's uniform exemption policy that classifies all CFEs as exempt administrators. Nothing more is required under *Campbell*.

## I.  MATRIX'S MOTION MUST BE DENIED UNDER *CAMPBELL*

Matrix's Motion likely lacks a Rule 11 basis under *Campbell*. First, the motion concentrates on the differences, rather than the similarities, between CFEs: This contravenes the purpose behind *Campbell*.[9] Second, the motion relies on *Guanzon* and *Julian* to irrationally

---

[7] *Campanelli v. Image First Healthcare Laundry Specialists, Inc.,* 2018 WL 6727825, at *6 (N.D. Cal. Dec. 21, 2018) (quoting *Campbell*, at 1113)).

[8] *Scott v. Chipotle Mexican Grill, Inc.,* 954 F.3d 502, 521–22 (2d Cir. 2020), *cert. dismissed,* 142 S. Ct. 639, 211 L. Ed. 2d 421 (2021)

[9] *Campbell,* at 1117 (9th Cir. 2018) ("[U]sing the ad hoc test, with its focus on differences rather than similarities among the party plaintiffs, improperly led the district court into an approach that treats difference as disqualifying, rather than one that treats the requisite kind of similarity as the basis for allowing partially distinct cases to proceed together.").

4

argue that Plaintiffs' common proof on the potentially dispositive "directly related" prong is inconsequential because of its **own opinion** that the "dispositive issue in this case" is the discretion prong; and that because differences exist among the collective for purposes of "discretion prong," prong, the Court should decertify the collective—in full. ECF 112, p. 4, 9. Had *Guanzo*n properly applied *Campbell,* the court would have allowed the collective adjudication of the "directly related" prong, and used its case management tools to facilitate the process. [10][11] *Julian*, on the other hand, actually supports denial of decertification, because the court in that case granted decertification, yet in the same opinion, determined that all members of the collective were administratively exempt (this makes no sense).[12] Third, the motion, by citing to Step-One cases, implies the Court has the same more discretion to deny collective treatment at Step-Two than at Step-One: Under *Campbell,* it has **less**.[13]

---

[10] *Campbell*, at 1115. *See also*, n. 5 (containing full quotation).

[11] However, all blame cannot be cast on the Court in that case because the briefing submitted by the plaintiffs in that case was subpar, at best. *See* Ex. C.

[12] *Julian*, 2021 WL 3887763, at *14 (S.D.N.Y. Aug. 31, 2021) ("The undisputed facts in the record demonstrate that Metlife Claim Specialists' "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "includes the exercise of discretion and independent judgment with respect to matters of significance."); *Id*., at 10 ("Claim Specialists' "primary duty" is handling LTD benefits claims and that this duty is "directly related to the management of general business operations" of Metlife or its customers. **Metlife sells insurance policies** – the primary output of its business.").

[13] *Id.,* at 1115-16 ("[I]f the party plaintiffs' FLSA right to choose collective litigation has any force, "procedural considerations" must mean more than the inconvenience…. Accordingly, … decertification of a collective action of otherwise similarly situated plaintiffs cannot be permitted unless the collective mechanism is truly infeasible."). I*d.,* at 1110 ("The district court took the view that it had the same discretion in considering a motion for decertification as it had on preliminary certification. **It did not.** Preliminary certification… is an area of substantial district court discretion. Post-discovery decertification is not an inquiry into the propriety of notice, and so operates under a different standard.").

Matrix attempts to support its position by citing to inapposite case law involving conditional certification,[14] decertification under the now defunct ad hoc test,[15] Rule 23 class certification;[16] and summary judgment on the executive exemption.[17] The only on-point cases that Matrix cites support Plaintiffs" position: These four "insurance adjuster" cases expose that courts frequently determine whether workers qualify for the administrative exemption, including under 29 U.S.C. 203(a), **on a class or collective basis**.[18]

Here, a uniform administrative exemption policy exists and presentation of common proof negating either prong of the exemption is dispositive on liability. Because the decertification test in *Campbell* requires focus on the dispositive similarities—instead of the ad hoc "three prong test that focuses on points of potential factual or legal *dissimilarity* between

---

[14] *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008)

[15] *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1102 (D. Kan. 2012); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).

