**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Weeks, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>Matrix Absence Management Incorporated,<br><br>    Defendant. | No. CV-20-00884-PHX-SPL<br><br>**ORDER** |

  Before the Court are Defendant's Motion for Decertification of Collective Action (Doc. 112) and Plaintiffs' Motion for Class Certification (Doc. 121). The Motions are fully briefed, and the Court rules as follows.

**I. BACKGROUND**

  On May 6, 2020, Plaintiffs initiated this action alleging they and other similarly situated employees of Defendant were improperly classified as exempt under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and had therefore been denied overtime wages. (Doc. 1). Defendant provides third-party administration of disability and leave-of-absence claims. (Doc. 60 at 2). Plaintiffs worked as "Claims Examination Employees" with the primary duty of "reviewing employee disability and leave of absence claims . . . [to] determine benefit eligibility." (Doc. 60 at 2). Defendant classified Plaintiffs as exempt from overtime pay under the FLSA. (Doc. 60 at 3). Plaintiffs' First Amended Complaint alleges that Plaintiffs "regularly worked over 40 hours per work week" and that, due to "Defendants' misclassification scheme," they were wrongfully

denied the one and one-half times premium pay required by the FLSA for overtime hours worked by non-exempt employees. (Doc. 60 at 3).

On October 15, 2020, the Court conditionally certified the following collective class of employees pursuant to the FLSA: "all individuals employed by Matrix as Claims Examination Employees in the last three years who were paid on a salary basis and classified by Defendant as exempt from overtime compensation." (Doc. 36 at 10). "Claims Examination Employees" was defined to include 22 job titles that allegedly shared the duty of "utilizing [Defendant's] guidelines to determine whether to approve Claims based on whether they meet specific, predetermined criteria." (Doc. 36 at 2 (internal quotation marks omitted)). Further, the Court granted Plaintiff's Motion for Step-One Notice under the FLSA and ordered Plaintiff to notify all members of the class within 21 days. (Doc. 36 at 10). The members then had 63 days to opt into the action. (Doc. 63 at 10).

On February 16, 2021, Plaintiffs moved to amend the Complaint to add an additional named plaintiff, Samantha Stocklein, seeking to bring a claim for failure to pay overtime under Oregon law on behalf of herself and other putative class members employed by Defendant as claims examiners in Oregon, in addition to the FLSA claim. (Doc. 53). On April 22, 2021, the Court granted the Motion to Amend (Doc. 59), and Plaintiff subsequently filed the First Amended Complaint, alleging both the FLSA claim and the Oregon state-law claim. (Doc. 60). On February 22, 2022, the Court denied Defendant's Motion for Judgment on the Pleadings as to the Oregon state-law claim, finding that it is not preempted by the FLSA. (Doc. 91).

After the close of discovery, Defendant filed the instant Motion for Decertification (Doc. 112), asking the Court to decertify the FLSA collective action that it previously certified. In addition, Plaintiffs filed the instant Motion for Class Certification (Doc. 121), seeking class certification under Federal Rules of Civil Procedure ("Rule") 23 with respect to the Oregon state-law claim. The Court now addresses the pending Motions.

///

## II. DECERTIFICATION OF FLSA COLLECTIVE ACTION

### a. Legal Standard

The FLSA generally requires that employers pay their employees time and one-half for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). "Any employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation." 29 U.S.C. § 216(b). A collective action to recover these damages may be brought "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.*

The Ninth Circuit has approved a two-step approach to the certification of FLSA collective actions. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109–10 (9th Cir. 2018). At step one, the Court granted conditional certification and approved a notice and consent form to be sent to all collective action members. (Doc. 36). At the second step, "[t]he employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point," and "[t]he district court will then take a more exacting look at the plaintiffs' allegations and the record." *Campbell*, 903 F.3d at 1109. Even at the decertification stage, it is the plaintiffs' burden to show that collective treatment is appropriate. *See id.* at 1117–18; *Guanzon v. Vixxo Corp.*, No. 17-01157-PHX-DWL, 2019 WL 1586873, at *3 (D. Ariz. Apr. 12, 2019).

Employees are "similarly situated" under FLSA when they are "alike with regard to some *material* aspect of their litigation"—in other words, if they "are alike in ways that matter to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1114. "If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.*; *see also Guanzon*, 2019 WL 1586873, at *3. Likewise, procedural considerations cannot prevent certification "unless the collective mechanism is truly infeasible." *Campbell*, 903 F.3d at 1116.

When decertification overlaps with the merits of a FLSA claim, the summary judgment standard applies. *Campbell*, 903 F.3d at 1117. Thus, the Court cannot weigh evidence going to the merits. *Id.* at 1119. "If collective treatment is premised on a genuine dispute of material fact as to the merits of the party plaintiffs' FLSA claims, the collective action cannot be decertified unless the factual dispute is resolved against the plaintiffs' assertions by the appropriate factfinder." *Id.*

### b. Analysis

This case turns on whether Plaintiffs are subject to the FLSA's administrative exemption, which exempts from overtime pay any persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). To fall under the administrative exemption, an employee "must (1) be compensated not less than $[684] per week; (2) perform as her primary duty 'office or non-manual work related to the management or general business operations of the employer or the employer's customers;' and (3) have as her primary duty 'the exercise of discretion and independent judgment with respect to matters of significance.'" *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 851 (9th Cir. 2017) (quoting 29 C.F.R. § 541.200(a)).

