Tracy A. Miller, SBN 015920
Douglas (Trey) Lynn, SBN 028054
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
2415 East Camelback Road. Suite 800
Phoenix, AZ 85016
Telephone:  602.778.3700
Facsimile:  602.778.3750
tracy.miller@ogletree.com
trey.lynn@ogletree.com
*Attorneys for Defendant Matrix Absence
Management Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Weeks, Michael McDonald, and Cassandra Magdaleno,<br><br>        Plaintiffs,<br><br>    v.<br><br>Matrix Absence Management Inc.,<br><br>        Defendant. | No. 2:20-CV-00884-SPL<br><br>**DEFENDANT MATRIX ABSENCE MANAGEMENT INC.'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Matrix Absence Management Inc. ("Matrix") moves this court for summary judgment as to the individual claims asserted by named Plaintiffs Tina Weeks ("Weeks"), Michael McDonald ("McDonald"), Cassandra Magdaleno ("Magdaleno"), and Samantha Stocklein ("Stocklein") (collectively "Plaintiffs") This motion is supported by the following Memorandum of Points and Authorities and attached Statement of Facts.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs are former Matrix employees, who worked as claims examiners. Plaintiffs allege that Matrix misclassified them as exempt under the Fair Labor Standards Act ("FLSA"). In support of their claims, Plaintiffs put great weight on all of the tasks they do not perform as well as all of the ways they do not satisfy inapplicable examples in the Federal Regulations. However, as the court observed, the application of the administrative

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602.778.3700

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

exemption turns on the primary duties an employee *actually performs*, "not what the employee does not do." ECF No. 128 at 6.

Here, the record evidence demonstrates Plaintiffs' primary duty was the administration of leave of absence, short-term disability, and/or long-term disability claims. Plaintiffs' primary duty was the performance of core human resource and/or employee benefits functions e.g. non-manual work directly related to the management or general business operations of Matrix's customers. As demonstrated by their deposition testimony, Plaintiffs exercised significant amounts of independent judgment and discretion as to the manner in which they handled claims as well as the ultimate disposition of the claims. Plaintiffs' discretionary decisions were extremely important to Matrix and its clients as a wrong decision could expose Matrix or its clients to significant financial, legal, and reputational risk. Because the undisputed evidence establishes that Plaintiffs' primary duties involve office work related to the management or general business operation of Matrix customers as well as the exercise of discretion and independent judgment with respect to matters of significance, Plaintiffs were properly classified as exempt, and Matrix is entitled to judgment as a matter of law. *See* 29 C.F.R. § 541.200(a).

## I.     RELEVANT PROCEDURAL HISTORY

Weeks, McDonald, and Magdaleno filed this lawsuit on behalf of themselves and other allegedly similarly situated claims examination employees. (ECF No. 1). On October 15, 2020, the Court conditionally certified this case to proceed as a collective action. (ECF No. 36). On April 22, 2021, the Court granted Plaintiffs leave to file an amended complaint adding Plaintiff Stocklein as well as Stocklein's claims arising under Oregon law (ECF No. 59). On November 22, 2022, the Court decertified the collective action. (ECF No. 128). The Court's decertification order effectively dismissed the opt-in Plaintiffs' claims without prejudice. *See Campbell v. City of L.A.*, 903 F.3d 1090, 1102 (9th Cir. 2018) ("For a collective action to be 'decertified,' then, means that the plaintiffs cannot proceed collectively on the existing complaint because they are not similarly situated, so the opt-in plaintiffs must be dismissed.").

## II.   LEGAL STANDARD

The FLSA requires employers pay their employees for all hours worked, including time-and-a-half for any hours worked beyond 40 hours per week. 29 U.S.C. § 207(a). However, certain exemptions allow employers to pay employees on a salary basis without the need to pay for overtime work. At issue in this case is the FLSA's administrative exemption. An employee falls within the administrative exemption if the employee:

(1)   is compensated on a salary or fee basis of not less than $684 per week,[1]

(2)   has as the primary duty the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and

(3)   performs duties that include the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

The United States Supreme Court recently rejected the previously-applied standard that exemptions to the FLSA should be construed narrowly. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). Instead, courts must now apply a "fair reading" of the relevant statutes and regulations. *Id*. at 1142-43. While the question of how an employee spends his or her time working is a question of fact, the question of whether the employee's particular undisputed activities exclude the employee from the overtime benefits of the FLSA is a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

## III.   ANALYSIS

Matrix properly classified Weeks, McDonald, Magdaleno, and Stocklein as exempt administrative employees. Matrix paid Plaintiffs on a salary basis of not less than $684 per

---

[1] In September 2019, the Department of Labor revised the regulations located at 29 C.F.R. part 541 with an effective date of January 1, 2020. 84 FR 51230. The revisions increased the guaranteed weekly minimum pay from $455 per week to $684 per week. Plaintiffs' claims involve weeks worked before and after January 1, 2020. However, at all times, Matrix compensated Plaintiffs more than $684 per week.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

week. SOF ¶ 83. Therefore, the record evidence establishes that Plaintiffs meet the salary requirement of the administrative exemption. Plaintiffs also meet the other requirements of the administrative exemption because: (1) Plaintiffs' primary duties were the performance of office work directly related to the management or general business operations of Matrix's customers; and (2) Plaintiffs' primary duties include the exercise of discretion and independent judgment with respect to matters of significance.

