JACK SIEGEL
Texas Bar No. 24070621
**SIEGEL LAW GROUP PLLC**
5706 E. Mockingbird, Suite 115
Dallas, TX, 75206
Telephone: (214) 790-4454
Email: Jack@siegellawgroup.biz
*Admitted Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Weeks, Michael McDonald, Cassandra Magdaleno, Samantha Stocklein, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Matrix Absence Management, Inc., an Arizona Company,<br><br>Defendant. | Case No. 2:20-cv-00884-SPL |

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

1

Administrative exemption analysis focuses on the TCEs' primary duty. 29 C.F.R. 200(a). Plaintiffs and other individuals that Matrix employs under "Claims Examiner" job titles (collectively, "CEs") have same primary job duty: Processing disability and leave of absence claims (collectively, "Claims") (ECF 136 ("DMSJ"), p. 10). This primary duty requires comparing claim information to legal standards and standards contained in Matrix Customer's ("Customers") disability/leave policies (collectively, "Predetermined Standards") to make a correct decision on whether to approve or deny a claim. DSOF, ¶¶ 5, 7, 30, 50, 58, 61; ECF 140 ("PSOF"), ¶¶ 5-8. Matrix has admitted that all of Plaintiffs decisions must be made in compliance with Predetermined Standards. PSOF, § 34. Matrix's summary judgment motion must be denied because CEs do not fall under the administrative exemption. On the directly related prong, Defendant only argues that Plaintiffs' job duties are directly related to Customers' management and general business operations, but fails to provide any evidence to show that Plaintiffs provided the requisite advice to Customers to make them exempt under 29 C.F.R. § 541.203(c). Matrix also claims that the Plaintiffs are exempt under §541.203(e) merely because Plaintiffs applied Predetermined Standards to render correct claim decisions, but this argument makes no sense because Plaintiffs did not perform the type of directly related staffing functions performed by HR managers and did not interpret "employment" policies. Moreover, Defendant's claim that its characterization of Plaintiffs' primary duty as work in a functional area listed in §541.202 makes them exempt is incorrect: Work in those functional areas is not exempt unless the work also involves running or servicing a business under §541.201(a), and Matrix has no evidence to show the same. Summary judgment is inappropriate on the third prong as well, as Defendant has failed to provide evidence to show

that processing claims in accordance with Predetermined Standards involves making the type of decisions identified by §541.202(b). Summary judgment must be denied.

## LEGAL ARGUMENT

Under Department of Labor ("DOL") regulations, Matrix must show that Plaintiffs (1) were paid at least $455 per week; (2) performed "as [their] primary duty office or non-manual work related to the management or general business operations of thee employer or the employer's customers"; and (3) have "as [their] primary duty the exercise of discretion and independent judgment with respect to matters of significance." McKeen-Chaplin v. Provident Sav. Bank, 862 F.3d 847, 851 (9th Cir. 2017) (quoting 29 C.F.R. 541.200(a)). "These three conditions are explicit prerequisites to exemption, not merely suggested guidelines." *Id.*

## PROCESSING CLAIMS DOES NOT INVOLVE PERFORMIING ADMINISTRATIVE WORK FOR MATRIX CUSTOMERS

While Matrix argues otherwise (Motion, pp. 5-6), the Ninth Circuit has repeatedly explained that the amendments made to the regulations issued in 2004 "do not represent a change in the law." McKeen-Chaplin, 862 F.3d at 851 (quoting In re Farmers Ins. Exch., 481 F.3d 1119, 1128 (9th Cir. 2007). The regulations' criteria "are absolute and the employer must prove that [an] employee meets every requirement before the employee will be deprived of protection of the Act." Bothell v. Phase Metrics, Inc., 299 F. 3d 1120, 1125 (9th Cir. 2002). The court must give "deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters." In re Farmers, 481 F.3d at 1129.

