Tracy A. Miller, SBN 015920
Douglas (Trey) Lynn, SBN 028054
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 East Camelback Road. Suite 800
Phoenix, AZ 85016
Telephone: 602.778.3700
Facsimile:  602.778.3750
tracy.miller@ogletree.com
trey.lynn@ogletree.com

*Attorneys for Defendant Matrix*
*Absence Management Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Weeks, Michael McDonald, Cassandra Magdaleno, and Samantha Stocklein, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Matrix Absence Management Inc.,<br><br>Defendant. | No. CV-20-00884-PHX-SPL<br><br>**DEFENDANT MATRIX ABSENCE MANAGEMENT INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is Defendant Matrix Absence Management Inc.'s ("Matrix") Motion for Summary Judgment (ECF 136). On January 18, 2023, Plaintiffs responded (ECF 145). Matrix now replies.

## **INTRODUCTION**

Had Tina Weeks been employed by the Federal Reserve, she would have been an exempt administrative employee. Had Michael McDonald been employed by XPO Logistics, he would have been an exempt administrative employee. Had Cassandra Magdaleno been employed by Dignity Health, she would have been an exempt administrative employee. Had Samantha Stocklein been an employee of any of her three clients, she would have been an exempt administrative employee.

Nevertheless, throughout this litigation, Plaintiffs have maintained Matrix misclassified them because they were employed by Matrix and not Matrix's customers. The gravamen of Plaintiffs' argument is the incorrect assumption that the administrative exemption requires a high level of advice to management or a high level of running or servicing a business. Neither the case law nor the regulations set the bar as high as Plaintiffs' suggest. However, when Plaintiffs' arguments are scrutinized, their mistake becomes obvious. Plaintiffs repeatedly ignore the word "**OR.**" Indeed, when Plaintiffs' cited authority is reviewed with special attention paid to the word "or," their arguments fall apart.

## **THE FACTS ARE UNDISPUTED**

Plaintiffs do not dispute that their primary job duty involved interpreting, implementing, and applying employment policies promulgated by Matrix's clients. *See* SOF ¶¶ 4, 24, 25, 27, 35, 58, and 62.[1] Rather, Plaintiffs' sole argument is that interpreting, implementing, and applying a policy is insufficient to satisfy the second prong of the administrative exemption. Likewise, Plaintiffs do not dispute Matrix's factual contentions offered as proof that Plaintiffs exercised independent judgment and discretion. Instead, Plaintiffs contend that because Matrix does not link this undisputed independent judgment and discretion to the non-exclusive list of factors identified in 29 C.F.R. § 541.202(b) summary judgment is inappropriate. Finally, Plaintiffs do not present any **evidence** demonstrating that Matrix lacked subjective or objective good faith. Rather, Plaintiffs appear to argue that Matrix's 2017 review of its classification of claims examiners was not

---

[1] Plaintiffs contend that Matrix "falsely labels" the policies as employee policies. However, Plaintiffs do not explain why Matrix's characterization is "false" or how a policy regarding a benefit available to an employee (e.g. short-term disability benefits, long-term disability benefits, and non-protected leave benefits) are anything other than an employment/employee policy. Indeed, Weeks interpreted and applied her client's self-funded long-term disability policy. SOF ¶ 3. McDonald interpreted and applied his clients' guidelines and policies. SOF ¶ 24. Magdaleno's client had FMLA, California Family Rights Act, and non-protected leave policies for their employees, which she had to interpret and apply. SOF ¶ 35. Stocklein had to interpret and apply both leave of absence and short-term disability policies. SOF ¶ 60. All of these policies are internal client policies that benefit employees. Thus, they are employment policies.

2

1 done in good faith because Matrix relied on analogous Ninth Circuit authority instead of
2 factually identical (but also non-existent) authority directly on point. As explained below,
3 Plaintiffs' legal arguments are unfounded and, therefore, Matrix is entitled to judgment as
4 a matter of law.

## THE COURT HAS ALREADY RULED ON THE SECOND PRONG

In its order granting decertification (ECF 128), the Court explained "Plaintiffs' argument as to the second element is both inaccurate and irrelevant." The court made clear performing personnel management, human resources, and employee benefits for an employer's customer satisfies the second prong of the administrative exemption. Nevertheless, Plaintiffs persist in their second element argument. Amazingly, Plaintiffs' only argument is that the court was wrong followed by a citation to inapposite case law. Plaintiffs' argument is nothing more than an attempt to distract from the fact that they cannot prove the existence of a genuine issue of material fact as to the third element of the exemption. Indeed, of the three and one-half pages of arguments Plaintiffs devote to the third element, Plaintiffs fill one and one-half pages with block quotes. The remainder of Plaintiffs' argument ignores the facts and arguments presented in Matrix's motion and attempts, poorly, to tear down a straw man. At bottom, Plaintiffs know that Matrix has satisfied its burden and is entitled to judgment as a matter of law.

