JACK SIEGEL
Texas Bar No. 24070621
**SIEGEL LAW GROUP PLLC**
5706 E. Mockingbird, Suite 115
Dallas, TX, 75206
Telephone: (214) 790-4454
Email: Jack@siegellawgroup.biz
*Admitted Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Weeks, Michael McDonald, Cassandra Magdaleno, Samantha Stocklein, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Matrix Absence Management, Inc., an Arizona Company,<br><br>Defendant. | Case No. 2:20-cv-00884-SPL |

## REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

There is no dispute regarding Plaintiffs' primary job duty: Plaintiffs' primary job duty is to process disability/leave claims, requiring Plaintiffs to review claim information, compare it to criteria in customer policies, and approve or deny a claim in accordance with set criteria ("Claims Review Work"). ECF 140, ¶ 9.  There is also no dispute all claim decisions made by Plaintiffs and other "Telephone Claims Examiners" ("TCEs") were made in accordance with the terms of the client's disability or leave policy. ¶ 32.  Claims Review Work does not,

> involve policy determinations, i.e., how a business should be run or run more efficiently, not merely providing information in the course of the customers' daily business operations." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990) (construing 29 C.F.R. § 541.201(c) (emphasis added) (finding that probation officers were nonexempt because the services they provided to courts were not related to court policy or overall operational management, contrasting with financial advisers who advise customers on how to increase financial productivity or reduce risk).

As the Motion discussed, if the Court follows the Ninth Circuit precedent, summary judgment is warranted under *Bratt* because Plaintiffs indisputably did not perform job duties that involved requisite policy determinations or similar work to satisfy 29 C.F.R. § 541.201(c). If the Court declines to follow Bratt and assesses whether Claims Review Work is administrative under 29 C.F.R. 541.201(a), summary judgment is still warranted because:

- Claims Review Work does not involve assisting customers with "running" or "servicing" their businesses to satisfy 29 C.F.R. 541.201(a);

- Defendant's lone theory is that Plaintiffs' primary duty, Claims Review Work, is directly related to the management or business operations of its customers, because the "primary duty involved interpreting, implementing and applying various employment policies promulgated theory." Response, p. 2. However, the fact that Plaintiffs may have interpreted such policies is only relevant to the discretion prong of the exemption. Id., § 541.202(b).

- Even assuming that Plaintiffs performed work in human resources, insurance, employee benefits, or similar functional area under Id. § 201(b), this does not

2

answer whether Plaintiffs' Claims Examination Work involved assisting customers with "servicing" their business to satisfy Id., § 541.202(b).

Summary judgment is warranted because Matrix cannot show that Claims Review Work involves "running" or "servicing" the business of its customers to satisfy § 541.201(a) or (c).

1. There is No Evidence that Claims Review Work Involves "Running" or "Servicing" the Business of Its Customers.

As the DOL explained in enacting the current administrative exemption regulations:

> [T]he final rule contains two independent, yet related, requirements for the administrative exemption. First, the employee must have a primary duty of performing office or non-manual work "directly related to management or general business operations." This first requirement refers to the **type of work performed** by the employee, and is further defined at section 541.201. Second, the employee's primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance." …. The term "matters of significance" refers to the level of importance or consequence of the work performed. These terms are further defined at final section 541.202. 69 FR 22122-01, 22140.

To establish its administrative exemption defense, Matrix had the burden to first provide evidence that Claims Review Work involves "running" or "servicing" The Business:

> The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment. 29 C.F.R. §541.201(a).

As further explained by the DOL, the administrative operations of a business include,

> the work of employees "servicing" the business, such as, for example, "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." …. Much of this work, but not all, will relate directly to management policies. As the current regulations state at section 541.205(c), exempt administrative work includes not only those who participate in the formulation of management policies or in the operation of the business as a whole, but it "also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business,

3

or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." Therefore, the Department considers the primary duty test for the administrative exemption to be as protective as the existing regulations.

69 FR 22122-01, at 22138. No evidence shows Claims Review Work involved servicing the business of customers by advising management, planning, negotiating, representing the company, purchasing, promoting, conducting business research, or "carrying out major assignments in conducting the operations of the business" under the regulations.[1] While Matrix contends that Claims Review Work requires TCEs to "carry out policies," it fails to explain how carrying out policies "affects [any] business operations to a substantial degree."

2. Even Assuming Claims Review Work Involved "Interpreting, Implementing, and Applying" Policies, that Fact is Only Relevant to the Discretion Prong.

