**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina Weeks, et al., | No. CV-20-00884-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Matrix Absence Management Incorporated, | |
| Defendant. | |

Before the Court are Defendant's Motion for Summary Judgment (Doc. 136) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 138). The Court rules as follows.

**I.   BACKGROUND**[1]

Plaintiffs Tina Weeks, Michael McDonald, Cassandra Magdaleno, and Samantha Stocklein bring a claim against Defendant Matrix Absence Management Incorporated for violation of the Fair Labor Standards Act ("FLSA") for failure to pay overtime. (Doc. 60 at 18–21). Plaintiff Stocklein also brings a claim against Defendant for violation of Oregon Wage Law for failure to pay overtime. (Doc. 60 at 21). On November 22, 2022, the Court granted Defendant's Motion for Decertification of Collective Action and denied Plaintiffs' Motion to Certify Class, so Plaintiffs have only individual claims remaining. (Doc. 128).

Defendant is a licensed third-party administrator that processes leave of absence

---

[1] The Court recites only undisputed facts in the Background section.

("LOA"), short-term disability ("STD") and long-term disability ("LTD") claims for its customers according to the policies, procedures, and criteria in customers' plans. (Doc. 140 ¶¶ 2, 13). Plaintiffs were each employed by Defendant as claims examiners. (Doc. 140 ¶¶ 6–8; Doc. 60 ¶ 22). Plaintiffs McDonald and Stocklein worked as AMS Claims Examiners, which involved processing both STD and LOA claims filed under Defendant's customers' policies. (Doc. 140 ¶¶ 6, 8). Plaintiff Magdaleno worked as an LOA claims examiner, processing LOA claims filed under Defendant's customers' policies. (Doc. 140 ¶ 7). Plaintiff Weeks administered LTD claims. (Doc. 137 ¶ 2). Defendant classified Plaintiffs as exempt from the FLSA under the administrative exemption and paid them on a salary basis. (Doc. 140 ¶ 1).

Plaintiffs' main duty was to process claims, which "require[d] them to review information provided by the client, compare it to client's policies and guidelines and make a decision on whether to approve or deny a claim." (Doc. 140 ¶ 9 (internal quotation marks omitted)). All decisions to approve or deny a claim had to comply with legal requirements and the terms of the client's plan or policy. (Doc. 140 ¶ 34). An incorrect claims decision could expose Defendant's clients to legal or regulatory issues and financial and reputational harm. (Doc. 137 ¶¶ 85–87). Defendant trained and expected Plaintiffs to follow its own internal guidelines, including best practices and standard operating procedures, when processing claims for its customers. (Doc. 140 ¶ 10).

Plaintiff Weeks's primary job duty was overseeing stable and mature LTD claims for the Federal Reserve. (Doc. 137 ¶¶ 2, 6). To perform that job, she interpreted and applied the Federal Reserve's LTD policy, gathered information to determine whether claimants were still disabled, and made a determination by comparing the medical information to the policy. (Doc. 137 ¶¶ 5, 7, 8). She could seek input from nurses, send out and review activity questionnaires, review a claimant's social media accounts, have a file reviewed by a vocational specialist, and make decisions to conduct independent medical examinations or outside investigations. (Doc. 137 ¶¶ 9, 12, 13, 15, 17, 18). With

her supervisor's approval, Plaintiff Weeks could have a claimant surveilled, which required her to select a vendor and provide the vendor with necessary information. (Doc. 137 ¶ 14). She did not have authority to close a LTD claim, but she made recommendations to her supervisor that claims should be closed, which were always followed except when there was medical information missing. (Doc. 137 ¶¶ 21, 22).

Plaintiff McDonald reviewed claims against a client's policy to determine if an employee was eligible for benefits under the policy. (Doc. 137 ¶ 27). His primary client was XPO Logistics. (Doc. 137 ¶ 26). Plaintiff McDonald interpreted clients' policies but not a claimant's medical records. (Doc. 137 ¶ 30). Still, he did not send medical records for nurse review when a claim involved an "obvious" condition like pregnancy or a broken bone. (Doc. 137 ¶ 31). Once he had fully processed a claim, Plaintiff McDonald sent a recommendation to his supervisor for approval. (Doc. 137 ¶ 29). When communicating a denial, he exercised judgment regarding how much information to share with the claimant. (Doc. 137 ¶ 32).