[16] *Marlo v. UPS, Inc.*, 639 F.3d 942, 948-49 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945-46 (9th Cir. 2009

[17] *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (granting summary judgment on executive exemption)

[18] *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1130 (9th Cir. 2007) (determining on a class and collective basis that, the "district court's findings [regarding insurance adjusters employed by insurance company] almost track word for word the language in § 541.203, and thus establish [the] claims adjusters are exempt."); *Julian v. MetLife, Inc.,* 2021 WL 3887763, at *10 (S.D.N.Y. Aug. 31, 2021) (determining that Claims Specialists employed by insurance company collectively performed the same primary duty—"handling LTD benefits claims" and that the primary duty was directly related to "primary output of [the employer's] business"—sell[ing] insurance policies); *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 875 (7th Cir. 2008) (determining that employees did not collectively qualify for the administrative exemption where their job duties included  negotiating with body shops, preparing damage estimates using software and settling claims up to $12,000); *MClaughlin v. Nationwide Mut. Ins. Co.,* 2004 WL 1857112, at *10 (D. Or. Aug. 18, 2004) (holding claims representatives working for insurance company collectively satisfied directly related prong because they made decisions in setting reserves, settling claims and negotiating claims that "can and do have substantial impact to defendants" and its policy holders).

plaintiffs"[19]—Matrix fails to provide relevant arguments under *Campbell*. The rest of this Response will focus on showing the dispositive similarities shared by all CFEs, because the Matrix's argument that "differences exist and matter" have no legal or factual basis.

## II.    PLAINTIFFS MEET THE LENIENT BURDEN UNDER *CAMPBELL*

Decertification must be denied under *Campbell* because the Plaintiffs' common proof establishes that Matrix subjected all CFEs to a common policy that classified them as exempt administrators and denied them overtime; and the common proof establishes that they are similarly situated for each dispositive prong of the administrative exemption, and otherwise do not qualify as exempt administrators under 29 C.F.R. 203(a).

A.  Common Proof Shows All TCEs Were Subjected to the Same Uniform Policy

Matrix's uniform exemption policy "suggests that [Matrix] believes some degree of homogeneity exists among the employees" and such "uniform corporate policies will often bear heavily on questions of predominance and superiority."[20] It also supports continued collective treatment under the *Campbell* standard: The Ninth and Second Circuits[21] have analogized to the Rule 23 commonality, as both standards require identification of "shared issues that will collectively advance the prosecution of multiple claims in a joint proceeding."[22]

---

[19] *Id.,* at 1113 (emphasis in original).
[20] *In re Wells Fargo,* 571 F.3d at 957–58.
[21] Notably, the Second Circuit, employing the same standard as *Campbell*, recently remanded a case to the district court in a case involving the administrative exemption. *Scott*, at 521. Significantly, on remand, the Second Circuit charged the district court to reconsider its decertification decision, and to specifically consider its commonality finding, based on the employer (1) uniformly classified the employees as exempt; (2) having the same expectation that the core duties of the employees were the same; and (3) the employer's use of a single job description for the position, in doing so. *Scott,* at 521
[22] *Campbell,* at 1115; *Scott,* at 521-522.

B.  Matrix Admits that all TCEs Performed the Same Primary Job Duty: Processing Claims in Accordance with Language in Customer Policies and State/Federal Law

Matrix admits that the CFEs share the same primary job duty: CFEs' processed claims and this job duty required CFEs to "review information provided by the client, compare it to the clients' policies and guidelines and make [a] decision on whether to approve or deny the claim." ECF 112, p. 5-6.  Matrix claims that this primary duty requires "independent discretion and judgment" for the same reason: Processing claims requires the CFE to apply "contract language" from "disability/leave policies" or "federal and state law" legal standards to process claims.[23] Because Matrix admits CFEs share the same primary duty, whether that duty is "directly related" or "includes discretion" can be resolved on a collective basis.