The third element is the material disputed issue in the case.[1] Plaintiffs argue that they are similarly situated with respect to this element because common evidence will show that claims examiners uniformly did not exercise discretion or independent judgment. Defendants counter that deposition testimony shows that claims examiners had varying levels of discretion in performing their tasks. The Court agrees with Defendant. Defendant details six areas where claims examiners had highly disparate levels of

---

[1] Plaintiffs' argument as to the second element is "both inaccurate and irrelevant." *Guanzon*, 2019 WL 1586873, at *5 (rejecting a similar argument). This element is met when an employee's primary duty is performing work "directly related to the management or general business operations of employer *or the employer's customers*." 29 C.F.R. § 541.201(a). This includes work in areas such as "personnel management; human resources; [and] employee benefits." *Id.* § 541.201(b). The Ninth Circuit has made clear that this element turns on the substance of an employee's work, not on corporate form. *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1132 (9th Cir. 2007). Thus, the fact that claims examiners work for a third-party company that administers claims for its clients has no bearing on this element.

4

authority, and Plaintiffs do not dispute those facts. For example, some claims examiners made most or all claims decisions on their own without supervisor input or review, while others merely made recommendations to supervisors or simply provided supervisors with information without making any recommendation. (Doc. 112 at 6–9). In *Julian v. MetLife*, the court held that such a discrepancy required decertification.[2] No. 17-cv-957 (AJN), 2021 WL 3887763, at *3 (S.D.N.Y. Aug. 31, 2021) (decertifying a collective of long-term disability claims specialists). Further, claims examiners had varying levels of authority to determine and approve the amount of benefits owed: new employees had no such authority, but with experience, some claims examiners received authority to approve increasing amounts of benefits; still others handled claims that did not require a calculation of benefits at all. (Doc. 112 at 13–15). Deposition testimony shows similar variations in the level of discretion exercised by claims examiners with respect to diverging from guidelines, sending cases to and relying on the opinions of in-house nurses, interviewing claimants, and drafting denial letters. (Doc. 112 at 9–16).

All of these differences are material as they go to whether or not the third element is met and thus whether the administrative exemption applies. *See Guanzon*, 2019 WL 1586873, at *6–7 (granting decertification where employees had varying levels of discretion in performing several job functions); *Julian*, 2021 WL 3887763, at *11 (finding claims specialists were subject to the administrative exemption where they gathered information and used it to evaluate whether a claim should be approved and what the amount of benefits should be); 29 C.F.R. § 541.202 (listing factors to consider with respect to this element). Because of the dissimilarities between the members of the collective class, "a factfinder would be unable to determine that all plaintiffs in the collective are either exempt or non-exempt in one swoop," and the collective action must be decertified. *Julian*, 2021 WL 2887763, at *3.

---

[2] The Second Circuit applies the same "similarly situated" standard as the Ninth Circuit. *See Julian*, 2021 WL 3887763, at *2; *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 516 (2d Cir. 2020).

Plaintiffs argue that common proof shows that claims examiners "had no policy making authority, did not carry out major assignments of the business, negotiate or bind the company with respect to significant matters." (Doc. 123 at 11). In support of that assertion, Plaintiffs cite to deposition testimony in which Defendant's Rule 30(b)(6) representative was asked about a laundry list of specific tasks that claims examiners do not perform. But the third element of the administrative exemption is concerned with an employee's primary duty—not what the employee does not do. Plaintiff further argues that the discretion of claims examiners was constrained by customer plan criteria, Defendant's policies setting timeframes for performing duties, and audits by supervisors—but as explained, their discretion was constrained to varying degrees such that the administrative exemption may apply to some members of the collective class and not others. Plaintiffs correctly note that the *Campbell* standard focuses more on similarities than differences, but here, Plaintiffs have failed to demonstrate any material factual or legal similarities within the collective class. Accordingly, the Court must decertify the collective action.

### III. CERTIFICATION OF RULE 23 CLASS ACTION

Oregon's overtime wage laws "essentially mirror the FLSA." *Bennett v. SLT/TAG Inc.*, No. CV02-65-HU, 2003 WL 23531402 (D. Or. May 8, 2003); *see also Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 924 (D. Ariz. 2010) (stating that the plaintiff's Oregon state-law overtime claim "essentially seeks to piggy-back thirty days' wages worth of waiting-time penalties onto any alleged FLSA violation"). The FLSA, "by omitting most of the requirements in Rule 23 for class certification, necessarily impose[s] a lesser burden" for certification. *Campbell*, 903 F.3d at 1112. In *Campbell*, the Ninth Circuit rejected reliance on Rule 23 class-action cases in the FLSA context because "it risks importing into the FLSA, contrary to its terms, the 'rigorous analysis' uniquely applied under Rule 23." *Id.* at 1115 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). It follows that if plaintiffs cannot satisfy the standard for FLSA certification, they cannot meet the higher standard for Rule 23 certification of analogous state-law

claims. *See Santiago v. Amdocs, Inc.*, No. C 10-4317 SI, 2013 WL 5444324, at *8 (N.D. Cal. Sept. 30, 2013) ("The Court's conclusion that plaintiffs have failed to demonstrate that the class members are 'similarly situated' for purposes of the FLSA overtime claims forecloses certification of a similarly defined Rule 23 class for plaintiffs' state law overtime claims."). Because Plaintiffs are not "similarly situated" with respect to their FLSA overtime claims, they cannot meet the commonality or typicality requirements for certification of a Rule 23 class, either. *See Parsons v. Ryan*, 754 F.3d 657, 675, 685 (9th Cir. 2014). Accordingly,

**IT IS ORDERED** that Defendant's Motion for Decertification of Collective Action (Doc. 112) is **granted**. The claims of all opt-in plaintiffs are **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 121) is **denied**.

**IT IS FURTHER ORDERED** that pursuant to the Court's July 6, 2022 Order (Doc. 106), any dispositive motions shall be filed no later than **December 21, 2022**.

Dated this 21st day of November, 2022.

Honorable Steven P. Logan
United States District Judge