**A.** **Plaintiffs' primary duty was the performance of office work directly related to the general business operations of Matrix's customers.**

To meet the second requirement of the administrative exemption, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). "Work directly related to the management or general business operations includes, but is not limited to . . . personnel management; human resources; employee benefits. . . " 29 CFR § 541.201(b). Human resource employees who "interpret **or** implement" employment policies generally meet the duties requirement of the administrative exemption, but clerks who merely screen applications generally do not. 29 C.F.R. § 541.203(e) (emphasis added). However, screening work performed by an employee who makes decisions or recommendations is exempt work "even though routine, because this work is directly and closely related to the employee's exempt functions." *Id.* Plaintiffs have judicially admitted that they interpret or implement employment policies "to determine benefit eligibility." ECF No. 60 at ¶ 13. The Court can, and should, find Plaintiffs' admission as conclusively establishing the second prong of the administrative exemption. *Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980) (admissions in an opposing party's pleadings are admissible evidence and can serve as a basis for summary judgment).

Moreover, each Plaintiff testified that they interpret and/or implement the employee policies of Matrix's clients. Weeks testified that her client, the Federal Reserve, had a uniquely complicated leave policy that she interpreted and applied. SOF ¶ 4-5. McDonald

testified that he would use good judgment to "apply the [claimant's] eligibility to the policy to see if they're eligible for time away from work." SOF ¶ 24-25. McDonald also testified that he was a "policy expert." SOF ¶ 27. Magdaleno used "guidelines" such as her client's policy, Matrix's procedures, and the FMLA regulations to determine whether a claimant was entitled to leave. SOF ¶¶ 50-51. Stocklein administered leave of absence and short-term disability claims. SOF ¶ 60. Stocklein interpreted and applied her clients' short-term disability policies, FMLA regulations, and client specific leave policies that went beyond the FMLA floor. SOF ¶¶ 61-63. Tasks that are analogous to duties performed by employee benefits or human resource managers satisfy the second prong of the administrative exemption as a matter of law. *See Morgan v. Zieger Health Care Corp.*, 13-14809, 2015 WL 4040465, at *2 (E.D. Mich. June 5, 2015) ("These tasks all can be easily analogized to employee benefit functions or human resource functions. Therefore, Defendants shown there is no genuine issue of material fact regarding whether Plaintiff's primary duties were directly related to the management or general business operations of Defendant Botsford."); *see also Julian v. MetLife, Inc.*, 17-CV-957 (AJN), 2021 WL 3887763, at *10 (S.D.N.Y. Aug. 31, 2021) (Long Term Disability Claims Examiners satisfy second prong); *Withrow v. Sedgwick Claims Mgt. Serv., Inc.*, 841 F. Supp. 2d 972, 980 (S.D.W. Va. 2012) (Workers Compensation Claims Examiners satisfy second prong).

The undisputed record evidence demonstrates, as a matter of law, that Plaintiffs' primary duties were the performance of office work directly related to the management or general business operations of Matrix's customers. Therefore, Matrix has satisfied its burden of proof as to the second element. Plaintiffs' arguments suggesting otherwise are misguided. *See* ECF No. 128 at n.1.

### 1. The administrative exemption does not require an employee determine the overall course of policies.

Throughout their certification briefing, Plaintiffs have maintained that the second prong of the administrative exemption requires an employee determine the overall course or policies of a business. In support of this argument, Plaintiffs rely heavily on *Bothell v.*

*Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002) and *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 337 (5th Cir. 2017). Both opinions, and Plaintiffs arguments face the same flaw—they rely on the old version of the administrative exemption test. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 FR 22122-01 (April 23, 2004). Prior to the 2004 amendments to the regulations, the second prong required that an employee's primary duties be directly related to "management <u>policies</u> or general business operations." *See Bothell*, 299 F.3d at 1125 (reciting the old standard); *see also Dewan*, 858 F.3d at 337 (relying on pre-2004 authority and citing the incorrect standard). The current version of the provision requires an employee's primary duties be directly related to "management or general business operations." 29 C.F.R. § 541.200(a).