    A. **Matrix's Only Argument on the Second Prong: Plaintiffs Perform Exempt Human Resources Functions Under §§ 541.201(b), 541.201(e) because Plaintiffs' Primary Duty Involves "Interpreting" or "Implementing" Pre-Existing Leave and Disability Policies to Process Claims.**

3

Matrix's lone theory of liability is that Plaintiffs performed exempt "human resources" functions because they apply pre-established standards to process claims (DMSJ, pp. 4-5):

> To meet the second [prong] of the administrative exemption, "an employee must perform work directly related to assisting with the running or servicing of the business…." 29 C.F.R. § 541.201(a). [Such work] includes…. personnel management; human resources; employee benefits..." 29 CFR § 541.201(b). Human resource employees who "interpret **or** implement employment policies generally meet the duties requirement of the administrative exemption, but clerks who merely screen applications generally do not. 29 C.F.R. § 541.203(e) (emphasis added). However, screening work performed by an employee who makes decisions or recommendations is exempt work "even though routine, because this work is directly and closely related to the employee's exempt functions." Id. Plaintiffs have judicially admitted that they interpret or implement employment policies "to determine benefit eligibility." ECF No. 60 at ¶ 13. The Court…should, find Plaintiffs' admission as conclusively establishing the second prong ….
>
> Moreover, each Plaintiff testified that they interpret and/or implement the employee policies of Matrix's clients [to process Claims]. [citing testimony to show that all Plaintiffs interpreted pre-established legal standards and/or customer disability/leave policy to process Claims]. Tasks that are analogous to duties performed by employee benefits or human resource managers satisfy the second prong of the administrative exemption as a matter of law. See Morgan v. Zieger Health Care Corp., 13-14809, 2015 WL 4040465, at *2 (E.D. Mich. June 5, 2015)….[citing, in support, two district court cases from New York and West Virginia that do not even <u>reference</u> the terms "human resources or employee benefits].

**A. Matrix Has No Evidence to Show that Processing Claims as a CE Involved Providing High-Level Advice to Customers. 29 C.F.R. 201(c).**

**29 C.F.R. § 541.201(c)** states in full that: An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." Id. As explained in <u>Greene v. Tyler Techs., Inc.</u>, 526 F. Supp. 3d 1325, 1341 (N.D. Ga. 2021):

> Courts interpreting [§541.201(c)] have explained that "while the regulations provide that 'servicing' a business may be administrative, § 541.205(b), 'advising the management' as used in [subsection (c)] is directed at advice on matters that involve policy determinations, *i.e.*, how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990) (emphasis added) (finding that probation officers were nonexempt because the services they provided to courts were not related to court policy or overall operational management, contrasting with financial advisers who advise customers on how to increase financial productivity or reduce risk); *see also Boyd v. Bank of America Corp.*, 109 F.Supp.3d 1273, 1288 (C.D. Cal. 2015) (holding real estate appraisers were nonexempt as a matter of law and did not "advise" or consult" with defendant's customers, mortgage lenders… where they did not offer a service meant to guide the internal policies of the customer, contrasting with tax or financial consultants); *Watts v. Silverton Mortgage Specialists, Inc.*, 378 F.Supp.3d 1164, 1174 (N.D. Ga. 2019) (Jones, J.) (finding that plaintiff, a mortgage underwriter, did not function as advisor or servicer to bank's customers where plaintiff "analyzed loan applications utilizing *pre-determined* guidelines for risk provided to her by her employer" and did not market defendant's loans); *Gallegos v. Equity Title Co. of America, Inc.*, 484 F.Supp.2d 589, 595-596 (W.D. Tex. 2007) (determining that duties of escrow officer, who performed closing services for defendant's customers, did not relate to the management or business operations of defendant or its customers, as it was production work that merely applied existing policies and procedures on a case-by-case (customer-by-customer) basis).