## ARGUMENT AND AUTHORITY

**A. Plaintiffs' primary duty is directly related to the management OR general business operations of Matrix's clients.**

"To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management **or** general business operations of the employer **or** the employer's customers." 29 U.S.C. § 201(a) (emphasis added). In the human resources/employee benefits role, the prong may be satisfied where the employee "interpret[s] **or** implement[s] employment policies." 29 U.S.C. § 203(d) (emphasis added). Despite the clear regulatory language on point, Plaintiffs maintain that interpreting or

3

1 implementing employment policies is insufficient. To support their argument, Plaintiffs
2 cherry pick quotes from cases and draw conclusion not supported by the courts' analysis.

3       Plaintiffs rely heavily on the Ninth Circuit's decision in *Bratt v. Cnty. of Los
4 Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990). Particularly, Plaintiffs repeatedly cite to
5 *Bratt* for the proposition that the directly related means "the running of a business, and not
6 merely . . . the day-to-day carrying out of its affairs." Plaintiffs argue that interpreting
7 employment policies and applying them to individual employees is nothing more than day-
8 to-day carrying out of Matrix's clients' affairs because they do not advise the clients on
9 high level policy determinations. Plaintiffs, however, ignore the next sentence in *Bratt*,
10 which states, "DPO II Employees primarily involves the day-to-day carrying out of the
11 business' affairs, rather than *running the business* itself **or** determining its overall course
12 or policies." *Id.* (emphasis added). Thus, *Bratt* is clear an employee is not engaged in the
13 "day-to-day" carrying out of a business's affairs if they are (1) making policy decisions **or**
14 (2) running the business itself. *Bratt* does not explain what it means for an employee to be
15 "running the business itself," but the Ninth Circuit hinted at a definition in *In re Farmers
16 Ins. Exch*, 481 F.3d 1119, 1131 (9th Cir. 2007).

17       In *Farmers*, the court explained: "An employee 'whose responsibility it is to execute
18 or **carry** . . . **out'** policy may satisfy the 'directly related' prong if his work is otherwise of
19 'substantial importance' to the management **or** operation of the business. *Id* (citing the
20 former 29 C.F.R. § 541.205(c) (2004)). Thus, the *Farmers* decision clarifies that an
21 employee is "running the business itself" when they are executing or carrying out policy
22 that is important to the operation of the business. Thus, *Famers* like *Bratt* holds that the
23 directly related prong is not limited to employees that engage in high level advising or have
24 policy making authority. Instead, it also includes employees engaged in "many other
25 administrative functions that support managing a business" including employees engaged
26 in "operation of the business as a whole" "or whose work affects business operations to a
27 substantial degree." Defining and Delimiting the Exemptions for Executive,
28 Administrative, Professional, Outside Sales and Computer Employees, 69 FR 22122-01.

4

Still, *Famers* did not clearly delineate between the "day-to-day" business affairs and the "operation of the business as a whole." However, when the administrative/production dichotomy is considered, the distinction becomes clearer.

"The purpose of the dichotomy is to clarify the meaning of 'work directly related to the management policies **or** general business operations,' not to frustrate the purpose and spirit of the entire exemption." *Webster v. Pub. Sch. Employees of Washington, Inc.*, 247 F.3d 910, 916 (9th Cir. 2001) (emphasis added). In *Brothell*, the Ninth Circuit observed, "The administration/production distinction thus distinguishes between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'" *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002). Thus, *Brothell* represents the general proposition that the further removed an employee's duties are from the employer's market place offering the more "administrative" those duties are. The concept that "administrative" duties are those general business duties that are sufficiently removed from the employer's market place offering is also supported by *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 855 (9th Cir. 2017) ("However, the question is not whether an employee is essential to the business, but rather whether her primary duty goes to the heart of internal administration—rather than marketplace offerings.").