Matrix's only argument on this prong is described in two sentences of is Response:

> In the human resources/employee benefits role, the prong may be satisfied where the employee "interpret[s] or implement[s] employment policies." 29 U.S.C. § 203(d). Here, the summary judgment evidence demonstrates that Plaintiffs' primary job duty involved interpreting, implementing, and applying various employment policies promulgated by Matrix's clients.

Matrix's theory cobbles together random terminology in 29 C.F.R. § 541.201(b), § 541.202(b), and 541.203(e) to ineffectively argue that Claims Review Work involves "running" or "servicing" the business of customers under § 541.201(a). Even assuming Claims Review Work involved "interpreting" or "implementing" policies, that fact is only relevant to determining whether this "primary duty" (which must be directly related), "<u>includes</u> the exercise of discretion and independent judgment with respect to matters of significance. 29

---

[1] *See e.g.*, 29 C.F.R. § 541.203(c) (such employees "lead a team of employees assigned to complete major projects" like purchasing a business, negotiating real estate deals or designing/implementing productivity requirements).

4

C.F.R. § 541.202(b) (listing factor: "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices…."). Even assuming Claims Review Work involved such work, it would not answer the central question here:

> **Is the nature of Claims Review Work the type of work that involves running or servicing the business of Matrix customers, or does it, as the facts indisputably establish, involve being required to follow standards, created by others, to approve or deny claims that Plaintiffs were assigned to process by alpha-split for each client served**?

69 FR 22122-01, 22141("[T]he administrative exemption covers only employees performing a particular type of work—work related to assisting with running or servicing of the business.").

Matrix wholly fails to explain how or why Claims Review Work relates,

> to business policy or overall operational management. *Compare Shockley,* 997 F.2d at 28 (holding that because "Ethics and Standards Lieutenant spent all her time accumulating and analyzing data and making recommendations that shaped the police department's policy with regard to internal discipline[, her work was] 'directly related to management policies.'"), *and West v. Anne Arundel Cnty.,* 137 F.3d 752, 764 (4th Cir.1998) (holding that EMS Training Lieutenants' position met criteria because the Lieutenants "develop[ed], coordinate[d], implement[ed,] and conduct[ed] EMS training programs[;] ... prepare[d] lesson plans and training aids [;] supervise [d] delivery of training and tests[;] and evaluate[d] new equipment"), *with Shockley,* 997 F.2d at 28–29 (holding that Media Relations Sergeants did not meet exemption criteria when they "spent half their time on the 'crime line,' answering the phone, taking tips, and passing them on to the right department," and also "screen[ed] calls to the Chief of Police, respond [ed] to impromptu questions by the press, determin[ed] what information should be released to the press regarding ongoing investigations, and develop[ed] an ongoing news broadcast called 'Crime of the Week' ")…. Regardless of whether this was "production work," it does not appear to be directly related to GEICO's management or general business operations. Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 126 (4th Cir. 2015).

While Plaintiffs agree they are not production workers, this does not automatically transform the nature of their Claims Review Work into work that involves running or servicing a business. As explained in Calderon, 809 F. 3d at 1124 in holding that non-production

5

workers did not satisfy the directly related prong where they were "in no way part of management" and did not "run or service the general business operations" of the company:

> One reason that the dichotomy is imperfect is that while production-type work is *not* administrative, not all non-production-type work *is* administrative. *See Martin v. Indiana Mich. Power Co.,* 381 F.3d 574, 582 (6th Cir.2004) ("The regulations do not set up an absolute dichotomy under which all work must either be classified as production or administrative."); *Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1127 (9th Cir.2002) ("Only when work falls 'squarely on the "production" side of the line,' has the administration/production dichotomy been determinative."). The regulation, after all, provides production work only as an *example* of work not directly related to assisting with the running or servicing of the business. Thus, in the end, the critical focus regarding this element remains whether an employee's duties involve " 'the running of a business,' " *Bratt v. County of Los Angeles,* 912 F.2d 1066, 1070 (9th Cir.1990), as opposed to the mere " 'day-to-day carrying out of [the business's] affairs,'" *Desmond I,* 564 F.3d at 694 (citing *Bratt,* 912 F.2d at 1070).

Indeed, like the employees that did not meet the directly related prong in *Rego*, *Clark*, *Boyd*, *Wong*, *Mckeen-Chaplin*, *Watts*, *Gallegos*, *Calderon*, and *Greene*, no evidence shows Plaintiffs were "part of [the] management," or Claims Review Work involved helping run a business. Even assuming Plaintiffs were essential, "the question is not whether an employee is essential to the business, but rather whether [Claims Review Work] goes to the heart of the internal administration" of the business. McKeen, 862 F.3d at 852–53. Indeed, the evidence corroborates that TCEs' Claims Review Work was,

> primarily functional rather than conceptual. [TCEs] were not at the heart of the company's business operations. TCEs had no involvement in determining the future strategy or direction of the [any] business, nor did they perform any other function that in any way related to [any] business's overall efficiency or mode of operation. It is undisputed that the [Plaintiffs] played no role in the establishment of [the customers' disability or leave policies].