Plaintiff Magdaleno's primary duty was administering Family and Medical Leave Act ("FMLA"), California Family Rights Act, and non-protected leave policy claims for employees of the Dignity Health hospital system. (Doc. 137 ¶¶ 34, 35). When processing Dignity Health claims, she reviewed information received from claimants after their claims passed through an automatic screening for certain eligibility criteria. (Doc. 137 ¶ 36). Based on that information, Plaintiff Magdaleno either approved or denied the claim. (Doc. 137 ¶ 36). If a claimant was not eligible for protected leave, she would determine whether they were eligible under Dignity Health's other leave policies. (Doc. 137 ¶ 37). Plaintiff Magdaleno had discretion to decide when she needed a supervisor's input. (Doc. 137 ¶ 43). In her two or three years in her role, she sought input from a supervisor once or twice a week and passed a claim to her supervisor for a decision once or twice a month; otherwise, Plaintiff Magdaleno had complete autonomy in approving or denying the thousands of claims she handled. (Doc. 137 ¶¶ 52–53). After a claim was approved, Plaintiff Magdaleno looked for abuse of leave, and Dignity Health would

contact her if it suspected abuse. (Doc. 137 ¶¶ 44–45). When a claim was flagged as suspicious, she analyzed the claim file; prepared a fact-specific inquiry for a claimant's doctor if such a follow-up was warranted; and presented the complaint, her findings, and a recommendation to her managers, who generally followed her recommendation. (Doc. 137 ¶¶ 46–47).

Plaintiff Stocklein administered LOA and STD claims, which required her to assess FMLA guidelines and client policies to determine whether an employee was entitled to leave. (Doc. 137 ¶¶ 58–59). She administered claims from three clients, each of which had a different self-insured STD policy that she had to interpret and apply. (Doc. 137 ¶ 60–61). She used a phone-call script she created to gather relevant information from claimants. (Doc. 137 ¶ 66). When processing STD claims, she input information into a computer system that then generated a recommendation for the number of days of leave the disability supported. (Doc. 137 ¶ 67). If the request was consistent with the computer system's recommendation, Plaintiff Stocklein could approve the claim for that time period. (Doc. 137 ¶ 167). With more complicated claims, she could seek input from a nurse—and was required to do so for mental health conditions—or the Official Disability Guidelines ("ODG"). (Doc. 137 ¶¶ 67–68, 70). Plaintiff Stocklein was not required to follow either the computer system recommendation or the ODG. (Doc. 137 ¶ 69). If she disagreed with a nurse's assessment, she requested a supervisor's review. (Doc. 137 ¶ 71). Plaintiff Stocklein was responsible for approving or denying STD claims and approved about 75% of claims with no supervisor involvement. (Doc. 137 ¶ 75). She could not, however, deny a claim absent supervisor approval and nurse support. (Doc. 137 ¶ 74).

Defendant's human resources and legal departments reviewed the classification of claims examiners like Plaintiffs as exempt from the FLSA in 2017 in response to a lawsuit filed in this District, *Ries v. Matrix Absence Management Inc.*, No. 2:16-cv-03388-ROS. (Doc. 137 ¶ 88–89). On February 22, 2017, Judge Silver rejected the parties' Joint Stipulation of Dismissal in *Ries*, instead asking the parties for additional

information justifying approval of the settlement. (Doc. 140 ¶ 40). On February 24, 2017, the parties filed a Joint Supplemental Notice explaining that "Matrix would forebear from requesting attorneys' fees and costs, in exchange for Plaintiffs' agreement to dismiss the action with prejudice," citing to *In re Farmers Insurance Exchange, Claims Representatives' Overtime Pay Litigation*, 481 F.3d 1119 (9th Cir. 2007) as authority suggesting that the *Ries* plaintiffs were subject to the FLSA's administrative exemption. (Doc. 140 ¶ 41). Judge Silver thereafter dismissed the case with prejudice, finding that it was a fair and reasonable resolution of the dispute. (Doc. 140 ¶ 42).