C.  CFEs are Similarly Situated for Resolving the "Directly Related" Prong

To establish its only defense, Matrix must show the CFEs' primary duty "was directly related to the management or general business operations" of Matrix or its customers. 29 § 541.201(a). The regulations contain examples of directly related work at 29 C.F.R 201(b) that,

> [distinguish between work that] any employer needs performed such as accounting, human resources and regulatory compliance—and work that is particular to an employer's industry. The former is part and parcel of running a business and therefore exempt administrative work. The latter is not."[24]

---

[23] ECF 112, p. 1 ("Matrix [processes] requests for leaves of absence under state and federal laws and employer policies" … and "processes" claims for disability benefits based on client policies….") (citing Ex. 1, ¶ 1-2); *Id.*, p. 1 ("Adjudicating claims requires … understanding of federal and state laws [and] the ability to interpret contractual language to varying fact patterns…") (citing Ex. 1, ¶¶ 3-5).

[24] *Bollinger v. Residential Cap., LLC*, 863 F. Supp. 2d 1041, 1048 (W.D. Wash. 2012) (citing *Bratt,* at 1070).

"[This prong] is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of [the] business' affairs."

*Bothell*, 299 F.3d at 1125. As further explained in Plaintiffs' Motion for class certification:

> The regulations define exempt administrative duties in part by explaining what they are not. Administrative work does **not** include work on a manufacturing line or selling a product in retail or service establishment."[25] This anti-administrative "production work" relates to the "goods and services which constitute the business' market place offerings" rather than traditional notions of manufacturing.[26] This analysis turns on whether the services provided by the employee constitute the marketplace offerings of the employer, or whether they contribute to the running of the business itself. **Courts have consistently held that claims examiners who work for third party administrators do not qualify as exempt administrators because they "produce" the services those companies exist to sell.**[27]
>
> Work directly related to the management or general business operations of the employer's customers may also be exempt. 29 C.F.R. § 541.201(c). "In this context, the major example of exempt administrative work is high level advice or analysis. 'Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.'"[28]

---

[25] 29 C.F.R. 201(b).

[26]*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535–36 (2d Cir. 2009) (quoting *Bothell*, at F.3d 1120, 1127/

[27] *Clark v. Centene Co. of Texas, L.P.,* 44 F. Supp. 3d 674, 684 (W.D. Tex. 2014), aff'd, 656 F. App'x 688 (5th Cir. 2016) (holding "case managers" that review health insurance claims to be non-exempt production workers, explaining that, "Plaintiffs are uniquely positioned to "produce" [defendant]'s "product"—in this case, the service of administering [insurance] claims. If Plaintiffs are administrative employees, it is difficult to conceptualize who within [Defendant's]organization is not an administrative employee."); *Rego v. Liberty Mut. Managed Care, LLC*, 367 F. Supp. 3d 849 (E.D. Wis 2019) (nurses employed by third-party administrator to review workers' compensation claims were involved in "core function" of the company and were therefore not covered by the administrative exemption); *Scott Wetzel Services Inc. v. New York State Bd. of Indus. Appeals* 252 A.D. 2d 212, 215 (1998) (granting summary judgment on "directly related" prong to worker's compensation insurance adjusters whose employer's business was the administration of worker's compensation claims on behalf of its clients); *Reich v. Am. Intern. Adjustment Co.*, Inc., 902 F. Supp. 321, 325 (D. Conn. 1994).

[28] *Bollinger,* 863 F. Supp. 2d at 1048 (citing 29 C.F.R. § 541.201(c)).