When issuing the final rule, the Department of Labor explained the deletion of the word "policies" as "recognizing that while management policies are one component of management, there are many other administrative functions that support managing a business." 69 FR 22122-01 at *22138. Two such "other administrative functions" are human resources and employee benefits as the regulations expressly recognize. 29 C.F.R. § 541.201(b). Moreover, *Bothell* and *Dewan* are both invalid and unpersuasive to the extent their holdings rely on a narrow interpretation of the applicable regulations rather than a fair reading. *See Encino Motorcars*, 138 S. Ct. at 1142.

        **2.**    **The fact that Matrix sells claims administration services does not change the fact that Plaintiffs perform human resource services for Matrix's customers.**

Throughout their certification briefing, Plaintiffs aver that Matrix cannot satisfy the second prong of the administrative exemption because Matrix sells the claims administration services that Plaintiffs' provide. Plaintiffs further suggest that, when an employer sells an employee's service to its customers, that employee is only exempt under the administrative exemption when their services involve providing customers high-level advice or analysis. That is not the law. While the regulations do list advisors or consultants (such as tax experts or financial consultants) as **<u>examples</u>** of employees who qualify for

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

the exemption based on work performed for an employer's customers, nothing in the regulation requires high-level advice or analysis. 29 C.F.R. § 541.201 ("Thus, **for example**, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, **for example**) may be exempt." (emphasis added)). Indeed, the DOL has explained section 541.201(c) "is meant to place work done for a client or customer on the same footing as work done for the employer directly." 69 FR 22122-01 *22142. As the Court correctly observed in its order granting decertification, "[t]he Ninth Circuit has made clear that this element turns on the substance of an employee's work, not on corporate form." ECF No 128 at n.1 (citing *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Lit.*, 481 F.3d 1119, 1132 (9th Cir. 2007).

Nevertheless, Plaintiffs attempt to bolster this argument by comparing themselves to the mortgage underwriters in *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847 (9th Cir. 2017) and *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 536 (2d Cir. 2009). Plaintiff's comparison comes up short. *McKeen* and *Davis* both held that mortgage underwriters were not administrative employees because their primary duties went to the heart of their employer's marketplace offerings rather than internal administration. Both opinions suggest that the outcome may have been different if the underwriters advised customers. This distinction is key. Indeed, the *McKeen* court identified the lack of customer advice was one of the key factors that differentiated underwriters from financial advisors listed in section 541.203(b). *McKeen*, 862 F.3d at 53-854. Likewise, the DOL has suggested that an underwriter could satisfy the administrative exemption if they are advising the customer about business mortgages. *See* Administrator's Interpretation No. 2010-1[2] ("However, if the customer is a business seeking advice about, for example, a mortgage to purchase land for a new manufacturing plant, to buy a building for office

---

[2]     Available     at     https://www.dol.gov/agencies/whd/opinion-letters/administrator-interpretation/flsa/2010-1.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

space, or to acquire a warehouse for storage of finished goods, the advice regarding such decisions might qualify under the administrative exemption.").

Thus, Plaintiffs' primary job duties are clearly distinguishable from a mortgage underwriter's primary job duties. A bank's mortgage customers generally are seeking loans for personal residences and do not have "business operations." Thus, the "or the employer's customers" segment of the second prong does not apply to them. By contrast, Matrix's customers are all businesses so the issue becomes whether Plaintiff's "duties go to the heart of [Matrix's client's] marketplace offerings" or "to the internal administration of [Matrix's client's] business." *McKeen*, 862 F.3d at 851. For Plaintiffs, it is clearly the latter.

Weeks' client, the Federal Reserve's, marketplace offering is influencing money and credit conditions in the economy in pursuit of full employment and stable prices. Weeks' administration of the Federal Reserve's long-term disability policy is entirely unrelated. McDonald's primary client, XPO Logistics, offers the market transportation services that are entirely independent of his administration of their short-term disability policy. Magdaleno's client, Dignity Health, provides medical care, which is disassociated completely from her administration of their leave of absence policies. Stocklein had multiple clients with marketplace offerings unrelated to her administration of short-term disability and leave of absence claims. Had Matrix's clients employed Plaintiffs directly, there is no doubt that they performed exempt administrative work. Because Plaintiffs' performed exempt administrative work for Matrix's customers, Matrix properly classified Plaintiffs as its exempt administrative employees.