See also Dewan v. M-I, L.L.C., 858 F.3d 331, 337 (5th Cir. 2017); Drexler v. Tell Nexx, Inc., 2019 WL 13209271, at *2 (1st Cir. Jan. 24, 2019) (same); DOL Opinion Letter, 2010 WL 1822423, at *7–9. Summary judgment is warranted because Matrix has admitted that TCEs do not advise Matrix customers regarding anything beyond the status of the specific claims that they are assigned to process for those customers. SOF, ¶¶ 27, 28. Indeed, Matrix had account managers that acted as Matrix's "relationship managers" for Customers, whose responsibilities included assisting Customers with updating their leave/disability policies and advising them how they could more effectively run their disability/leave programs. PSOF, § 31. DSOF provides no evidence that Plaintiffs ever communicated with Customers, nonetheless

5

provided them with requisite advice on matters that involve policy determinations advice [to customers] on matters that involve policy determinations, i.e., how a business should be run more efficiently" (DOL Opinion Ltr., 2005 WL 3308616 (Oct. 25, 2005); advice to customers regarding their "overall operational management" (Bratt, 912 F. 2d at 1270); providing a service to meant to guide the internal policies of Matrix's customers (Boyd, 109 F. Supp. 3d at 1288); or overseeing the work of those customers' employees (Dewan, 858 F. 3d at 338). Their work involved applying pre-existing standards to approve or deny a claim to produce administrative services for Matrix customers. SOF, ¶¶ 3, 33. Summary judgment is warranted because "a reasonable jury could not find that [Plaintiffs'] primary duties involved advising [Customers] on matters that involving "running a component of [the customers' business] or determining those customers' overall course and policies." Greene, at 1342 (citing Bratt, at 1070). Accordingly, Defendant cannot meet its burden to prove its only theory of liability on the second prong: That Plaintiffs job duties were directly related to its "management policies or general business operations" of its customers under § 541.201(c)

**B. Processing Claims is Not Work in the Functional Areas of Human Resources or Employee Benefits under § 541.201(b) and, Even Assuming It Was, Defendant Would Still Need to Establish that Plaintiffs Helped "Run" or "Service" the Business of Its Customers under § 541.201(a).**

Defendant argues that Plaintiffs performed exempt HR work based on the mere fact that they applied pre-existing standards to process claims under 29 C.F.R. §§ 541.201(b), 541.203(e). **29 C.F.R. § 541.201(b)** provides that:

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations,

6

> government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

According to the DOL, the regulation is an "illustrative list of the types of functional areas or departments," which "generally relate to the management or general business operations of an employer or [its] customers…." 69 FR 22122-01, *22141-42.

Matrix argues that Tasks analogous to those performed by employee benefits or human resources managers satisfy the second prong of the exemption." Motion, p. 4. However, when courts make such analogies, the workers at issue actually perform the same type of directly related work (e.g., staffing functions) as employees that work in those functional areas. See e.g. Sierra v. New England Pers. of Hartford, 2017 WL 3711579, at *4 (D. Conn. Aug. 28, 2017). (denying summary judgment to recruiter who performed the "same personnel recruitment functions that …businesses…perform in-house through their human resources department").

Here, Plaintiffs simply did not perform human resources functions under 541.202(b) to allow such an analogy. Indeed, Matrix's only justification for characterizing Plaintiffs' claim-processing primary job duty as a "human resource" function, is the fact that Plaintiffs "interpreted" or "implemented" disability and/or leave policies (which falsely labels "employee policies") to process individual claims. Motion, pp. 4-5. However, case law from this District shows that Plaintiffs did not perform the type of HR work performed by, for example recruiters for staffing companies, that perform staffing functions that directly relate to the management or general business operations of customers. Ogden v. CDI Corp., 2010 WL 2662274, at *3 (D. Ariz. July 1, 2010) (collecting cases and DOL opinion letters). These exempt HR employees typically have the have the authority hire, manage, discipline, terminate, manage, coach or counsel candidates placed with staffing company clients; interview

7

applicants, research and implement personnel processes and policies, or otherwise make hiring decisions. *Id.*.; DOL Opinion Ltr., 2005 WL 3308616, at *3 (Oct. 25, 2005) ("recruiting, hiring and managing the temporary labor pool" was work related to the company's clients' business)). DSOF presents no facts to establish Plaintiffs performed such functions.