When viewed as a whole, the Ninth Circuit authority appears to create an overlapping two-phase analysis as to the "directly related" prong. The first step is derived from *Brothell* and *McKeen-Chaplin* and requires the employee's duties be sufficiently removed from the employer or their customer's marketplace offering. Here, Plaintiffs do not dispute that their primary duties are wholly unrelated to Matrix's customers' marketplace offerings. ECF 136 at 8. The second step is gleaned from *Bratt* and *Farmers* and requires an employee's duties involve running or operating the business, generally, as opposed to carrying out its "day-to-day" activities. The second step is satisfied where the primary duty is of substantial importance to the operation of the business. Here, Plaintiffs do not dispute that their interpretation and application of customers' employment policies

5

1 was important to the operation of the customers' business. The second step can also be
2 satisfied where the employee's duties are included in the enumerated "functional areas" set
3 forth in 29 C.F.R. § 541.201(b). *See Bothell*, 299 F.3d at 1126 ("On close examination,
4 however, those cases use the term to describe those activities which are both ancillary to
5 'production' and listed in 29 C.F.R. § 541.205(b)."). Here, Plaintiffs' duties are included
6 in the enumerated functional areas of personnel management, human resources, employee
7 benefits and/or labor relations. Thus, it is clear that, under Ninth Circuit precedent, Matrix
8 has established the "directly related" prong as a matter of law.

9 It is also worth noting that Plaintiffs devote almost an entire page of their Response
10 to a block quote from *Walsh v. Unitil Service Corporation*, 2023 WL 154867 (1st Cir.
11 2023). However, Plaintiffs elect not to quote the rule set forth in *Walsh*, which is well
12 articulated. In *Walsh*, the court reasoned that the directly related prong is a "rational" test.
13 The court stated that the test entails two questions: "(1) whether the employee's role relates
14 to 'running or servicing the business,' and if so, (2) what the scope or 'generality' of the
15 employee's role is. *Id.* at *4 (citing *Bratt*, 912 F.2d at 1070).

16 As to the first question, the court begins with the administrative-production
17 dichotomy, but warns that too much focus on the dichotomy may result in missing the
18 forest through the trees. *Id*. (citing *Borthell*, 299 F.3d at 1127). The second portion of the
19 test, according to *Walsh*, is "a bit more subtle" in the case law but focuses on the word
20 "general" in the phrase "management or general business operations." *Id.* at * 5 (quoting
21 29 C.F.R. § 541.200(a)(2)). The court goes on to explain:

> To satisfy this second, more subtle, aspect of the test, an employee's job
> duties must implicate or include responsibility for "general" (i.e., higher-
> level **or** more widely applicable) aspects of the business's operations. Put
> another way, the test is not satisfied if an employee's duties include only the
> execution of routine, day-to-day operations. Such tasks would not rise to the
> level of "generality" across **or** within the organization that is contemplated
> by the regulation. *Id.* (emphasis added).

27 The two question rule set forth in *Walsh* is an undeniably accurate compilation of
28 the rules described in *Brothell, McKeen-Chaplin, Bratt,* and *Farmers*. The rule also goes

6

one step further explaining the difference between the "day-to-day" carrying out of a business's affairs and running the business itself, a distinction the Ninth Circuit left somewhat open in *Bratt* and *Farmers*. To fill in that blank, the *Walsh* court looked to the plain language of the statue concluding that the relevant issue was the "generality" of the employees' job duties. *See* 29 U.S.C. § 541.200(a)(2) ("Whose primary duty is the performance of office or non-manual work directly related to the management or *general* business operations of the employer or the employer's customers.").

Applying *Walsh* here, it is undisputed that Plaintiffs are responsible for the "general" business operations. Contrary to Plaintiffs' claims, responsibility for general business operations does not require a high-level responsibility but instead requires high level **or** widely applicable responsibility. The Plaintiffs interpret, implement, and apply employment policies that are applicable to all employees across the client regardless of what the client or their specific employees do. *See Bollinger v. Residential Capital, LLC*, 863 F. Supp. 2d 1041, 1048 (W.D. Wash. 2012) ("[The 29 C.F.R. § 541.201(b)] list distinguishes between work that any employer needs performed—such as accounting, human resources, and regulatory compliance—and work that is particular to an employer's industry."). Thus, Plaintiffs have a widely applicable responsibility for an aspect of the administration of Matrix's customers' general business operations (e.g. human resources/employee benefits). Accordingly, the second prong of the administrative exemption is satisfied as a matter of law.