McKeen, at 852–53. Matrix employs account managers as customer relationship managers who (1) help assist customers with updating their disability/leave policies; and (2) provide

6

advice on how to more efficiently run their disability/leave programs. PSOF, ¶ 30. There is no evidence that TCEs performed similar duties that were "in any way related to the… overall efficiency or mode of operations" of customers' disability/leave programs, or "played a role in the establishment of" those customers disability/leave policies. Id., 852-53.

3. Even Assuming Claims Review Work Involves Work in the Functional Areas that Are Typically Administrative in Nature Under §541.201(b), Matrix Fails to Explain Why or How Such Work Involves Running or Servicing the Business Under §541.201(a).

§541.201(b) provides "an illustrative list of the types of functional areas or departments… that are typically administrative in nature." 69 FR 22122-01, 22141; Walsh v. Unitil Serv. Corp., 57 F.4th 353, 363 (1st Cir. 2023) (reversing lower court that looked at list of functional areas in § 541.201(b)," to conclude employees' duties satisfied the directly related prong because duties "were analogous to" several functional areas). Indeed,

> "[I]t is not enough to look only at the list of job functions under Section 541.201(b). Courts must also consider whether the employee's primary duty is contributing to the "running or servicing of the business…." Id., at 364.[2]

As explained in a case where an employer argued that workers reviewing health insurance claims performed exempt "employee benefits" work under §201(b):

> That UMNs perform work the ultimate consequence of which may impact the employee benefits and health of the employees of LMMC's customers does not automatically satisfy the "directly related" prong. *See* 29 C.F.R. § 541.201(b) (listing health and employee benefits as functional areas that relate to administrative operations); *Clark v. J.M. Benson Co.*, 789 F.2d 282, 287 (4th Cir. 1986) (finding the nature rather than the ultimate consequence of an employee's

---

[2] For example, under § 541.203(e), Human Resource managers are generally exempt while personnel clerks are not, because only human resource personnel assist with running the business by performing staffing/hiring functions for the employer. Id. ("Thus, when the interviewing and screening functions are performed by the human resources manager or personnel manager who makes the hiring decision or makes recommendations for hiring from the pool of qualified applicants, such duties constitute exempt work, even though routine, because this work is directly and closely related to the employees' exempt functions.").

7

>work to be critical in the administrative operations inquiry). Plaintiffs' work of [processing claims] is more similar to work performed on a manufacturing production line than work servicing the operations of a business. *See* 29 C.F.R. § 541.201(a). UMN work does not develop, review, evaluate, or otherwise directly impact the business policies or strategies of LMMC's customers, and such work falls outside the types of administrative work that the administrative exemption contemplates. *See Calderon v. GEICO Gen. Ins., Co.*, 809 F.3d 111, 124 (4th Cir. 2015); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 694 (4th Cir. 2009); …. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,138 (Apr. 23, 2004) (codified at 29 C.F.R. pt. 541) (listing examples of work "servicing" a business under the administration exemption). Because Plaintiffs' work does not directly relate to LMMC or LMMC's customers' administrative operations, this prong is not satisfied and the administrative exemption does not apply. Rego v. Liberty Mut. Managed Care, 367 F. Supp. 3d 849, 856 (E.D. Wis. 2019).

The fact that the "ultimate consequence of" TCEs' Claims Review Work "may impact employee benefits… of [Matrix's] customers" does not satisfy the "directly related prong." Rego, at 856; Deluca v. Farmers Ins. Exch., 386 F. Supp. 3d 1235, 1256 (N.D. Cal. 2019) ("McKeen-Chaplin is consistent with the Fourth Circuit's approach in Calderon in which it rejected the Sixth Circuit's conclusion because it 'fails to take into account that it is 'the nature of the work, not its ultimate consequence,' that controls whether the exemption applies.")(citations omitted). Claims Review Work does not involve servicing or running any business: It "is more similar to work performed on a manufacturing line than work servicing the operations of a business" and "does not develop, review, evaluate, or otherwise directly impact the business policies or strategies of Matrix's customers." Rego, at 856. Notably, if the Court adopts Matrix's reasoning that Claims Review work is human resources or employee benefits work, it would be reversible error. McKeen, 862 F. 3d at 847 (reversing district court that concluded employees satisfied directly related prong because they performed "quality control' work that was unsupported by evidence). Matrix has provided no evidence to show