## II.   LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

## III.   ADMINISTRATIVE EXEMPTION DEFENSE

Plaintiffs and Defendant both seek summary judgment on Defendant's administrative exemption defense. An "employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the FLSA's minimum wage and overtime requirements. 29 U.S.C. § 213(a). To fall under the administrative exemption, an employee "must (1) be compensated not less than $[684] per week; (2) perform as her primary duty 'office or non-manual work related to the management or general business operations of the employer or the employer's customers;' and (3) have as her primary duty 'the exercise of discretion and independent judgment with respect to matters of

significance.'" *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 851 (9th Cir. 2017) (quoting 29 C.F.R. § 541.200(a)). These criteria "are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the [FLSA]." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) (internal quotation marks omitted). There is no dispute that the compensation prong is satisfied. The Court addresses the remaining two elements in turn.

### a. Relation of work to management or general business operations

Both Plaintiffs and Defendant seek summary judgment on the second prong of the administrative exemption. This element requires that an employee's primary duty is "work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). To satisfy this requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* § 541.201(a). The second element is commonly referred to as the "administrative-production dichotomy" as it "distinguishes[es] between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself." *McKeen-Chaplin*, 862 F.3d at 851 (internal quotation marks omitted). In other words, "this requirement is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs." *Id.* (internal quotation marks omitted). Still, "the dichotomy is only *determinative* if the work falls squarely on the production side of the line." *Id.* (emphasis added) (internal quotation marks omitted). The regulations instruct that "[w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . personnel management; human resources; [and] employee benefits." *Id.* § 541.201(b). The full list illustrates the distinction between "work that any employer needs performed," which "is part and parcel of running a business and therefore

exempt administrative work," and "work that is particular to the employer's industry," which is not. *Bollinger v. Residential Capital, LLC*, 863 F. Supp. 2d 1041 (W.D. Wash. 2012).

Here, it is plain from the undisputed facts that Plaintiffs perform administrative human resources and employee benefits work on behalf of Defendant's customers such that the second element is satisfied as a matter of law. Plaintiffs examined claims for customers as disparate as the Dignity Health hospital system, XPO Logistics, and the Federal Reserve. Those customers produce very different services as their marketplace offerings, yet Plaintiffs performed relatively similar claims examination work for each of them, making clear that their work was not related to the customers' industry affairs. Rather, Plaintiffs performed administrative work related to the running of the customers' businesses, work that any business needs done no matter its marketplace offering—specifically the administration of the customers' employee benefit plans. And the regulations explicitly place work done for the employer and the employer's customers on equal footing.[2] *See* 29 C.F.R. § 541.201(c); 69 Fed. Reg. 22,142. Thus, Plaintiffs' work falls squarely on the administrative side of the administrative-production dichotomy.[3]

Still, as noted, the administrative-production dichotomy is dispositive only if work falls squarely on the production side, so the inquiry does not end there. Further

---

[2] To illustrate this rule, the regulation states that, "for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. § 541.201(c). On this basis, Plaintiffs argue that because Plaintiffs did not act as advisers or consultants to Defendant's clients, they are not subject to the administrative exemption. But as the language of § 541.201(c) twice indicates, the quoted sentence provides examples, not exclusive conditions. Section 541.201(c) "is meant to place work done for a client or customer on the same footing as work done for the employer directly . . . as long as the work relates to 'management or general business operations.'" 69 Fed. Reg. 22,142. Here, if Plaintiffs worked for the customers directly, it is apparent that they would be performing employee benefits or human resources work unrelated to the customers' marketplace offerings such that they would satisfy the second prong. Section 541.201(c) makes clear that the fact that Plaintiffs performed that work for the customers while employed by a third-party claims administrator does not change that outcome.