ECF 114, p. 13-14. In *Dewan*, the Fifth Circuit explained that whether an advisor or consultant's duties fit within the administrative exemption turns on whether the employees' duties are "directly related to management or general business operations" of the customer.[29] It further explained that, "the focus is not on a general concept of advice or consultancy but rather on 'policy determinations [for] how a business should be run or run more efficiently.'"[30]

Common proof shows Matrix is <u>not</u> an insurance company; it is a licensed third-party administrator ("TPA") that processes STD and LOA claims for its customers: As a licensed TPA, Matrix "administer[s] claims" for its customers, and employs CFEs to "administer claims" for those customers. *Id.*, at 55-56; ECF 60 (Answer), ¶¶ 2-3. The "administrative services" produced by CFEs are the "primary services" sold by Matrix to its customers. 30B6 Dep., at 29, 125.[31] Matrix contracts with customers—which include employers who offer disability/leave plans and an insurance company—to process claims in accordance who with the policies, procedures, and criteria in the customers' policy/plan. *Id.*, at 73, 139.

Common evidence shows that, apart from processing claims in accordance with customer plans, TCEs play no role in administering Matrix's business or taking on major assignments related to its or its customers' operations. 30B6 Dep., at 104-05, 129. TCEs do not supervise anyone. (*Id.*, at 55, 130), formulate or interpret employment policies; make staffing or promotion decisions; set Matrix's budgets; plan Matrix's business objectives; or study business operations to develop proposed changes for Matrix or its customers. *Id.*, at 109-

---

[29] *Dewan v. M-I, LLC*, 858 F.3d 331 (5th Cir. 2017) (quoting and adopting *Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990)) (emphases in original).
[30] *Id.* (quoting *Bratt*, 912 F.2d at 1070) (alteration in original).
[31] *See also id.*, at 124 (Matrix's "primary function is to manage claims" and that Matrix employs TCEs to "manage[] the claims" in accordance with customer plan criteria).

111, 117.  CFEs have no authority to negotiate on behalf of or bind Matrix into contracts with third parties, including Matrix customers. *Id.*, at 104-107.  CFEs do not direct the work of customers' employees and their only communication with Matrix customers related to specific claims filed under the customer's specific policy/plan. *Id.*, at 129-130. Matrix Account Managers—not CFEs—are Matrix's customer "relationship managers" who handle escalated claims processing issues, and fulfill non-claims processing related customer requests. *Id.* at 42.

CFEs are similarly situated for purposes of resolving the "directly related prong" because common proof shows that this prong should be resolved in their favor for three reasons: CFEs' primary duty (1) was to carry out the "day to day business of [Matrix] allowing it to provide the [primary] service it charges customers for,"[32] (2) CFEs' job duties do not "go to the heart of [Matrix's] marketplace offerings, not to the internal administration of [Matrix's] business (or that of its customers),"[33] and (3) CFEs only communicated with Matrix customers about claim-specific issues and accordingly did not provide the type of "high level" advice provided by advisors and consultants. Decertification is unwarranted here.

D. CFEs are Similarly Situated for Resolving Whether They Qualified as Exempt Insurance Adjusters Under 29 C.F.R. 203(a).

As recently explained by the Eleventh Circuit,

A [DOL] regulation provides examples of categories of workers who "generally meet the duties requirements for the administrative exemption." *Id.* § 541.203(a)–(f) (listing categories of workers and some of the duties they perform). Workers who generally are administratively exempt employees

---

[32] *Clark.*, 44 F. Supp. 3d at 681, 684 (**declining to analyze the "discretion" prong in denying motion for decertification** and granting summary judgment to similar group of claims examiners that worked for third party administrator).

[33] *McKeen-Chaplin*, 862 F.3d at 851 ("Because the [CFEs'] duties go to the heart of [Matrix's] marketplace offerings, not to the internal administration of [Matrix's] business…., [Matrix] **cannot prove that the CFEs qualify for the administrative exemption**.").

include: insurance claims adjusters (so long as they have certain responsibilities, including the authority to settle claims), *id.* § 541.203(a); financial services employees (so long as they conduct analysis and do not simply sell financial products), *id.* § 541.203(b); team leaders assigned to complete major projects, *id.* § 541.203(c); executive or administrative assistants to business owners or senior executives (so long as they work "without specific instructions or prescribed procedures" and have delegated authority on matters of significance), *id.* § 541.203(d); human resources managers (but not personnel clerks who just gather information to "screen" job applicants based on minimum requirements), *id.* § 541.203(e); and purchasing agents who have the authority to bind a company on significant purchases, *id.* § 541.203(f).[34]