### 3.   29 C.F.R. § 541.203(a) creates a helpful example not a special rule for insurance adjusters.

29 C.F.R. § 541.203(a) states that insurance claims adjusters usually meet the administrative duties requirement, "whether they work for an insurance company or other type of company." This provision is key to the Ninth Circuit's decision in *In re Farmers*, 481 F.3d 1119, 1132 (9th Cir. 2007). Particularly, in *Farmers*, the Ninth Circuit discussed the California decision of *Bell v. Farmers Ins. Exch*., 87 Cal. App. 4th 805, 825 (2001)

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

(decided under California law). In *Bell*, the court held that claims adjusters were not exempt under California law. The court observed that Farmers Insurance Exchange ("FIE") was a separate company that performed a specialized function within the Farmers Insurance Group of Companies. Particularly, FIE's sole function and marketplace offering was claims handlings for insurance policies issued by other related companies. *Id.* at 824. The *Bell* court concluded that this placed FIE's claims adjusters on the production side of the administrative/production dichotomy. The Ninth Circuit rejected the *Bell* court's conclusion explaining: "That FIE's adjusters represent the claims handling arm of the Farmers Insurance Group of Companies, does **not** mean they fall on the production side of the administrative/production worker dichotomy. To place them there would elevate form—corporate form, to be precise—over substance." *In re Farmers*, 481 F.3d at 1132 (emphasis original). Thus, *Farmers* held that the distinction drawn by the court in *Bell* does not apply to the FLSA.

Nevertheless, Plaintiffs have argued this court should adopt the rule from *Bell* and apply it to the FLSA. In *Bell*, FIE sold insurance adjusting services to other Farmers Insurance Group companies. Here, Matrix sells human resource and employee benefits services to its customers. In *Bell*, the court concluded FIE's adjusters performed production work because FIE sold the adjusters' services regardless of the fact that the work would have been exempt had FIE's customers employed the adjusters directly. Here, Plaintiffs argue that they are production workers because Matrix sells their services and ignore the fact that their job duties would undoubtedly qualify as exempt if the customer employed Plaintiffs directly. Plaintiff's argument is contrary to the plain language of 29 C.F.R. § 541.203(a) and the holding from *In re Farmers*, 481 F.3d at 1132.

Plaintiffs' recognize how harmful this contradiction is to their argument. Thus, to avoid this spot-on analogy, Plaintiffs suggest "29 C.F.R. 203(a) [sic] creates a special exception for insurance claims adjusters." Dkt No. 129 at 8. In addition to being both silly and unsupported by relevant authority, the Ninth Circuit has rejected the contention as applied to the financial-service-industry example in 29 C.F.R. 541.203(b). *See McKeen*,

862 F.3d at 854 ("The financial-services-industry example does not create an alternative standard for the administrative exemption for employees in the financial services industry and it is not an alternative test, and its guidance cannot result in the swallowing of the requirements of 29 C.F.R. § 541.200."). At bottom, federal courts in the Ninth Circuit must follow *In re Famers* when applying the FLSA's administrative exemption. Plaintiffs cannot present a valid reason for this court to disregard *In re Famers* and instead follow *Bell*.

**B.      Plaintiffs' primary job duties involved the exercise of discretion and independent judgment with respect to matters of significance.**

"The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. § 541.202(b). It "implies that the employee has authority to make independent choice, free from immediate direct supervision." *Id.* at § 541.202(c). "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." *Id.* It is undisputed that Plaintiffs' primary duty was the administration of leave of absence, short-term disability, and/or long-term disability claims. SOF ¶¶ 6, 25, 36, 59, and 60.

In performing their primary duties, Plaintiffs were required to exercise significant amounts of independent judgment and discretion when they performed the following activities:

- Interpreting or implementing management policies to make claims decisions or recommendations. *See* 29 C.F.R. § 541.202(b) (relevant factors include "whether the employee has authority to formulate, affect, **interpret**, or **implement** management policies.").

- Deciding when to seek expert input on a claim. *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1130 (9th Cir. 2007) (opining that the decision on when to use computer software to aide in valuing a claim and what weight to give the software's recommendation was akin to deciding when to use the "best tool" for a job.).

- Deciding when and how to use guidelines. *Bucklin v. Zurich Am. Ins. Co.*, 619 F. App'x 574, 5 (9th Cir. 2015) ("An obligation to utilize specific

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

computer programs or to refer to reference manuals and guidelines does not necessarily prevent an employee from exercising independent discretion or judgment.").

- How they communicated with claimants. *See Julian v. MetLife, Inc*., No. 17-CV-957 (AJN), 2021 WL 3887763, at *11 (S.D.N.Y. Aug. 31, 2021) (discretion in interviews supports finding of independent judgment and discretion).