Second, Matrix claims that the processing of disability and leave claims is analogous to work performed by HR Managers generally considered exempt under 29 C.F.R. 541.203(e). However, the regulation merely corroborates that Plaintiffs did not perform work analogous to that performed by exempt human resources or personnel managers under §541.203(e):

> **Human resources managers** who formulate, interpret or implement **employment policies** … generally meet the duties requirements for the administrative exemption. However, when the interviewing and screening functions are performed by the human resources manager or personnel manager **who makes the hiring decision or makes [hiring] recommendations**, such duties constitute exempt work, even though routine, because this work is directly … related to the employee's exempt functions.

While Matrix contends that summary judgment should be granted (based on partial, incorrect citations to the regulations) because Plaintiffs have admitted that they "interpret" or "implement" customers' disability and leave policies to "determine benefit eligibility," its argument assumes that Plaintiffs (1) worked for as "Human Resources Manager," and (2) that customer disability/leave policies somehow (??) should be considered "employment policies." 29 C.F.R. 203(e) ("<u>Human Resource Managers</u> who… interpret or implement <u>employment policies</u>"). That Plaintiffs did not perform "Human Resources Managers" work is corroborated by the Bureau of Labor Statistics Occupational Outlook Handbook:

> [www.bls.gov/ooh/management/human-resources-managers.htm#tab-2](www.bls.gov/ooh/management/human-resources-managers.htm#tab-2)
> ("Human Resource Managers" typically "plan and coordinate an organization's workforce to best use employees' talents, link an organization's management with its employees, plan and oversee employee benefit programs, serve as a

8

> consultant to advise other managers on human resources issues, such as equal employment opportunity and sexual harassment, coordinate and supervise the work of specialists and support staff oversee an organization's recruitment, interview, selection, and hiring processes; [and] handle staffing issues, such as mediating disputes and directing disciplinary procedures.").

Nor is the Plaintiffs' primary duty of processing disability/leave claims similar to the duties of workers, such as "employment-placement personnel," and "temporary-staffing company managers" found to perform exempt HR work for employer's customers.[1] Perry v. Randstad Gen. Partner (US) LLC, 876 F.3d 191, 198–200 (6th Cir. 2017) (discussing §541.203 and collecting district court cases involving staffing company employees).

Nor did Plaintiffs perform exempt "employee benefits" functions under § 201(b). As explained by in Rego v. Liberty Mutual, 367 F. Supp. 3d 849, 856 (E.D. Wis. 2019):

> That UMNs perform work the ultimate consequence of which may impact the employee benefits and health of the employees of LMMC's customers does not automatically satisfy the "directly related" prong. *See* 29 C.F.R. § 541.201(b) (listing health and employee benefits as functional areas that relate to administrative operations); *Clark v. J.M. Benson Co.*, 789 F.2d 282, 287 (4th Cir. 1986) (finding the nature rather than the ultimate consequence of an employee's work to be critical in the administrative operations inquiry)…. UMN work does not develop, review, evaluate, or otherwise directly impact the business policies or strategies of LMMC's customers, and such work falls outside the types of administrative work that the… exemption contemplates…. Because Plaintiffs'

---

[1] U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook, § 22j13 www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch22.pdf (last visited Jan. 17, 2023) ("Employees of a temporary-placement service generally perform exempt administrative work when their duties include work similar to exempt human resources personnel, such as interviewing and recommending candidates for hiring, resolving pay and benefit issues; resolving conflicts between clients and place personnel; counseling placed and eligible-for-placement personnel; negotiating payment structures with clients; and examining clients' and competitors' capacities, pay, and billing rates.")(citing DOL Opinion Letter, 2017 WL 8792797 (Dec. 18, 2017); *Id.*, at § 22j31 ("A staffing manager [for a temporary staffing company] who has a primary duty of recruiting, hiring, and managing the temporary pool of the employer's clients is performing work in the areas of personnel management, human resources, and labor relations.").