### B. Plaintiffs' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Rather than address the arguments and evidence presented in Matrix's motion, Plaintiffs argue that, to satisfy the third prong of the administrative exemption, Matrix must satisfy at least two or three of the factors listed in 29 U.S.C. § 541.202(b). ECF 148 at 13-14. Once again, Plaintiffs cherry pick partial quotes and disregard the law. When promulgating the 2004 amendments to the administrative exemption, the DOL opined: "Federal courts generally find that employees who meet at least two or three of these factors

are exercising discretion and independent judgment, although a case-by-case analysis is required." 69 FR 22122 at * 22143. The DOL also noted that the factors were non-exclusive explaining:

> Other factors which federal courts have found relevant in assessing whether an employee exercises discretion and independent judgment include the employee's freedom from direct supervision, personnel responsibilities, troubleshooting or problem-solving activities on behalf of management, use of personalized communication techniques, authority to handle atypical or unusual situations, authority to set budgets, responsibility for assessing customer needs, primary contact to public or customers on behalf of the employer, the duty to anticipate competitive products or services and distinguish them from competitor's products or services, advertising or promotion work, and coordination of departments, requirements, or other activities for or on behalf of employer or employer's clients or customers. *Id.* at *22144

Moreover, the regulations are clear, "The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. § 541.202(b). The standard clearly does not fit within Plaintiffs' proposed "satisfies or does not satisfy a specific list of factors" test. Indeed, the Ninth Circuit has stated the standard requires "that the [employee] has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Bothell*, 299 F.3d at 1129.

Matrix's Motion for Summary Judgment devotes six pages to setting forth the discretion and independent judgment Plaintiffs exercised in performing their job duties. The only factual dispute Plaintiffs offer is that, to the extent Matrix's statement of facts implies that Plaintiffs were not required to follow the law or issue claims determinations in a manner consistent with client policies, the facts are "misleading." Undoubtedly, Matrix does not contend Plaintiffs had the discretion to disregard the law. Likewise, Matrix does not contest that Plaintiffs' claims determinations had to be consistent with the applicable policy. However, the fact that Plaintiffs' discretion was in some aspects limited does not change the fact that Plaintiffs' primary job duties involved discretion and independent judgment. *See Dannenbring v. Wynn Las Vegas, LLC*, 646 F. App'x 556, 557 (9th Cir.

8

1 2016) ("The Wynn did impose guidelines on these tasks, but the term discretion and
2 independent judgment does not require that the decisions made by an employee have a
3 finality that goes with unlimited authority and a complete absence of review.").

4       Moreover, even if the court were to adopt Plaintiffs' two or three factor test, the
5 undisputed facts clearly show that Matrix has more than carried that burden. To satisfy
6 factor 1, Plaintiffs must have the authority to interpret **or** implement policies or operating
7 practice. All of the Plaintiffs satisfy this factor. *See* SOF ¶¶ 5, 24, 27, 35, 61, and 62.
8 Likewise, Plaintiffs' perform work that affect business operations to a substantial degree
9 satisfying factor 2. SOF ¶ 84-87. Furthermore, claims administration by its very nature
10 requires the investigation and resolution of matters of significance and satisfy factor 9. As
11 to the other factors recognized by the DOL as potentially relevant, all of the Plaintiffs
12 testified that they had very little active direct supervision. SOF ¶¶ 21-22, 28-30, 52-53, and
13 75. Plaintiffs McDonald and Stoecklein personalized their own communications
14 techniques. SOF ¶ 32 and 66. All four Plaintiffs were the primary contact for claimants on
15 behalf of Matrix's clients.

16       At bottom, Plaintiffs' undisputed testimony regarding the manner in which they
17 performed their work, clearly establishes that they exercised independent judgment and
18 discretion with respect to matters of significance. Therefore, Matrix is entitled to judgment
19 as a matter of law.

20     **C.    Plaintiffs have failed to identify a genuine factual dispute as to Matrix's good faith defense or its burden to prove a willful violation.**
21

22       The limitations period for an alleged FLSA violation is two years unless the
23 Plaintiffs can prove that the Defendant's violation was willful. 29 U.S.C. § 255(a). To
24 establish a willful violation Plaintiffs must prove Matrix "knew or showed reckless
25 disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*
26 *v. Richland Shoe Co*., 486 U.S. 128, 133 (1988); *Alvarez v. IBP, Inc*., 339 F.3d 894, 909
27 (9th Cir. 2003). Here, Plaintiffs do not allege Matrix actually knew its conduct violated the
28 FLSA. Therefore, they are left to prove willfulness under the reckless disregard standard.

An employer acts with reckless disregard when it is "on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them." *Alvarez*, 339 F.3d at 909. However, mere negligence or a defendant's good faith, but incorrect assumption that it is complying with the FLSA will not suffice. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). What is more, the court will not "presume that conduct was willful in the absence of evidence." *Alvarez*, 339 F.3d at 909.