8

how or why Claims Review Work involves performing exempt human resource or employee benefit work that involved helping run any business. *See* ECF 137, 149. Matrix instead Claims Review Work involves helping run the business of customers because it requires Plaintiffs to "interpret or implement employment policies." However, there is no evidence that Claims Review Work involved "interpreting" policies by communicating the meaning of policies or changes to those policies meant to others. Driggers, 2009 WL 1684449, at *4. Matrix admits Claims Review work involves mere application of policies implemented by its customers. See ECF 112, p. 1 ("Adjudicating claims requires [TCEs] to apply…policies") ECF 148, p. 12 (TCEs' "responsibility is to… carry out policies implemented by Matrix customers.").[3]

   4. The Regulations Corroborate that Claims Review Work is Not the Type of Work that Involves Servicing the Business of Matrix Customers to Satisfy §541.201(a).

As Fowler v. OSP Prevention Grp., Inc., 38 F.4th 103, 112 (11th Cir. 2022) explains,

> [29 C.F.R. § 541. 201(b)] provides a non-exhaustive list of "functional areas" that are representative of administrative work…. Conducting investigations is not on the list. **The jobs that are on the list generally involve duties that call for discretionary analysis and decision making. By contrast, investigative duties primarily involve investigation (of course) and factfinding, compiling reports, and making calculations and recommendations about liability according to prescribed criteria.**
>
> A related regulation provides examples of categories of workers who "generally meet the duties requirements for the administrative exemption." *Id.* § 541.203(a)–(f) (listing categories of workers and some of the duties they perform). Workers who generally are administratively exempt employees include: insurance claims adjusters (so long as they have certain responsibilities, including the authority to settle claims), *id.* § 541.203(a); financial services employees (so long as they conduct analysis and do not simply sell financial

---

[3] Contrary to Matrix's Assertion, Plaintiffs have not judicially admitted that they "interpreted" or "implemented" (as opposed to merely applying) disability insurance or leave policies to process claims. Compare Response, p. 2 (citing ECF 63, ¶ 13) with ECF 63, ¶ 13 ("Plaintiffs… primary job duty consisted of reviewing disability and leave … claims against predetermined guidelines to determine benefit eligibility within contractual timeframes….").

9

products), *id.* § 541.203(b); team leaders assigned to complete major projects, *id.* § 541.203(c); executive or administrative assistants to business owners or senior executives (so long as they work "without specific instructions or prescribed procedures" and have delegated authority on matters of significance), *id.* § 541.203(d); human resources managers (but not personnel clerks who just gather information to "screen" job applicants based on minimum requirements), *id.* § 541.203(e); and purchasing agents who have the authority to bind a company on significant purchases, *id.* § 541.203(f).

That same regulation provides examples of categories of workers who "generally do not meet the duties requirements for the administrative exemption." *Id.* § 541.203(g)–(j). Workers who generally aren't administratively exempt include: employees who do "[o]rdinary inspection work" using "well-established techniques and procedures" often derived from manuals, *id.* § 541.203(g); "examiners or graders" who compare products using established standards, *id.* § 541.203(h); comparison shoppers who report competitors' prices (so long as they are not responsible for evaluating reports on competitors' prices), *id.* § 541.203(i); and "inspectors or investigators of various types" in the public sector whose work involves using "skills and technical abilities in gathering factual information," applying "known standards or prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met," *id.* § 541.203(j). The regulation **draws a line between administrative employees, who help run the business by setting standards, and non-administrative employees, who help the business run by following the standards that have been set for them.**

Claims Review Work indisputably involves applying criteria in customer policies to approve/deny claims; and Matrix admits Plaintiffs use no judgment to determine claim value (ECF 147, ¶¶ 26, 36); ECF 146, p. 3 (citing ECF 137, Nos. 72-73). Claims Review Work is more similar to work performed by the non-administrative employees "who help run the business by following standards that have been set for them" than administrative employees examples whose work "help[s] run the business by setting standards" for other employees to follow. Claims Review Work does not resemble work performed by three of the examples,

> contained in § 541.203 of positions that are presumptively exempt: (1) insurance claims adjusters; (2) employees in the financial services industry; and (3) an employee who leads a team of other employees to complete major projects. As subsection (3) is clearly inapplicable because [Plaintiffs] do not supervise anyone