[3] Although Plaintiff's Motion for Summary Judgment argues that "Plaintiffs are Production Workers that Do Not Qualify as Administrators," (Doc. 138 at 18), they concede in their Reply that they "agree they are not production workers." (Doc. 150 at 5).

7

consideration of the regulations also supports the applicability of the second prong. The regulation's requirement that work be directly related to "management or general business operations" recognizes that "there are many other administrative functions that support managing a business" besides management policies themselves. 69 Fed. Reg. 22,138. Here, by examining LOA, STD, and LTD claims, Plaintiffs performed employee benefits work, which is a functional area listed in the regulations as a type of administrative function that falls within the second prong. It is true that not all employee benefits or human resources employees are covered by the administrative exemption; "[w]ithin such areas or departments, it is still necessary to analyze the level or nature of the work (i.e., does the employee exercise discretion and independent judgment as to matters of significance) in order to assess whether the administrative exemption applies"—but the parenthetical is an explicit reference to the *third* prong of the administrative exemption. *Id.* at 22,142. Accordingly, Plaintiffs' arguments that they did not perform the type of employee benefits or human resources work that falls within the administrative exemption, including arguments that they merely applied preexisting legal requirements and criteria, go to the third prong, not the second prong. The undisputed facts establish that Plaintiffs' primary duty was work directly related to the general business operations of Defendant's customers, so the second prong of the administrative exemption is satisfied as a matter of law.

### b. Discretion and independent judgment on matters of significance

Only Defendant seeks summary judgment on the third prong of the administrative exemption. "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). It must involve "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* § 541.202(e). Separately, "[t]he term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* § 541.202(a). The regulations set forth ten non-

exclusive factors to consider when assessing whether an employee exercises discretion and independent judgment with respect to matters of significance:

> [1] whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; [2] whether the employee carries out major assignments in conducting the operations of the business; [3] whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; [4] whether the employee has authority to commit the employer in matters that have significant financial impact; [5] whether the employee has authority to waive or deviate from established policies and procedures without prior approval; [6] whether the employee has authority to negotiate and bind the company on significant matters; [7] whether the employee provides consultation or expert advice to management; [8] whether the employee is involved in planning long- or short-term business objectives; [9] whether the employee investigates and resolves matters of significance on behalf of management; and [10] whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b).

The regulations provide examples of what types of employees do and do not fall under the administrative exemption. Relevant here, 20 C.F.R. § 541.203(e) states that "[h]uman resources managers who formulate, interpret or implement employment policies . . . generally meet the duties requirements for the administrative exemption." In contrast, "personnel clerks who 'screen' applicants to obtain data regarding their minimum qualifications and fitness for employment generally do not meet the duties requirements for the administrative exemptions." *Id.* § 541.203(e). The regulations also offer insurance adjusters as an example:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption . . . if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

*Id.* § 541.203(a).

Considering the record in the light most favorable to Plaintiffs, the Court finds that there is a triable issue of fact as to whether each Plaintiff exercised discretion and independent judgment in the performance of his or her primary duty. Defendant has presented some evidence that each Plaintiff exercised discretion in how they went about administering claims. For example, Plaintiff Weeks could decide how to go about investigating a claimant's disability—whether through a questionnaire, an independent medical examination, surveillance, or other means. Plaintiff McDonald could decide whether to have a nurse review a file and what information to share with a claimant. Plaintiff Magdaleno could decide whether to seek supervisor input and whether and how to investigate suspicious claims. Plaintiff Stocklein could decide whether to follow the recommendations of a computer system, the ODG, and nurses. Moreover, all Plaintiffs made recommendations about claims that were generally followed. *See id.* § 541.202(c) ("The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."). On the other hand, Plaintiffs have presented evidence that their primary duty of administering leave claims merely involved the application of standards prescribed by client policies and the applicable law using Defendant's established procedures and guidelines. Whether and to what extent each individual Plaintiff ultimately exercised discretion and independent judgment is unclear at this stage, so Defendant is not entitled to summary judgment.[4] *See C.A.R. Transp.*