29 C.F.R. 203(a) and the DOL Field Operations Manual, providing guidance on that regulation, respectfully provide that,

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.[35]

> The exercise of discretion and independent judgment must be more than applying specific standards or procedures described in manuals. Adjusters exercising this elevated level of judgment perform duties including evaluating independent medical examinations; evaluating investigations of accident scenes, hiring and interacting with nursing services to assist claimants to return to work; approving litigation strategy; participating in hiring experts; serving as lead negotiator in settlement discussions and using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle negotiations with a claimant.[36]

---

[34] *Fowler v. OSP Prevention Grp., Inc.*, --F.4th --, at *6 (11th Cir. 2022).

[35] *In re Farmers.*, 481 F.3d at 1127 (quoting 20 C.F.R. 203(a)).

[36] U.S. Dep't of Labor, Wage & Hour Div., *Field Operations Handbook* §§ 22j22 (a)-(c). www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch22.pdf

To succeed on its defense, Matrix must show "whether [the CFEs] performed a sufficient number of the tasks listed" in 29 C.F.R. 203(a) "with sufficient discretion and [independence] to satisfy the administrative exemption's duties requirements."[37]

In *In re Farmers Exchange*, the Ninth Circuit determined whether claims adjusters were exempt administrators. 481 F. 3d 1119 (9th Cir. 2007). In that case,  the Ninth Circuit,

> relied heavily on DOL's regulations and also on several DOL Opinion Letters that discussed claims adjusters. *Id.* at 1128–29. As we explained then, "the fact that the adjusters 'are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party' " was "[e]ssential to the DOL's opinion." *Id.* at 1128 (quoting at DOL Wage & Hour Div. Op. Ltr., at 4–5 (Nov. 19, 2002)).[38]

In *In Re Farmers,* the Ninth Circuit determined that the "district court's findings almost track word for word for word the language in § 541.203, and thus establish that [the] claims adjusters are exempt from the FLSA." *Farmers*, 481 F.3d at 1129.

Matrix's Motion cites to cases in which courts have held that workers qualified for the administrative exemption based on 29 C.F.R. 203(a). In each of those cases, (other than the botched *Julian* decision), the workers were employed by insurance companies and used judgment to determine claim value, negotiate claims and settle claims on behalf of their employers.[39] In contrast, courts regularly hold employees do not perform work under 29

---

[37] *Harper v. Gov't Emps. Ins. Co.*, 586 F. App'x 772, 775 (2d Cir. 2014).

[38] *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 853 (9th Cir. 2017)

[39] *Roe-Midgett v. CC Servs., Inc.,* 512 F.3d 865, 867 (7th Cir. 2008) (holding material damage appraisers to be exempt where they estimated loss, negotiated with mechanics and body shops and settled claims up to $12,000); *In re Farmers*, 481 F.3d at 1130 (holding insurance adjusters exempt based on "district court's findings almost track word for word the language in § 541.203, and thus establish [the] claims adjusters are exempt."); *MClaughlin v. Nationwide Mut. Ins. Co.,* 2004 WL 1857112, at *7 (D. Or. Aug. 18, 2004) (holding casualty claims

C.F.R. 203(a) where the employees—like Plaintiffs here—do not used judgment to determine claim value, participate in litigation, negotiate claims, or settle claims. [40]

Common proof here shows that the CFEs, at most, performed **two of the eight** tasks listed in 29 C.F.R. 203(a), interviewing claimants and making recommendations regarding coverage: CFEs did not inspect property damage, prepare damage estimates, determine liability, negotiate settlements, or make recommendations regarding litigation; nor did they use judgment to determine total claim value. 30B6 Dep., at 101. Common proof also shows that the CFEs did not exercise the "elevated level of judgment" employed by insurance adjusters because they, at most, performed **two of the ten** duties listed in the DOL Field Manual: CFEs do not evaluate investigation of accident scenes, deal with nursing services to assist claimants to return to work, approve litigation strategy, participate in hiring experts, serve as lead negotiators in settlement discussions, use their own judgment about who is liable, use their