It is important to note that the regulations do not require that Plaintiffs exercise independent judgment and discretion in every aspect of their primary duties. Rather, Plaintiffs' primary duties only have to "include" the exercise of independent judgment and discretion. 29 C.F.R. § 541.202. The word "include" creates a lenient standard that is lower than a "customarily and regularly" standard of the former long form administrative exemption test. *O'Dell v. Alyeska Pipeline Serv. Co*., 856 F.2d 1452, 1454 (9th Cir. 1988), *overruled in part on other grounds*, *Auer v. Robbins*, 519 U.S. 452, 461 (1997).[3]

For human resource employees, the regulations distinguish between employees who "formulate, interpret, or implement employment policies" and personnel clerks who merely screen applicants for minimum qualifications. 29 C.F.R. § 541.203(e). The interpretation and implementation of policies plainly requires the exercise of independent judgment and discretion, while simply comparing applicants to a set of minimum standards does not. However, the regulations recognize that the performance of exempt duties, such as making hiring decisions or recommendations (or in this case benefits or leave decisions), inherently may require the performance of non-exempt screening functions. In such cases, the non-exempt duties (screening applications) constitutes exempt work because it "is directly and closely related to the employee's exempt functions." *Id.*

---

[3] *Auer* overruled *O'Dell* to the extent the decision failed to follow DOL guidelines distinguishing between discretion and the application of skill. *Bothell v. Phase Metrics, Inc*., 299 F.3d 1120, 1129 (9th Cir. 2002). However, *Auer* does not call into question *O'Dell's* analysis that "includes" (as used in the former short form test) requires less independent judgment and discretion than "customarily and regularly" (as used in the former long form test). Indeed, the DOL cited *O'Dell* positively on this distinction when promulgating the 2004 amendments to the administrative exemption. 69 FR 22122 at **22142-43.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

1.   **Tina Weeks' primary duties included the exercise of discretion and independent judgment.**

During the relevant time, Weeks administered long-term disability claims for the Federal Reserve. SOF ¶ 2. The Federal Reserve's long-term disability policy was complicated. SOF ¶ 3. Weeks' primary duty required her to interpret and apply the policy. SOF ¶ 5. Such decisions inherently required the exercise of independent judgment and discretion. Weeks had to compare the medical information to the Federal Reserve's policy to determine if a claimant was eligible for benefits. SOF ¶ 7-8. While, in some cases, Weeks sought input from nurses, Weeks, not the nurses, made the eligibility determinations. SOF ¶ 9. In fact, there were some instances where Weeks recommendation would contradict the nurse's recommendation. SOF ¶ 10.

Weeks also exercised independent judgment and discretion to determine whether a nurse should contact the claimant's physician, whether an independent medical examination was appropriate, whether outside investigators should be hired to investigate a claimant, and whether to seek input from a vocational specialist. SOF ¶¶ 11-13, 17. Although Weeks needed supervisor approval to hire an outside investigator, she was responsible for selecting the vendor and determining what information was appropriate to provide to the vendor. SOF ¶ 14.

When interviewing claimants, Weeks exercised independent judgment in assessing the claimant's credibility. If she thought a claimant was being untruthful, she would send out an activity questionnaire and review the results for inconsistencies. SOF ¶¶ 15-16. At her sole discretion, Weeks would review a claimant's social media accounts as an additional investigative tool. SOF ¶ 18. Weeks would spend about 75 percent of her day analyzing questionnaires, medical information, or surveillance related to the claims she was administering. SOF ¶¶ 19-20.

While Weeks did not have the ultimate authority to close a long-term disability claim, she did make recommendations to her supervisors. SOF ¶ 21. In her three years at Matrix, her supervisors only disagreed with her recommendations when a claim was

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

missing medical information. SOF ¶ 22. Weeks agreed that her work required her to use good judgment. SOF ¶ 1.

Weeks has alleged that her "job duties were routine and rote and did not include the exercise of discretion and independent judgment with respect to matters of significance." ECF No. 60 ¶ 38. The undisputed record evidence demonstrates that this allegation is untrue. While Weeks may not have had unfettered discretion, it is undisputed that her primary duties involved the exercise of independent judgment and discretion. That is all Matrix is required to prove. Therefore, Matrix is entitled to judgment as a matter of law as to Plaintiff Weeks.

### 2. Michael McDonald's primary duties included the exercise of discretion and independent judgment.

Matrix employed McDonald as a claims examiner II, short-term disability and absence management specialist I and II. SOF ¶ 23. McDonald's primary client was XPO Logistics. SOF ¶ 26. McDonald testified that he was a good employee based on his ability to use good judgment when applying XPO's guidelines and policies. SOF ¶ 24. McDonald characterized himself as a "policy expert." SOF ¶ 27. According to McDonald, he did not make any decisions regarding claims. SOF ¶ 30. Rather, except for "obvious" medical conditions, McDonald would send medical records for a nurse review. SOF ¶ 31. While he did not interpret medical records, he would interpret client policies. SOF ¶ 30. After completing his review of a claim, McDonald would send his supervisor a SOAP report. SOF ¶ 28. A SOAP report contains a Synopsis of what is going on, the Objective, the Action, and the Plan. *Id.* Based on the SOAP report/recommendation, McDonald's supervisor would make the ultimate decision. SOF ¶ 29. If a claim was denied, McDonald would communicate the denial to the claimant via telephone and would exercise judgment in determining how much information he shared with the claimant. SOF ¶ 32.