9

> work does not directly relate to ... customers' administrative operations, this prong is not satisfied and the administrative exemption does not apply.

The DSOF presents no evidence that Plaintiffs' primary duty involved developing, reviewing, evaluating or otherwise developing directly impacting the business policies or strategies of Customers; or "planning or overseeing [their] employee benefits programs." Ex. A (HR Managers "plan or oversee employee benefit programs."). While Plaintiffs' duties, in a limited and superficial way implicate human resources or employee benefits tasks, this does not mean it was their "primary duty," or as discussed in the next section, actually involved work that involved "running" or "servicing" the business of Customers.

### C. Matrix Cannot Satisfy 29 C.F.R. 201(a): Processing Claims Does Not Involve "Running" or "Servicing" of the Customers' Business

Contrary to Matrix's position, not everyone that works in the functional areas or departments listed in § 541.201(b) performs exempt administrative work, and merely analogizing to the general areas listed at 541.201(b) does not the render employees' exempt. As recently explained by the First Circuit to reverse a lower court in Walsh v. Unitil Serv. Corp., 2023 WL 154867, at *7–8 (1st Cir. Jan. 11, 2023) that granted summary judgment to an employer by making the type of legally shallow analogy that Defendant makes to establish its administrative exemption defense here:

> To determine whether [the employer] can satisfy the second prong in this regard, we turn to (1) whether the [employees'] primary duties relate to the "running or servicing" of the [employer's customers], and if so, (2) what the scope or "generality" of their role is. See Bratt, 912 F.2d at 1070 ("The test is whether the activities are directly related to management policies or general business operations. ... [This] mean[s] 'the running of a business, and not merely ... the day-to-day carrying out of its affairs.' ").
>
> As previously mentioned, the district court did not apply this "relational" analysis. [T]he district court looked to a list of the functional areas in Section

10

> 541.201(b) that can be, but are not necessarily, administrative depending on the duties of the employees…. The court then concluded that the primary duties performed by the [employees] were analogous to the functional areas of "regulatory compliance," "quality control," and "health and safety."
>
> …. [T]hese analogies cannot bear the weight that the district court placed upon them. As the DOL points out, although the position description for [employees] includes "tasks associated with compliance with regulatory requirements," the record, including the "principal accountabilities" section of the job description, does not indicate that [the employees] do anything beyond engaging in their daily operational duties "within the limits of the applicable Federal, State and Company codes and standards." …. Accordingly, while analogizing to the functional areas may be useful in some cases, here, these analogies do not address or answer the second generality question of the "relational" analysis.
>
> …. That the [employees;] duties may, in a limited or superficial way implicate health, safety, and quality control tasks, does not mean that this was their "primary duty." Further, their duties lack the level of generality required by the regulation and the case law to conclude, without further inquiry, that they were engaged in "management or <u>general</u> business operations" as opposed to routine, day-to-day affairs, <u>Bratt</u>, 912 F.2d at 1070, of the [employer's customers]. It is not clear that they direct business operations "generally" in the way anticipated by the statute and understood by our case law.

**29 C.F.R. § 541.201(a):** An employee's primary duty is only "directly related" to general business operations if it involves "assisting with the running or servicing of the business." "Servicing" the business includes "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, [or] business research and control." <u>Calderon v. GEICO</u>, 809 F.3d 111, 123 (4th Cir. 2015) (quoting 69 Fed. at 22138). The "essence" of this definition "is the running of the business and not merely… the day-to-day carrying out of its affairs." <u>Bratt</u>, 912 F. 3d at 1070.

Here, the DSOF fails to establish any facts that suggest that Plaintiffs "ran" or "serviced" Customers' businesses by "advising [their] management," "planning," "negotiating" or "representing the company" of Customers to satisfy §541.201(a). DSOF

11

presents no evidence that (1) Plaintiffs communicated, nonetheless advised the management of Customers; (2) planned anything, nonetheless made plans for Customers' disability/leave programs (see also PSOF, ¶ 30 (establishing Matrix account managers responsible for making plans for how Customers could run their disability/leave programs more efficiently); (3) Plaintiffs negotiated anything or had any discretionary authority to determine claim value (see also PSOF 19, 26, 36-37); or (4) representing Customers in setting reserves, managing litigation, negotiating claims, effectuating settlements, litigation, or other matters that involved discretionary financial decision-making (see also PSOF, 19, 26, 36-37).