Courts have repeatedly found as a matter of law that an employer did not act willfully when the DOL or similar agency investigates, but determines that compensation practices do not run afoul of the FLSA. *See e.*g., *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 898 (S.D. Tex. 2011) (applying two year statute of limitations where employer's compensation at issue in suit was addressed by DOL in audits and did not result in any finding of a FLSA violation); *Zachary v. Rescare Okla., Inc.*, 471 F. Supp. 2d 1183, 1189-92 (N.D. Okla. 2006) (applying two year statute of limitations after DOL conducted an investigation and concluded defendants' conduct did not violate the FLSA); *Dalheim v. KDFW-TV*, 712 F. Supp. 533, 539-41 (N.D. Tex. 1989) (finding defendant acted in good faith and on reasonable grounds in part because defendant received a favorable DOL investigation covering all categories of employees at issue in the litigation).

Here, the undisputed evidence establishes that Matrix was sued for the same classification scheme Plaintiffs complain of here. *Ries v. Matrix Absence Management Inc.,* 2:16-cv-3388-ROS (D. Ariz). During that litigation, Matrix's human resources and legal department reviewed its classification of claims examiners. SOF ¶ 88-89. Matrix presented its findings to the Plaintiff's attorney who agreed to voluntarily dismiss the case with prejudice. The court agreed that a voluntary dismissal *with prejudice* in exchange for Matrix not seeking attorneys' fees and costs was a fair and reasonable resolution of the FLSA claims. Matrix was thus acting in good faith in reasonable reliance on the court's review of the dismissal.

Nevertheless, Plaintiffs maintain Matrix's reliance on the *Ries* outcome was unreasonable. Plaintiffs appear to argue that Matrix's reliance on *Farmers* to achieve

10

1 dismissal of the *Ries* suit was unreasonable because *Farmers* is not sufficiently analogous. 2 However, Plaintiffs do not point to any other case that would have suggested *Ries* had a 3 viable misclassification claim. Moreover, Plaintiffs present no evidence that investigation 4 conducted by Matrix's human resources and legal departments was insufficient or 5 unreasonable. If Plaintiffs prevail on liability, at most, they demonstrate that Matrix was 6 negligent in determining its obligations under the FLSA. Negligence, however, does not 7 establish willfulness. *See McLaughlin*, 486 U.S. at 135.

8 To establish the good faith defense, Matrix must prove that it had an honest intention 9 to ascertain and follow the dictates of the FLSA and a reasonable basis for believing that it 10 complied with the act. *Local 246 Utility Wkrs. Un. v. Sou. Ca. Edison*, 83 F.3d 292, 298 11 (9th Cir. 1996). The same evidence that disproves willfulness proves good faith. Matrix 12 had an honest intention to determine whether its claims examiners were properly classified 13 in response to the *Ries* litigation. SOF ¶¶ 88-89. Likewise it had a reasonable basis for 14 believing that it complied with the act. Indeed, even opposing counsel agreed with Matrix's 15 conclusion that claims examiners were properly classified as exempt despite having a 16 financial incentive to disagree with Matrix. Moreover, the court also agreed that dismissal 17 with prejudice and without payment of any back wages was a reasonable resolution.

18 Plaintiffs attempt to fault Matrix for relying on *Ries* because the court never issued 19 a determination on the merits. Had Matrix taken *Ries* all the way to and prevailed on 20 summary judgment or at trial, it would have been able to say with certainty that its 21 classification complied with the FLSA. However, the good faith defense does not require 22 Matrix be certain it is complying with the FLSA. Instead, it requires Matrix be reasonable. 23 Plaintiffs have presented no evidence that Matrix was unreasonable. Therefore, it is entitled 24 to judgment as a matter of law on its good faith defense and the issue of willfulness.

25 **CONCLUSION**

26 For the above reasons and the reasons set forth in Matrix's Motion for Summary 27 Judgment, Matrix respectfully requests the Court grant summary judgment in its favor,

28

11

dismiss Plaintiffs' claims with prejudice, award Matrix its costs, and grant Matrix any such further relief to which it may show itself justly entitled.

    RESPECTFULLY SUBMITTED this 2nd day of February 2023.

                      OGLETREE, DEAKINS, NASH,
                      SMOAK & STEWART, P.C.

                      By:  /s/ *Tracy A. Miller*
                            Tracy A. Miller
                            Douglas (Trey) Lynn
                            2415 E. Camelback Road, Suite 800
                            Phoenix, AZ 85016

                            Attorneys for Defendant