10

> or lead other employees, the Court will look to whether the positions of claims adjusters or those in the financial services industry are analogous to the positions of Appraisers. Both positions are clearly distinguishable. The regulations provide that these positions are presumptively exempt given a number of determinative factors, which include both the analysis of factual information in addition to broader representation of the company. For example, claims adjusters may be exempt where they negotiate settlements with insurance policy holders and make recommendations regarding litigation on behalf of their employer. Likewise, financial services employees are typically exempt where they directly advise customers regarding the advantages and disadvantages of different financial products and "market [ ], servic[e] or promot[e] the employer's financial products." *Id.*
>
> Therefore, review of these examples demonstrate that analysis of facts and making conclusions is not in itself sufficient to render an employee exempt; there must also be an application of those facts to the employer's or customer's general business operations, such that the employee can be said to be "servicing" the business. Appraisers' duties, producing real estate appraisals, do not mirror the characteristics of claims adjusters and financial services workers who exercise direct control and input over the direction of the business or meaningful and varied business decisions. In that way, Appraisers are more similar to public sector inspectors or investigators. Even though these positions require the detailed analysis of facts, they "generally do not meet the duties requirements for the administrative exemption because their work typically does not involve work directly related to the management or general business operations of the employer." 29 C.F.R. § 541.203(j)….

Claims Review Work resembles non-exempt inspection work, which involves "using skills and technical abilities to gather information," "applying known standards," and "determining whether prescribed standards are met." 29 C.F.R. § 541.203(j). To the extent Claims Review Work can be considered "human resources" work, their duties are more similar to non-exempt personnel clerks than HR managers under §541.203(e). Like the non-exempt personnel clerks, TCEs follow criteria in policies created by others to process claims; and unlike HR managers, TCEs have no authority to assist the business by making hiring/staffing or similar decisions. Id. ("[W]hen the interviewing and screening functions are performed by the human resources manager … who makes the hiring decision or [hiring] recommendation[] … such duties

constitute exempt work, even though routine, because this work is directly and closely related to the employee's exempt functions."); DOL Opinion Ltr., 2005 WL 3308616 (Oct. 25, 2005) (staffing manager's "recruiting, hiring and managing the temporary labor pool of [the agency's] clients" duties satisfied the directly related prong).

5. There is No Factual Dispute that Matrix Willfully Violated the FLSA

It is undisputed that Defendant's only belief that it classified TCEs as exempt is based on the court's stipulation to approve a joint stipulation with prejudice based on a representation by Defendant that:

> Plaintiffs were appropriately classified as exempt under the administrative exemption, citing 29 C.F.R. 203 and In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig., 481 F.3d 1119 (9th Cir. 2007). Matrix noted that the named Plaintiffs were, like the plaintiffs in the Farmers case, all claims examiners for Matrix, working with "self-funded" long term disability plans, and regularly exercised judgment and discretion. Matrix requested that the Plaintiffs voluntarily dismiss the Complaint.

In Re Farmers does not discuss any example under 29 C.F.R. 541.203 other than 29 C.F.R. 203(a), which provides that insurance claims adjusters are generally exempt if they perform specific duties. In this case, Matrix does not even claim that the Plaintiffs performed the work of insurance claims adjusters under §541.203(a) or In Re Farmers, but relied on the Court granting its stipulation of dismissal based on the above text to continue classifying TCEs as exempt. Its reliance on an approved stipulation—which was not a decision on the merits and was approved based on representations that the Plaintiffs worked for Matrix as exempt insurance adjusters under § 541.203(a) and In Re Farmers—is prima facie unreasonable and warrants summary judgment here.

6. Conclusion

12

Because there is no genuine issue of material fact that Plaintiffs did not help run or service the business of Matrix's customers, summary judgment is warranted. To the extent the Court rules for or against all of the Plaintiffs based on the common evidence of TCEs' job duties presented by both parties, Plaintiffs request that the Court *sua sponte* reconsider its Order denying class certification and granting class certification to prevent piecemeal litigation and appeal of the issues involved here. Indeed, because there is no dispute that all of the Plaintiffs performed the same primary duty, whether that primary duty is work involved running or assisting of the business of Matrix's customers is susceptible to common proof.

Respectfully submitted this February 16, 2023.

*/s/ Jack Siegel*

**JACK SIEGEL**
Texas Bar No. 24070621
**SIEGEL LAW GROUP PLLC**
5706 E. Mockingbird Lane, Suite 115
Dallas, TX, 75206
(214) 790-4454 phone
www.siegellawgroup.biz
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on a copy of the foregoing document was electronically filed and notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System on the date of this filing.

*/s/ Jack Siegel*
**JACK SIEGEL**