---

[4] Plaintiffs "request that the Court *sua sponte* reconsider its Order" decertifying the FLSA collective and denying class certification "[t]o the extent the Court rules for or against all of the Plaintiffs" based on common evidence. (Doc. 150 at 13). First, a party cannot *request* that the Court take action *sua sponte*. *See Sua Sponte*, Black's Law Dictionary (11th ed. 2019) (defining *sua sponte* as "[w]ithout prompting or suggestion"). If Plaintiffs wanted to request that the Court reconsider its previous Order, they needed to follow the proper procedures for filing a motion for reconsideration. *See, e.g.*, LRCiv 7.2(g). But regardless, the Court finds no error in its previous rulings, as a determination of whether each Plaintiff falls under the administrative exemption will require consideration of facts specific to how each Plaintiff performed his or her primary duty.

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) ("When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." (internal quotation marks omitted)). Thus, the issue of whether the third prong of the administrative exemption applies to Plaintiffs will proceed to trial.

### IV. WILLFULNESS AND THE GOOD-FAITH DEFENSE

Plaintiffs seek summary judgment on the issue of whether Defendant acted willfully, while Defendant seeks summary judgment on the issue of whether it acted in good faith. These issues go to the applicable statute of limitations and Plaintiffs' entitlement to liquidated damages if Defendant is found liable. A FLSA action for unpaid overtime is subject to a two-year statute of limitations, except that a three-year statute of limitations applies if the violation was willful. 29 U.S.C. § 255(a). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Separately, in a FLSA unpaid overtime suit, if the defendant shows that the act or omission giving rise to a violation "was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA, "the court may, in its sound discretion, award no liquidated damages." 29 U.S.C. § 260. The Court discusses the willfulness and good-faith issues together because "a finding of good faith is plainly inconsistent with a finding of willfulness," and because Plaintiffs and Defendant both rely on Judge Silver's dismissal of the *Reis* case in support of their positions. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003).

Plaintiffs argue that Defendant's reliance on *Ries* "showed reckless disregard for the law" because *In re Farmers Insurance Exchange*—which the *Ries* parties cited to in support of dismissal—involved insurance claims adjusters, and Defendant does not claim Plaintiffs in this case were insurance adjusters. (Doc. 138 at 20). Further, Plaintiffs contend that their job duties are not analogous to the job duties of the insurance adjusters in *In re Farmers Insurance Exchange*. Thus, Plaintiffs maintain that Defendant's reliance

on inapposite cases to support their classification of Plaintiffs as exempt was in reckless disregard of the law. On the other hand, Defendant argues that the dismissal of *Ries*, together with Defendant's review of its classification of claims examiners as exempt in 2017, shows that it acted in good faith. Defendant suggest that the court in *Ries* could not have granted the Joint Stipulation of Dismissal if it believed the plaintiffs in that case were misclassified as exempt, and that the outcome of *Ries* gave Defendant reasonable grounds for believing that claims examiners were exempt from the FLSA. (Doc. 136 at 20).

The Court cannot conclude as a matter of law that Defendant acted either willfully or in good faith in classifying Plaintiffs as exempt. There is minimal evidence in the record about the *Ries* plaintiffs, their job duties, and how they went about those duties, so it is unclear how factually analogous that case was to this one. It is therefore impossible to determine at this stage whether it was reasonable for Defendant to conclude that the Plaintiffs in this case, too, were appropriately categorized as exempt. It is likewise impossible to conclude that the *Ries* plaintiffs were so different from the Plaintiffs in this case that Defendant acted with reckless disregard by relying on *Ries*. The issues of willfulness and good faith will be left for the factfinder to resolve at trial.

## V.     CONCLUSION

Defendant has demonstrated as a matter of law that Plaintiffs' primary job duties related to the general business operations of Defendant's clients such that the second prong of the administrative exemption is satisfied. The other issues raised by the parties' Cross-Motions for Summary Judgment will proceed. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 136) is **granted in part** as to the second prong of the FLSA's administrative exemption and is otherwise **denied in part**.

///

///

///

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 138) is **denied.**

Dated this 24th day of May, 2023.

Honorable Steven P. Logan
United States District Judge

13