---

representatives exempt where they had authority to negotiate, settle and pay claims within their settlement authority" and communicated with "attorneys on claims that went to litigation.").
[40] *Fenton v. Farmers Ins. Exch.*, 663 F. Supp. 2d 718, 726 (D. Minn. 2009) (**holding that while fact that plaintiffs followed detailed manuals did not make them exempt, but the fact that they followed such manuals while having no settlement authority compelled a finding that they did not perform exempt work)** (citing *Cheatham v. Allstate Ins. Co.,* 465 F.3d 578, 585-586 (5th Cir.2006) (explaining that the "requirement that Allstate adjusters must consult with manuals or guidelines does not preclude their exercise of discretion and independent judgment," and finding insurance employees exempt despite their compliance with manuals and guidelines where they had discretion to determine liability and negotiate settlements); *Clark.*, 44 F. Supp. 3d at 683–84 ("Other than "evaluating and making recommendations regarding coverage of claims," CMs do not perform these roles [in 29 C.F.R. 203(a).] [CFEs] review … information and evaluate requested services using various industry payment guidelines. Based on the summary judgment record before the Court, CMs appear to occupy a distinct and separate niche from that of the insurance claims adjuster.") (citing *Rieve v. Coventry Health Care, Inc.,* 870 F.Supp.2d 856, 873 (C.D.Cal.2012) (holding RN case manager of workers compensation claims was not administratively exempt under state-law analogue to FLSA because case manager's claims review job duties were "far from questions affecting management or the general business operations of the business").

own judgment to determine what a claim is worth, or how to handle settlement negotiations. *Id.,* at 100, 102-103. Again, common evidence shows that the CFEs did not use their own judgment to determine liability, claim worth or how to handle settlement negotiations: These are the factors the Ninth Circuit considered "essential to the DOL[] opinion" it relied heavily on *In Re Farmers,* [41] which is the same case that forms the only basis for Matrix's good faith defense to liability in this case.[42] CFEs are similarly situated for purposes of 29 C.F.R. 203(a).

E. CFEs are Similarly Situated for Resolving the "Discretion" Prong

As recently explained by one court in determining that a recruiter did not exercise sufficient discretion and independent judgment to qualify as an exempt administrator:

> The regulations instruct that "[i]n general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," and that "the term 'matters of significance' refers to the level of importance or consequence of the work performed." § 541.202(a). The same regulation then goes on to describe multiple factors to be considered which principally include among others the employee's "authority to formulate, affect, interpret, or implement management policies or operating practices;" "whether the employee carries out major assignments in conducting the operations of the business;" "whether the employee performs work that affects business operations to a substantial degree;" "whether the employee has authority to waive or deviate from established policies and procedures without prior approval;" and "whether the employee has authority to negotiate and bind the company on significant matters." § 541.202(b).
>
> In light of these factors (and all others specified in the regulation), it is clear to me that the evidence falls well short of showing that plaintiff's job involved the

---

[41] *In re Farmers.,* at 1128 ("Essential to the DOL's opinion was the fact that the adjusters "are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party.")

[42] *See* 30B6 Dep., at 204, 209, 211-213; Ex. B (containing joint stipulation of dismissal filed in *Ries v. Matrix Absence Management,* No. 2:16-cv-3388 (ECF 23) ("[I]t was Matrix's position that the … Plaintiffs were appropriately classified as exempt under the administrative exemption, citing 29 C.F.R. § 541.203 and *In re Farmer Ins. Exch.,* [] 481 F.3d 1119 (9th Cir. 2007).").