While McDonald may not have exercised as much independent judgment and discretion as Weeks, it is undeniable that his primary duties involved independent judgment and discretion. McDonald's characterization of himself as a "policy expert" makes that

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602.778.3700

clear. Moreover, McDonald admitted that he would interpret client policies. Likewise, McDonald's SOAP reports set forth a plan of action, which is akin to a recommendation. Thus, while McDonald may not have been an ultimate decision maker, he did provide recommendations based on his interpretation of the client's policies, which required him to exercise independent judgment and discretion.

### 3. Cassandra Magdaleno's primary duties included the exercise of discretion and independent judgment.

Matrix promoted Magdaleno from call center supervisor to Leave of Absence ("LOA") Claims Examiner II, in May 2016. SOF ¶ 33. Her main client was Dignity Health, a California based hospital system. SOF ¶ 34. Her primary duties were the administration of FMLA, California Family Rights Act ("CFRA"), and non-protected leave policy claims from Dignity Health's employees. SOF ¶ 35. Magdaleno would review information provided by claimants to either approve or deny leave claims. SOF ¶ 36. Magdaleno would begin by determining whether a claimant qualified for protected leave. SOF ¶ 37. If a claimant did not qualify for protected leave, Magdaleno would investigate whether they qualified under Dignity's other leave policies. *Id.* When claimants qualified for leave, Magdaleno would send them physician certification paperwork and explain to claimants that it needed to be returned within 15 days. SOF ¶ 38. If a claimant failed to timely return their paperwork, a claim should be denied, but Magdaleno would recommend to her supervisor that a denial should be overturned if the physician's certification was returned late. SOF ¶ 39. Magdaleno's supervisor almost always followed her recommendation. SOF ¶ 40.

The primary analysis for a leave of absence claim is determining whether a claimant had a "serious health condition." *See* DOL Opinion Letter, FMLA-87 (December 12, 1996). Magdaleno was responsible for determining whether a claimant had a serious health condition. SOF ¶ 41. If she was unable to make that decision on her own, she had the discretion to seek advice from her supervisors, nurses, or the claimant's medical provider.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

SOF ¶ 42-43. Magdaleno had discretion to reach out to claimants' medical providers to help obtain necessary certifications. SOF ¶ 54.

Magdaleno was also responsible for analyzing claims for abuse. SOF ¶ 44. Likewise, if Dignity suspected a claimant was abusing leave, they would reach out directly to Magdaleno. SOF ¶ 45. When Dignity flagged a claim as suspicious, Magdaleno would analyze the claim file, and then present her findings and recommendations to her managers who would usually follow her recommendation. SOF ¶ 46. On occasion, Magdaleno would prepare fact specific inquiries for a claimant's doctor. SOF ¶ 47. Magdaleno also had to make judgment calls for non-family member leave and apply the in loco parentis doctrine. SOF ¶ 48.

Magdaleno testified that she used "guidelines" in making claims determinations. SOF ¶ 49. However, the "guidelines" were not a checklist or a flow chart. Rather, the "guidelines" included any source of information that would help her process claims including, including Dignity Health's policy, Matrix's procedures, and the FMLA regulations. SOF ¶ 50. Magdaleno's "guidelines" were not step-by-step instructions and did not tell her what to do in every situation. SOF ¶ 51. While Magdaleno had total autonomy to approve or deny claims, she would seek supervisor input on claims once or twice a week and would hand claims off to supervisors once or twice a month. SOF ¶¶ 52-53.

Magdaleno's testimony is clear. She operated with almost complete autonomy when making claims determinations. While she did use "guidelines," she was still required to exercise a significant amount of independent judgment and discretion. Indeed, determining whether a claimant has a serious health condition is a fact-specific inquiry that by its very nature requires independent judgment and discretion. Likewise, she had discretion to determine when to seek input from others about a claim. When she did provide recommendations, rather than make ultimate decisions, her supervisors almost always followed her recommendation. At bottom, Magdaleno's primary duties involved the exercise of significant amounts of independent judgment and discretion. She was more than

a personnel clerk performing screening functions. She served as a human resource/employee benefits manager for Matrix clients.