Despite the fact that it does not claim that Plaintiffs worked as insurance adjusters and the fact that Plaintiffs have negated that their work involved the requisite work performed by insurance adjusters generally considered exempt under §541.203(a), Matrix nevertheless contends that Plaintiffs performed work "analogous" to insurance adjusters. Motion, pp. 9-10. See Plaintiffs' MSJ, ECF 138, pp. 16-18 . However, this false analogy fails because Plaintiffs did not "service" Defendant's business in the same ways that insurance adjusters who advise management on things like litigation, have the discretionary authority to determine claim value, "negotiate" settlements on behalf of customers, and represent customers in negotiations with attorneys and claimants and/or in litigation. As explained by the Eleventh Circuit:

> The reason that … adjusters, a category of employees that the district court relied heavily on, are generally considered administrative employees is that they do have significant, policy-infused, decision-making authority, including evaluating and making recommendations about coverage for claims, negotiating settlements, and making recommendations about litigation.

Fowler v. OSP Prevention Grp., Inc., 38 F.4th 103, 112 (11th Cir. 2022); see also In re Farmers., 481 F.3d at 1131  (quoting § 541.205(b) (2004); and Cheatham v. Allstate Ins.

12

Co., 465 F.3d 578, 586 (5th Cir.2006); Rieve., 870 F. Supp. 2d at 875 ("Plaintiff had no authority to make any decision or implement any policy on behalf of her employer, nor is Plaintiff the type of high-level advisor who consults with upper management about policy decisions. Any advice that Plaintiff provided was at the individual level, far removed from advice that is related to management or the general operations of a business."). Because there is no dispute that Plaintiffs' primary duty did not involve running or servicing the business of Customers under § 541.201(a), Plaintiffs cannot establish its exemption defense.

### 29 C.F.R. § 541.202(B), (F): PROCESSING CLAIMS DOES NOT INVOLVE DECIDING SIGNIFICANT MATTERS ON BEHALF OF CUSTOMERS

Under 29 § 541.202(b), the Court must look at ten factors to analyze whether an employee decides "matters of significance" on behalf of a business: Whether the employee:

> [1] has authority to formulate, affect, interpret, or implement management policies or operating practices, [2] carries out major assignments in conducting the operations of the business; [3] performs work that affects business operations to a substantial degree… [4] has authority to commit the employer in matters that have significant financial impact; [5] has authority to waive or deviate from established policies and procedures without prior approval; [6] has authority to negotiate and bind the company on significant matters; [7] provides consultation or expert advice to management; [8] is involved in planning long- or short-term business objectives; [9] investigates and resolves matters of significance on behalf of management; and [10] represents the company in handling complaints, arbitrating disputes or resolving grievances.

Courts generally find that employees who meet "at least" two or three of the § 541.202(b) factors exercise judgment with respect to significant matters. 69 FR at 22143 (collecting cases). Courts generally find that employees who meet at least two or three of the § 541.202(b) factors exercise judgment with respect to significant matters. 69 FR at 22143 (collecting cases). Here, Matrix attempts to carry its burden by arguing that the Plaintiffs satisfied three factors. Here, evidence supports that Plaintiffs had policy-making authority, carried out major

13

assignments, had the authority to negotiate and bind Customers (or negotiate on their behalf at all), or had the authority to deviate from criteria contained in Customer disability or leave policies to process claims. SOF, ¶¶ ___. Indeed, Matrix,

> does not argue that the plaintiffs "formulated" or "affected" management policies. Instead, it argues that they "interpreted" and "implemented" policies by determining whether [Claims] complied with the … specifications [contained in Customer policies]…. The argument is unconvincing…. The functions identified by [Matrix] such as analyzing whether [Claims] met applicable standards, simply constitute the "application of specific standards described in manuals or other sources." § 541.202(e). They do not entail evaluating alternative courses of action after considering various possibilities. *See* § 541.202(a). …. [A]ny advisory power they possessed was based solely on "the development of the facts as to whether there [was] conformity with the prescribed standards." § 541.207(c)(2). Accordingly, the plaintiffs did not formulate, affect, interpret, or implement management policies or operating practices.