"exercise of discretion and independent judgment with respect to matters of significance." Plaintiff had no policymaking authority, did not carry out major assignments for the overall business, and had no authority to bind the company on significant matters.... *See also Harper v. Gov't Employees Ins. Co.*, 586 Fed. Appx. 772, 774 n.* (2d Cir. 2014) (...employees "did not qualify as administrative employees where they performed such routine processing functions that they failed to affect the employer's general business operations").[43]

Common proof shows that: CFEs here had no policy making authority, did not carry out major assignments of the business, negotiate or bind the company with respect to significant matters. 30B6, at 104-05, 117, CFEs also had no authority to deviate from customer plan criteria to process claims.[44] Rather, customer plan criteria (or state/federal law for FMLA claims) controlled the CFEs' decisions made. CFE discretion is further constrained by Matrix policies and procedures that set mandatory timeframes to perform specific duties, and audits performed by Matrix supervisors, "audit team," and QA Department to ensure policy adherence.[45] Courts routinely find "similar evidence to be sufficient to certify a class of purportedly misclassified under Rule 23(b)(3)."[46] Common proof will also show that all CFEs performed ordinary inspection work under 29 C.F.R. 203(g). Like the plaintiffs in *Rego* and *Clark*, the evidence here shows CFEs primarily perform claims review functions, meaning they

---

[43] *Sierra v. New England Pers. of Hartford, LLC*, No. 3:15-CV-1520 (JAM), 2017 WL 3711579, at *4 (D. Conn. Aug. 28, 2017) (granting summary judgment to recruiter whose employer claimed she performed "human resources" functions for employer); *see also* ECF 105, p. 9 ("They were primarily responsible for performing human resources functions for their client.").

[44] 30B6 Dep., at 151-152 ("Matrix's goal on ever claim... is to provide a... review of the claim... and to make a determination in compliance with the terms of the disability plan of policy."). *Id.*, at 157 (CFEs "need to understand how the dates of service apply to the policies we administer....") of the client's... plan or policy...? A: Yes.") Id., at 75 ("I mean, determining eligibility just depends on the specific contractor policy, right?"); *See also*, *Id.*, at 158-159, 166.

[45] *Id.*, at 35-36, 57-58.

[46] *Dobrosky v. Arthur J. Gallagher Serv. Co., LLC*, 2014 WL 10988092, at *13 (C.D. Cal. July 30, 2014) (collecting cases).

were required to "gather… information, and compare this information to [criteria in customer plans] to determine" benefit eligibility."[47] *Clark* and *Rego's* conclusion that, "examining medical information and applying it to utilization review guidelines" is inspector-type work under 29 U.S.C. § 541.203(g), which includes "specialized work along standardized lines involving well-established techniques and procedures, which may have been catalogued and described in manuals or other sources," equally applies [to the common facts of the collective] here."[48]

While Matrix cites differences amongst the collective, the differences cited by Matrix[49] are not appropriate for consideration at decertification under *Campbell* and *Scott*.[50] In *Scott*, the

_____

[47] *Clark*, 656 F. App'x 688, 689 (5th Cir. 2016).

[48] *Rego*, at 857; *Clark*, 656 F. App'x at 692-693.

[49] Moreover, some of the differences cited by Matrix simply do not matter because they do not involve CFEs' primary duty (Motion, p. 16-17, "Other examples of discretion and judgment"). Other differences simply do not matter—here or at summary judgment because Plaintiffs' duties do not involve preparing using judgment to determine liability, provide damage estimates or claim value, negotiating claims or settling claims. *Fenton v. Farmers Ins. Exch.*, 663 F. Supp. 2d 718, 726 (D. Minn. 2009) (**holding that while fact that plaintiffs followed detailed manuals did not make them exempt, but the fact that they followed such manuals while having no settlement authority compelled a finding that they did not perform exempt work**); (citing *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585-586 (5th Cir. 2006) (finding insurance employees exempt despite their compliance with manuals and guidelines where they had discretion to **determine liability and negotiate settlements**); ECF 112, p. 14-15 (discussing differences in how plaintiffs "quantified claims" and referring to DOL Wage & Hour Div. Op. Ltr., at 4–5 (Nov. 19, 2002)) (providing that the claims adjusters had "**full and final authority to settle claims** within their designated authority). ECF 112, p. 11-12 (explaining differences on whether plaintiffs used guidelines to process claims) (citing *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 875 (7th Cir. 2008) (holding that use of estimating software did not alleviate need to alleviate discretion where the claims adjusters did not use the software program to "**settle a claim within their prescribed settlement authority**"). Notably, Matrix cites no case law to support that the differences in how CFEs' made "decisions regarding approval or denial" of claims makes decertification appropriate, other than out-of-circuit case law addressing pre-*Campbell* conditional certification and decertification standards, which have no import here. ECF 112, pp. 6, 8 (citing *Green*, 888 F. Supp. at 1102); *and Mike*, 274 F. Supp. 2d 216 at 220.