### 4. Samantha Stocklein's primary duties included the exercise of discretion and independent judgment.

Matrix hired Stocklein as an Absence Management Specialist ("AMS") II on October 31, 2016. SOF ¶ 55. Prior to joining Matrix, Stocklein obtained a law degree. SOF ¶ 56. She was promoted to senior examiner in August 2018. SOF ¶ 57. Her primary job duties required her to assess FMLA guidelines and client policies to determine whether a claimant was entitled to leave and/or short-term disability benefits. SOF ¶¶ 58-59. Stocklein worked with three clients each of which had different short-term disability policies. SOF ¶ 60.

For short-term disability claims, Stocklein had to interpret and apply her clients' policies to determine whether an employee was eligible for benefits. SOF ¶ 61. She also had to interpret and apply FMLA regulations and client specific non-protected leave policies. SOF ¶ 62. Like Magdaleno, Stocklein had to determine whether FMLA claimants had a "serious health condition." SOF ¶ 64. Stocklein had some authority to deny claims without supervisor approval, but denial based on lack of a serious health condition required nurse confirmation and supervisor approval. SOF ¶¶ 65, 74. However, seeking input from a nurse was a discretionary decision. SOF ¶ 70.

Stocklein's duties required frequent phone calls with claimants. To ensure those calls were efficient, Stocklein developed and used her own phone call script. SOF ¶ 66. When processing short-term disability claims, Stocklein had a variety of tools at her disposal including the PACS computer system and the Official Disability Guidelines ("ODG"). SOF ¶¶ 67-68. While these tools were helpful, Stocklein was not required to follow them and she was able to make her own independent decisions about claims. SOF ¶ 69. Stocklein also had discretion to seek a supervisor review to overturn a decision from a nurse. SOF ¶ 71.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

Stocklein had the authority to approve $5,000 in biweekly benefits per claim. SOF ¶ 72. She also had the authority to approve claims for other claims examiners who had lower levels of approval authority. SOF ¶ 73. Stocklein testified that she approved roughly seventy-five percent of claims with no supervisor involvement. SOF ¶ 75.

Stocklein also took on other duties from time to time. She helped Matrix modify its denial letters to fit ERISA guidelines. SOF ¶ 76. She also was part of a team that updated Matrix's behavioral health best practices. SOF ¶ 77. She also trained and reviewed denial letters prepared by other claims examiners. SOF ¶¶ 80-81. In her 2019 self evaluation, she described her quality of work as needing "continued analytical thinking when evaluating claims." SOF ¶ 78. In 2020, her evaluation stated that she needed to "come up with fuller more in depth and detailed strategies to assist with complex claims management issues." SOF ¶ 79.

Stocklein's testimony is clear. Her primary duties involved the exercise of independent judgment and discretion. She was more than a personnel clerk performing screening functions. She was functioning as a human resource/employee benefits manager for Matrix clients.

Additionally, the essential elements of administrative exemption under the FLSA and Oregon law are substantially the same. *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, No. MDL 33-1439, 2008 WL 4763029, at *8 (D. Or. Oct. 28, 2008). However, Oregon law requires an administrative employee "customarily and regularly" exercise independent judgment and discretion and requires the employee "perform[] [work] under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge." The facts, as laid out above, satisfy both the FLSA's standard as well as Oregon's "customarily and regularly" standard. Furthermore, Stocklein operated under general supervision (SOF ¶ 75) on a specialized line requiring specialized training, experience, and knowledge. SOF ¶¶ 55-70. Therefore, Matrix is entitled to judgment as a matter of law as to Stocklein's state law claims.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

### 5.    Plaintiffs' discretion and independent judgment involved matters of significance to Matrix and its clients.

The primary duty of all four Plaintiffs was claims administration. Claims administration was a matter of significance to Matrix and its clients. "The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202. This can include "work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business," or situations where "the employee has authority to commit the employer in matters that have significant financial impact" or "to negotiate and bind the company on significant matters." 29 C.F.R. § 541.202(b). A primary duty relates to a matter of significance when mismanagement could result in loss of money, goodwill, or create regulatory or legal issues. *See Simmons v. USAble Corp*., No. 4:20-CV-00137-KGB, 2021 WL 4505549, at *28 (E.D. Ark. Sept. 30, 2021).

Matrix satisfies the "matters of significance" element of the administrative exemption. The decisions of claims examiners can significantly impact the financial, reputational, and goodwill standing of Matrix's clients (and Matrix) and can result in substantial regulatory or legal issues for them. SOF ¶¶ 84-87. The financial risk stems from the amount of benefits at issue as well as the potential cost of defending a legal or regulatory action, such as a lawsuit under the FMLA, ADA, and/or ERISA, in the event a claims examiner makes an incorrect determination. SOF ¶ 86. Keeping employees satisfied with their employer's implementation of benefits and leave policies also has a significant impact on work force morale, and consequently, employee productivity. SOF ¶ 84. Likewise, misapplication of a client's benefits or leave policy poses a significant reputational risk to Matrix's clients given the significant number of social media platforms dedicated to work-place conditions (e.g. LinkedIn, Fishbowl, GlassDoor, ect.). SOF ¶ 85.