Matrix claims that a primary duty relates to a matter of significance when "mismanagement could result in loss of money, goodwill, or create regulatory or legal issues." Motion, p. 5 (citing Simmons v. USAble Corp., 2021 WL 4505549, at *28 (E.D. Ark. Sept. 30, 2021). Simmons does not even analyze § 541.202(b), because the inapposite job duties of security analysts in that case clearly satisfied the regulation. Id. (finding that duties of "developing policies, trainings, and protocols, coordinating audits, reviewing potential contracts, and advising on the management and organization of security information technology" were matters of significance). Moreover, Matrix's own-cited case law establishes that the Plaintiffs here did not perform exempt human resources or employee benefits functions.

Matrix also argues that Plaintiffs decided matters of significance because their work satisfied factors [3], [4], and [7] of 202(b). However, as explained by the Court in denying an

employer summary judgment for not satisfying §541.202(b) and failing to show that the claims examiners in that case performed work analogous to claims adjusters under §541.203(a):

> [T]he "exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). In the 2002 Opinion Letter, the DOL concluded that claims adjusters at issue had "complete discretion and independent judgment with regard to all claims within their established authority. They make all relevant decisions regarding coverage and liability and they negotiate with full authority to attempt to achieve a settlement." *See* 2002 Opinion Letter at 4. The DOL reasoned that these adjusters exercised discretion in deciding how to handle all types of claims, and were not merely pursuing "standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party claimant in order to achieve a successful resolution." *Id.*
>
> In a sense, all employees exercise some amount of discretion and compare and evaluate possible courses of conduct…. Here, construing the facts in the light most favorable to Plaintiffs, I conclude, for purpose of ruling on Defendant's summary judgment motions, that Plaintiffs have no authority to formulate management or operating policies, they have no authority to waive or deviate from established policies, and do not represent American Family in resolving disputes that arise from the claims they handle. 29 C.F.R. § 541.202(b). The parties dispute the financial impact of Plaintiffs' claims handling duties; however, my conclusion would be the same even if American Family could show that Plaintiffs' conduct, in the aggregate, had significant financial impact. "An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202(f). I find that Plaintiffs' job duties truly involve the application of skill in applying well-established "techniques, procedures or specific standards described in manuals or other sources," as opposed to duties that involve the ability to make independent choices free from immediate direction or supervision. 29 C.F.R. § 541.202(c) & (d).
>
> I also find that the DOL's description of the job duties of adjusters in the 2002 Opinion Letter are different from the job duties of Plaintiffs in this case in many significant respects. First, PDCAs do not have complete discretion and independent judgment with respect to the claims they handle. While PDCAs work independently, they process claims within the guidelines established by American Family. In addition, PDCAs do not make coverage determinations, they do not use their own judgment to determine the value of a particular claim,

15

> nor do they determine who is liable. Finally, PDCAs do not engage in meaningful "negotiation" of claims. PDCAs are required to write an accurate damage or total loss estimate and reach agreement with claimants by explaining how they generated this estimate. PDCAs did not have the authority to deviate from prescribed estimating procedures and, therefore, they had no real ability to negotiate the claims they resolved.