[50] *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 521–22 (2d Cir. 2020) (in case involving the administrative and executive exemptions, in which the court adopted the *Campbell* standard,

Second Circuit, remanded an order granting decertification, explaining that the district court

correctly noted, "the differences[51] between the actual job duties of [CFEs] are better suited

for the predominance inquiry,"

> If named plaintiffs and opt-in plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may to that extent facilitate the collective litigation of collective plaintiffs' claims…. Because the district court conflated the standards for maintaining a collective action under § 216(b) and a class action under Rule 23, we vacate the decision of the district court and remand for further proceedings consistent with this opinion.

*Scott*, at 522. Accordingly, decertification must be denied under the *Campbell* standard.

## I.     CONCLUSION

Plaintiffs have established that they are similarly situated with respect to resolving two

prongs of Matrix's only defense in this case, either of which is dispositive and material to the

disposition of this action. Under Campbell, the Court must deny Matrix's unsupported bid for

decertification here. In the unlikely event that the Court determines the collective to be

similarly situated with respect to one prong of the exemption at issue, Plaintiffs suggest that

---

noting that the "district court correctly noted, the differences in the actual job duties of the [CFEs] 'are better suited for the predominance inquiry…" and that the differences cited "will not prove fatal to the similarly situated analysis in the same way they proved fatal to the predominance inquiry in this case.");

[51] *Scott v. Chipotle Mexican Grill, Inc.*, 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017), *aff'd in part, vacated in part, remanded,* 954 F.3d 502 (2d Cir. 2020) ("The disparities in job duties in this case seems axiomatic considering that the 516 opt-in plaintiffs worked [in] 37 states across… nine geographic regions…. [The employees] also explained that work settings were also different with regard to: (i) the budget; (ii) payroll and wages; (iii) responsibility over inventory which became "a much more ... active role"; (iv) termination decisions, …. (v) promotions, which grew from none to providing the main recommendation; (vi) her role in the "financial success of the restaurant"; and (vii) the amount of time she spent performing tasks Crew could perform, which decreased from 85-90% of her time to only 30%.").

the Court order expedited briefing on issue so that it can be readily adjudicated on a collective

basis in compliance with *Campbell*. *See*, n. 4.

DATED this 22ND Day of July 2022

/s/ Jack Siegel

CLIFFORD P. BENDAU, II
The Bendau Law Firm, PLLC
P.O. Box 97066
State Bar No. 030204
Fax: (480) 382-5176
cliffordbendau@bendaulaw.com
Phone: (480) 382-5176

TRAVIS M. HEDGPETH*
The Hedgpeth Law Firm, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
P: (281) 572-0727
travis@hedgpethlaw.com

JACK L. SIEGEL*
Texas Bar No. 24070621
Siegel Law Group PLLC
4925 Greenville, Suite 600
Dallas, Texas 75206
P: (214) 790-4454
www.4overtimelawyer.com

*Admitted pro hac vice*

**Attorneys for Plaintiffs and Others
Similarly Situated**

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing was electronically filed through the Court's CM/ECF filing system and that all counsel will receive notice of this filing through this District's CM/ECF system on the date of this filing.

*/s/ Jack Siegel*
**JACK SIEGEL**