As explained above, Plaintiffs exercised independent judgment and discretion when making claims determinations. These claims determinations are "matters of significance" because mismanagement could result in financial injury to Matrix, financial injury to

Matrix's clients, loss of goodwill for Matrix or its clients, and regulatory or legal issues for Matrix or its clients. SOF ¶¶ 84-87.

### C. In the alternative, Matrix is entitled to judgment as a matter of law on its good faith defense and Plaintiff's allegation of willfulness.

Violations of the FLSA are subject to a two-year statute of limitations unless the Plaintiff proves the violation was willful. 29 U.S.C. § 255(a). An employer's negligence is insufficient. *Baker v. D.A.R.A. II, Inc*., No. CV-06-2887-PHX-LOA, 2008 WL 191995, at *5 (D. Ariz. Jan. 22, 2008). Rather, a plaintiff must prove the employer knew or acted with reckless disregard as to whether its conduct violated the FLSA. *Chao v. A–One Medical Services, Inc*., 346 F.3d 908, 918 (9th Cir. 2003). The court "will not presume that conduct was willful in the absence of evidence." *Alvarez v. IBP, Inc*., 339 F.3d 894, 909 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005).

If a Plaintiff prevails on liability, the court may award liquidated damages unless the employer proves it acted in good faith. 29 U.S.C. § 260. To meet its burden, an employer must demonstrate an objectively reasonable basis for believing its conduct did not violate the FLSA and that it acted in subjective good faith. *Chao*, 346 F.3d 920. "[A] finding of good faith is plainly inconsistent with a finding of willfulness." *Id.* Because Matrix can prove its good faith defense as a matter of law, it is entitled to summary judgment as to liquidated damages and the 2-year limitations period.

Matrix reviewed is classification of claims examiners in response to a lawsuit filed in 2017. SOF ¶ 88. The review was conducted by human resources and the legal department. SOF ¶ 89. The lawsuit, *Ries v. Matrix Absence Management Inc*., was filed in the District of Arizona on October 5, 2016, No. 2:16-cv-03388-ROS. On February 20, 2017, Plaintiff filed a stipulation of dismissal. (Dkt. No. 21). On February 22, 2017, the Court rejected the stipulation of dismissal noting that FLSA claims cannot be dismissed without Court approval. Dkt. No. 22 (citing *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015)). On February 24, 2017, the parties submitted a supplemental notice explaining that after reviewing the facts, 29 C.F.R. § 541.203, and *In*

19

*re Farmers Ins.*, 481 F.3d 1119 (9th Cir. 2007), Plaintiff's counsel was willing to dismiss the case *with prejudice* in exchange for Matrix agreeing not to seek attorneys' fees and costs. Dkt. No. 23. The Court accepted this explanation and dismissed the case with prejudice. Dkt. No. 24.

Thus, in 2017, Matrix reviewed is classification policy. The evidence that claims examiners are properly classified was so overwhelming that a Plaintiff's attorney believed he risked being liable for attorneys' fees if he did not voluntarily dismiss the claims. What is more, after reviewing the facts and the parties' contentions, United States District Judge, Roslyn Silver, agreed that a judgement where plaintiffs **took nothing and dismissed their claims with prejudice** was a fair and reasonable resolution of their FLSA claims. *See Rape v. Shrader & Martinez Construction USA LLC*, No. CV-21-08158-PCT-DJH, 2022 WL 4182351, at *1 (D. Ariz. Sept. 12, 2022) (court must determine whether agreed resolution is fair and reasonable). The court could not have reached this conclusion had it believed that they claims examiners were misclassified as exempt. Thus, the court's decision provides the basis for Matrix's objectively reasonable good faith belief that claims examiners are properly classified exempt administrative employees.

## IV.  CONCLUSION

Plaintiffs' testimony clearly demonstrates their primary duty is the performance of office work directly related to the management or general business operation of Matrix's clients. Their testimony establishes that the performance of this primary duty involved the exercise of discretion and independent judgment with respect to matters of significance. Therefore, Matrix has proven, as a matter of law, that Plaintiffs were properly classified as exempt administrative employees.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

1

RESPECTFULLY SUBMITTED this 4th day of January 2023.

2

OGLETREE, DEAKINS, NASH,
3
SMOAK & STEWART, P.C.

4

By:   */s/ Tracy A. Miller*
5
Tracy A. Miller
Douglas (Trey) Lynn
6
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
7

*Attorneys for Defendant Matrix Absence*
8
*Management Inc.*

9

54435987.v3-OGLETREE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700