In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig., 2007 WL 2936319, at *10-11 (D. Colo. Oct. 9, 2007). Summary judgment must be denied here as well. With respect to the §202(b) factors, Magellan has admitted, or failed to provide evidence, to show that Plaintiffs satisfied factors 1-2, 5-10. With respect to factor 4, while Defendant claims that failure to properly apply the pre-established standards to reach the correct Claim decision on claims could lead to financial loss [factor 4] as explained by the court above, § 541.202(c), (d), & (f) foreclose this argument. Accordingly, Matrix cannot show that the Plaintiffs decided "matters of significance" under § 541.202(b) and summary judgment should be denied on this basis. Talbot, 2008 WL 4525012, at *1, 6 (a "review of the [§ 541.202(b) factors demonstrates that the administrative exemption is plainly intended to for employees who have a hand in running the business and make major, strategic decisions on its behalf. Plaintiffs simply do not fit this categorization."); Easter v. Zions Bancorporation, Nat'l Ass'n, 2019 WL 5261627, at *9 (D. Colo. Oct. 16, 2019) (granting summary judgment where evidence showed her job duties did not satisfy § 202(b) factors 1, 5, 6, 8, and 10); Heard v. Synergy Credit Servs. LLC, 2022 WL 2716542, at *5 (D. Colo. July 13, 2022) (denying summary judgment to employer where plaintiffs' duties could not satisfy factors 1, 4-6); Sierra v. New England Pers. Of Hartford, LLC, 2017 WL 3711579, at *4 (D. Conn. Aug. 28, 2017) (granting summary judgment to recruiter where her job duties did not satisfy factors 1-2, 5); Zannikos v. Oil Inspections (U.S.A.), Inc., 605 F. App'x 349, 358 (5th Cir. 2015) (affirming summary judgment to employee where the work performed "did not

extend beyond the application of skill in applying specified standards to satisfy the 'independent judgment' standard," and § 202(b) factors "only reinforced this conclusion.").

## DEFENDANT'S EVIDENCE DOES NOT ESTABLISH A GOOD FAITH DEFENSE

> To be insulated from liability under § 259's good faith exception, an employer must "show it acted in (1) good faith, (2) conformity with, and (3) reliance on the DOL's regulations or the Administrator's Opinion Letter." *Frank v. McQuigg,* 950 F.2d 590, 598 (9th Cir.1991). This test has both objective and subjective components, asking how a "reasonably prudent [person] would have acted under the same or similar circumstances" and requiring "that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." *Id.* (quoting 29 C.F.R. § 790.15(a) (1900)) (internal punctuation omitted). Section 259's test also places on employers "an affirmative duty to inquire about uncertain [FLSA] coverage issues," *see Keeley v. Loomis Fargo & Co.,* 183 F.3d 257, 271 (3d Cir.1999) (citing 29 C.F.R. § 790.15(b)), putting "the risk of a close [good faith] case on the employer." *Reich,* 38 F.3d at 1127; *see also* 29 C.F.R. § 790.15(d) n. 99 (1999) ("It is not intended that this [good faith] defense [ ] apply where an employer had knowledge of conflicting rules and chose to act in accordance with the one most favorable to him.") (quoting 93 Cong. Rec. 4390 (1947)). The employer bears the burden of proof to establish this exception.

Defendant's reliance on the approval of a dismissal with prejudice, which did not decide issues on the merits, does not show objective or objective good faith reliance under § 259. PSOF, ¶¶ 36-43. Defendant's good faith defense fails based on the same evidence that Plaintiffs presented in support of their argument that summary judgment was willful in their Motion for Summary Judgment, which it incorporates by reference herein. ECF 138, pp. 19-20.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment.

17

Respectfully submitted this January 18, 2023.

/s/ *Jack Siegel*

**JACK SIEGEL**
Texas Bar No. 24070621
**SIEGEL LAW GROUP PLLC**
5706 E. Mockingbird Lane, Suite 115
Dallas, TX, 75206
(214) 790-4454 phone
www.siegellawgroup.biz
**ATTORNEYS FOR PLAINTIFFS**

18

**CERTIFICATE OF SERVICE**

I hereby certify that on a copy of the foregoing document was electronically filed and notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System on the date of this filing.

*/s/ Jack Siegel*
**JACK SIEGEL**